# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Penn Engineering & Manufacturing Corp. :
            :
    Plaintiff,     :
            :
    v.      :  No.:_____
            :
Peninsula Components, Inc.,   :
            :
    Defendant.   :

## COMPLAINT

Penn Engineering & Manufacturing Corp., a Pennsylvania corporation, by way of Complaint against Peninsula Components, Inc., on knowledge as to Penn Engineering & Manufacturing Corp., and otherwise on information and belief, alleges as follows:

### Nature of the Action

1. This is a civil action for trademark infringement, false designation of origin, false advertising and counterfeiting under the trademark laws of the United States including 15 U.S.C. sections 1114, 1116, 1117, 1125(a); and, common law trademark infringement and unfair competition.

### Jurisdiction

2. Subject matter jurisdiction over this action is proper in this court under 15 U.S.C. section 1121 and 28 U.S.C. sections 1331, 1338 and 1367(a), and over the related state claims under the doctrine of supplemental jurisdiction.

**Venue**

3.      Venue is proper in this district under 28 U.S.C. section 1391 for the reasons set forth below.

**The Parties**

4.      Plaintiff, Penn Engineering & Manufacturing Corp., ("PennEngineering"), is a Pennsylvania corporation having a place of business at 5190 Old Easton Road, Danboro, Pennsylvania, 18196.

5.      On information and belief, defendant Peninsula Components, Inc. ("Defendant") is a California company having a place of business at 1300 Industrial Road, Suite 21, San Carlos, California 94070.

**Statement of Facts Common to All Counts**

6.      PennEngineering is a global leader in the industrial fastening solutions industry.

7.      PennEngineering was established in 1942 by K.A. Swanstrom. PennEngineering's first manufacturing facility consisted of only four fastener machines in a Doylestown, Pennsylvania garage.  Since then, PennEngineering has grown into a global industry leader.  PennEngineering is now headquartered in Danboro, Pennsylvania.

**PennEngineering's Extensive Product Line**

8.      PennEngineering designs and manufactures a wide variety of fasteners, fastener components and fastener installation equipment for diverse industries, including the electronics, computer, data/telecom, medical, automotive, marine, and aerospace/aircraft industries, and for general manufacturing.

9.      Since 1942, PennEngineering has been in the business of designing, manufacturing and selling a wide variety of fastening products including: nuts; bolts; studs; pins;

standoffs; rivets, captive panel screws and hardware; cable tie-mounts and hooks; fasteners for mounting into printed circuit boards; and, miniature (micro-sized) fasteners.

10.     Since first inventing a novel clinch fastener in 1943, PennEngineering has steadily expanded the type and variety of products in its portfolio.

11.     All of these products are advertised, promoted and sold using one or more of PennEngineering's numerous trademarks and most are advertised, promoted and sold using the "PEM Family of Marks" defined below.

12.     Since 1942, PennEngineering has steadily grown its engineering and production capacity.  PennEngineering now has manufacturing and technical facilities in the United States, Europe, and Asia including Danboro, Pennsylvania; Winston-Salem, North Carolina; Galway, Ireland; Friedrichsdorf, Germany and Kunshan, China.

13.     Over the past 77 years, PennEngineering has manufactured and sold billions of fastener products.  In addition to the United States, PennEngineering's products are sold in more than 75 countries through an extensive network of engineering representatives and distributors in, for example, Australia, Austria, Brazil, Canada, China, Denmark, France, Finland, Germany, Hong Kong, India, Ireland, Israel, Italy, Japan, South Korea, Mexico, New Zealand, Norway, Portugal, Singapore, Spain, South Africa, Sweden, Switzerland, Taiwan, United Kingdom and the United States.

14.     Since 1942, PennEngineering has grown steadily and now has more than 1,700 employees globally and annual revenue in excess of 400 million dollars.

15.     Since 1942, PennEngineering has continuously invented new fastener products and improved on old fastener products as evidence by its extensive patent portfolio. PennEngineering spends more than $1,200,000 per year to design, develop, test and certify its

new fastener products.  PennEngineering has been issued[1] more than 150 U.S. and foreign

patents for its fastener products, fastener installation equipment, and methods of manufacturing.

### PennEngineering's Superior Product Quality

16.     Over the past 77 years, PennEngineering has developed a reputation for

designing, manufacturing and selling only the highest quality fastener products.

PennEngineering exercises extensive quality control at its manufacturing plants and has a

manufacturing strategy of defect prevention rather than defect detection.  PennEngineering uses

statistical tools throughout its manufacturing processes to monitor the performance and assure

effective quality control of each process step.  If a non-conforming situation arises, it is resolved

immediately with the use of appropriate quality assurance tools.

### PennEngineering's Famous PEM Family of Marks

17.     Since at least as early as 1946, PennEngineering has used the trademark PEM in

commerce to advertise, promote and sell its fastener products and accessories, and to identify and

distinguish its goods from the goods of other companies.

18.     On June 19, 1962, PennEngineering was awarded U.S. Registration No. 732,947

("the '947 Registration"), which grants PennEngineering the exclusive right to use the mark

PEM, or any confusingly similar mark (colorable imitation), in connection with "drill bushings

and self-clinching nuts, fasteners, studs and stand-offs", and in connection with related goods.

19.     The mark PEM was registered on the Principal Register without the need to claim

secondary meaning.

20.      The '947 Registration became incontestable under the Lanham Act on October

25, 1984 when the U.S. Patent & Trademark Office accepted and acknowledged

---

[1] PennEngineering assigns all of its patent and trademark rights to a holding company, PEM Management, Inc., and is granted back an exclusive license under the patents and trademarks.

PennEngineering's Section 15 Affidavit.

21.     For more than 77 years, PennEngineering has continuously used and heavily promoted and advertised the mark PEM.

22.     Over the years, PennEngineering has adopted numerous additional marks for its fastener products that incorporate the mark PEM.

23.     For example, PennEngineering advertises, promotes and sells its fastener products using the federally-registered marks listed in Table 1:

**Table I**

| Mark | Registration Number | Registration Date | Incontestability Date | Goods & Services |
|---|---|---|---|---|
| PEM | 732,947 | 6/19/1962 | 10/25/1984 | Drill bushings and self-clinching nuts, fasteners, studs and stand-offs |
| PEM | 1,177,822 | 11/17/1981 | 8/3/1987 | Broaching-type captive fasteners-namely, broaching-type captive fasteners with internal threads, broaching-type captive standoffs with and without internal threads, broaching-type captive solder terminals, broaching-type captive studs, broaching-type captive panel fasteners and metallic inserts. |
| PEM | 1,403,759 | 8/5/1986 | 8/12/1991 | Metal fasteners |
| PEM | 2,758,505 | 9/2/2003 | 9/2/2009 | Panel fasteners, namely self-clinching, snap-in floating and hybrid panel fasteners |
| PEM (logo) | 889,244 | 4/14/1970 | 4/14/2010 | Self-clinching fasteners, self-locating weld fasteners, and self-clinching drill bushings |

| | | | | |
|---|---|---|---|---|
| **PEM** | 1,043,967 | 7/20/1976 | 11/9/1981 | Presses for installing fasteners or the like and also for parts of said presses |
| **PEM** | 1,092,108 | 7/25/1983 | 5/30/2015 | Panel fastener assemblies and spring loaded plunger assemblies |
| **PEM** | 1,113,034 | 2/13/1979 | 4/23/1984 | Electrical terminals and electrical grounding stand-offs |
| **PEM** | 4,331,371 | 5/7/2013 | 11/19/2018 | Fasteners made of metal, namely, nuts, weld nuts, studs, pins, standoffs, rivets and inserts, cable-tie mounts and hooks for sheet metal; self-clinching panel fasteners made of metal or mostly of metal; panel fasteners and panel fastener assemblies made of metal or mostly of metal; sheet-metal fasteners made of metal; fasteners made of metal or mostly of metal for mounting into printed circuit boards; micro fasteners made of metal for use in the consumer electronics industry |
| PEMFLEX | 937,397 | 7/11/1972 | 7/11/2012 | Fasteners, i.e., nuts |
| PEMHEX | 781,236 | 12/8/1964 | 12/8/2004 | Fasteners |
| PEMSERT | 883,650 | 1/6/1970 | 1/6/2010 | Inserts |
| PEMSERTER | 1,365,248 | 10/15/1985 | 6/3/1991 | Power-operated presses for installing fastener |
| PEMSERTER MICRO-MATE | 1,433,571 | 3/24/1987 | 7/2/1992 | Non-powered hand presses for punching holes and installing fasteners for use in sheet metal |
| PEMSERTER and triangle composite | 3,567,528 | 1/27/2009 | 2/9/2015 | Power-operated presses for installing fasteners |

| PEM SP | 3,270,807 | 7/31/2007 | 8/5/2013 | Metal fasteners |
|---|---|---|---|---|
| PEM300 | 1,444,862 | 6/30/1987 | 10/20/1992 | Sheet Metal Fasteners |
| AUTOPEM | 4,296,186 | 2/26/2013 | 11/16/2018 | Metal fasteners, namely, nuts, bolts, screws, rivets, standoffs, clinching fasteners; metal threaded fasteners |
| MICROPEM | 4,250,883 | 11/27/2012 | 11/13/2018 | Metal fasteners, namely, nuts, bolts, screws, rivets, standoffs, clinching fasteners; metal threaded fasteners |
| AEROPEM | 4,298,838 | 3/5/2013 | 11/16/2018 | Metal fasteners, namely, nuts, bolts, screws, rivets, standoffs, clinching fasteners; metal threaded fasteners |
| PEM SH | 5,023,068 | 8/16/2016 | Not eligible | Metal fasteners, namely, nuts |
| PEM SH and design | 5,023,067 | 8/16/2018 | Not eligible | Metal fasteners, namely, nuts |
| PEM VM | 5,305,895 | 10/10/2017 | Not eligible | Metal fasteners, namely, self-clinching fasteners, metal base plates and self-clinching fasteners pre-installed into base plates |
| PEM SMPP | 5,055,266 | 10/4/2018 | Not eligible | Metal fasteners, namely, nuts |

24.     The date on which each of the above-listed Registrations became incontestable under the Lanham Act is also listed in Table I.

25.     All of PennEngineering's registered trademarks identified above are collectively referred to as the "PEM Family of Marks."

26.     Each of the federal registrations for the PEM Family of Marks is owned by PEM

Management, Inc.  PennEngineering is the exclusive licensee of all rights in said marks and said

federal registrations.

27.     Since at least as early as 1946, PennEngineering has also used the trademark and

tradename Penn Engineering in commerce to advertise, promote and sell its fastener products

and accessories, and to identify and distinguish its goods from the goods of other companies.

### PennEngineering's Additional Famous Trademarks

28.     In addition to the PEM Family of Marks, PennEngineering owns more than 100

other federally-registered and common law marks including the marks listed in Table II:

**Table II**

| Mark | Registration Number | Registration Date | Incontestability Date | Goods & Services |
|---|---|---|---|---|
|  "Double Square 1" | 1,400,893 | 7/15/1986 | 12/30/1991 | Floating fasteners |
|  "Double Square 2" | 3,404,061 | 4/1/2008 | 4/16/2018 | Metal floating fasteners |

29.     The date on which each of the above-listed Registrations became incontestable

under the Lanham Act is also listed in Table II.

30.     PennEngineering's registered trademarks identified in Table II are collectively

referred to as the "Double Square Marks."

31.     Each of the federal registrations for the Double Square Marks is owned by PEM

Management, Inc.  PennEngineering is the exclusive licensee of all rights in said marks and said

federal registrations.

32.     In addition, PennEngineering owns dozens of common law marks for its fasteners including the following:

**Table III**

| Common Law Mark | Goods With Which the Marks Have Been Used |
|---|---|
| A4, AC, AS, B, BS, CLA, CLS, CLSS, FE, FEO, FEOX, FEX, H, HNL, KF2, KFS2, LA4, LAC, LAS, LK, LKA, LKS, S, SS, S-RT, SFN, SH, SL, SMPS, SMPP, SMTSO, SMTSOB, SP, U, UL, WN, WNS | Nuts |
| MPP, TK4, TKA, TPS, TP4, TPXS | Pins |
| BSO, BSO4, BSOA, BSOS CSOS, CSS, DSO, DSOS, KFB3, KFE, KFSE, KSSB, MSO4,  MSOFS, SKC, SMTSS, SO, SO4, SOA, SOS, SOAG, SOSG, SSA, SSC, SSS, TSO4, TSO, TSOA, TSOS | Standoffs |
| CFN, PL, PLC | Self-locking nuts |
| CFHA, CFHC, CHA, CHC, FH, FH4, FHA, FHP, FHS, FHL, FHLS, FHX, HF109, HFE, HFG8, HFH, HFHB, HFHS, HFLH, KFH, SGPC, TFH, TFHS, THFE | Studs |
| F, F4 | Flush fasteners |
| HFCB | Heat sink mounting system |
| MSIB | Inserts |
| PEM C.A.P.S., PF10, PF11, PF11M, PF11MF, PF11MW, PF12, PF12M, PF12MF, PF12MW, PF30, PF31, PF32, PF50, PF60, PF7M, PF7MF, PFC2, PFS2, PFC2P, PFC4, PFHV, PFK, PSHP, SMTPFLSM, SMTPR | Panel screws and panel fastener assemblies |
| PSL2, PTL2 | Spring-loaded plunger assembly |
| RAA, RAS, SMTRA | Right angle fasteners |
| SCB, SCBJ, SCBR | Clinch bolts |
| SF, SFP, SFK, SFW, SKC-F, T, T4, TS | Clinch fasteners |
| TD, TDO, VM | Tie-mounts, hooks, mounts |

All of PennEngineering's common law trademarks identified in Table III are collectively referred to as the Common Law Marks.

**Advertising, Marketing and Promotion of PennEngineering's Marks**

33.     Through PennEngineering's substantial marketing and advertising efforts, the PEM Family of Marks, Double Square Marks and Common Law Marks have become famous in

the fastening solutions industry, and recognized throughout the United States as a trademark of PennEngineering.

34.     The PEM Family of Marks, Double Square Marks, and Common Law Marks, and the extensive recognition and goodwill symbolized by the PEM Family of Marks, Double Square Marks, and Common Law Marks, are extremely valuable assets of PennEngineering.

35.     The PEM Family of Marks, Double Square Marks, and Common Law Marks represent PennEngineering's reputation as a producer of top quality fastener products and fastener installation equipment.

36.     Today, nearly all of PennEngineering's sales relate to fastener products and fastener installation equipment sold under the PEM Family of Marks.

37.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks, Double Square Marks, and Common Law Marks are sold throughout the entire world through an extensive network of distributors in the U.S. and dozens of foreign countries.  PennEngineering currently has more than 120 distributors in 47 countries.

38.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks, Double Square Marks, and Common Law Marks are also advertised, promoted and sold on its extensive interactive website *www.pemnet.com*.  PennEngineering has operated this website since at least as early as 1996.

39.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks, Double Square Marks, and Common Law Marks are also advertised, promoted and sold at national and international trade shows including the following: Pacific Design & Manufacturing; FABTECH; Composites Europe; mtex; MIDEST; International Fastener Expo; and, Manufacturing Indonesia.

40.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks, Double Square Marks, and Common Law Marks are also advertised, promoted and sold through numerous national and international trade journals including: Design News; Assembly; NASA Tech Briefs; Machine Design; Design World; Electronic Component News; Fabricator; Electronic Products; Thomas Register; Global Spec; Blech; BBR; Elektronik Automotive; Automobil Produktion; Industrie et Technologies; and Ingenieurs de l'Automobile.

41.     Many of PennEngineering's distributors utilize PennEngineering's automated catalog on its website.  All authorized distributors are entitled to incorporate the same marketing information on its website that appears on PennEngineering's website by linking the distributor's website to PennEngineering's website.  This program allows the distributor to be absolutely sure that they always have the most up to date information running on its websites.  This program is one more step to make PennEngineering's customers aware that the only way they can be assured of getting genuine PEM fasteners is to go to a PEM authorized distributor.

42.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks, Double Square Marks and Common Law Marks are also advertised, promoted and sold through independent technical representatives and its own direct sales/technical force.

43.     In Europe and Asia, PennEngineering's authorized distributors also act as technical representatives who are also supported by PennEngineering's direct representatives.

44.     All totaled, PennEngineering currently spends more than $1,200,000 per year advertising and promoting its PEM Family of Marks, Double Square Marks, and Common Law Marks in the United States and throughout the world.

45.     Over the past 10 years, PennEngineering has spent more than $10,000,000

advertising and promoting its PEM Family of Marks, Double Square Marks, and Common Law Marks.

46.     Thus, through extensive and continuous advertising and promotion, the PEM Family of Marks, Double Square Marks, and Common Law Marks have become famous throughout the United States and recognized to be the exclusive trademarks of PennEngineering.

## Defendant's Trademark Infringement

47.     Recently, PennEngineering discovered that Defendant is unlawfully using marks that are identical to PennEngineering's mark PEM and numerous of the Common Law marks, in connection with the sale of competing fastening products, and is also selling competing fastener products that have the same product configuration as protected by the Double Square Marks (collectively the "Infringing Marks").

48.     Defendant is using the mark PEM as part of an online advertising campaign with Google Ads to sell competing fastener products.  Defendant pays Google, LLC, and/or one of its subsidiaries, to display Defendant's online advertisement when web users search for PennEngineering's website.  Defendant's infringing online advertisement uses the mark PEM and falsely associates Defendant with the mark PEM.  For example, in response to a Google Chrome query using the term "pem fasteners", Defendant's online advertisement is displayed at the top of the "hits" list as follows: "Pem Fasteners | Experts Since 1982 | Pencom Peninsula Components."  A true and correct screenshot from a Google Chrome search showing Defendant's online advertisement used in its Google Ads campaign is attached hereto as Exhibit 1.

49.     Defendant is also using the Infringing Marks on its interactive internet website *www.pencomsf.com*.  True and correct screenshots of selected pages from Defendant's website

12

*www.pencomsf.com*, which include the Infringing Marks, are attached hereto as Exhibits 2 and 3.

50.     For example, Defendant is also using the mark PEM in its "PEM® Series Substitute Cross Reference." See exh. 3.  Defendant is also using the following Common Law Marks in its "PEM® Series Substitute Cross Reference": B, BS, CLA, CLS, CLSS, S, SS, H, HN, HNL, SL, SMPS, F, FEOX, FEX, U, FE, FEO, UL, KF2, KFS, LK, LKA, LKS, PL, PLC, WN, WNS, CFHA, TFH, TFHS, HFH, HFHB, HFHS, HFHD, HFHDB, HFHDS, FHL, FHLS, HFE, KFH, CSOS, CSS, KFE, KFSE, KFSE, KFB3, SOAG, SOSG, KSSB, SSA, SSC, SSS, SKC, SKS, SO, SO4, SOA, SON, SOS, BSO, BSO4, BSOA, BSOS, SOA, SO4, TSO, TSOA, TSOS. See exh. 3.

51.     Defendant is also selling a competing fastener product that incorporates a square-in-square product configuration that is confusingly similar to PennEngineering's Double Square Marks (Defendant's "Square-In-Square Products").  An example of Defendant's Square-In-Square Products that infringes the Double Square Marks is Defendant's "NA/NAL" metric self-clinching nut. See exh. 2.

52.     Defendant is not affiliated in any way, is not a licensee of, and is not an authorized distributor of PennEngineering.  Defendant is not a reseller of genuine PennEngineering products.  Defendant has no other authorization, express or implied, to use any of PennEngineering's marks.

53.     Defendant's use of its "PEM® Series Substitute Cross Reference" falsely suggests that Defendant's products identified therein have the same properties, quality and performance characteristics as PennEngineering's products identified therein.

54.     On information and belief, Defendant is using the Infringing Marks on inferior products.  On information and belief, Defendant's manufacturing facilities do not have the same

industry certifications as PennEngineering's manufacturing facilities.  On information and belief,

Defendant's manufacturing process lacks the same quality-control procedures that are

implemented by PennEngineering.  Therefore, Defendant is tarnishing PennEngineering's

famous mark PEM, the PEM Family of Marks, the Common Law Marks, and the Double Square

Marks.

55.     PennEngineering and Defendant are direct competitors in the fastener industry.

56.     On information and belief, Defendant is selling competing fastener products

bearing the Infringing Marks in interstate commerce, including in the Eastern District of

Pennsylvania.

57.     As a result of Defendant's acts, PennEngineering has been injured by, *inter alia*,

diversion of sales from itself to Defendant, by lessening of the goodwill of its marks, and/or by

lessening of the goodwill its products enjoy with the buying public.

**Count I – U.S. Trademark Reg. No. 732,947**
**Federal Trademark Infringement Under The Lanham Act**

58.     The allegations of the preceding paragraphs are repeated and incorporated herein

by reference.

59.     Defendant's acts, including its use of the mark PEM, constitute trademark

infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

60.     U.S. Trademark Reg. No. 732,947 for the mark PEM entitles PennEngineering to

a presumption of ownership, validity and exclusive rights to use the mark PEM in connection

with the goods/services named in the registration.

61.     Defendant has used and is using a reproduction, counterfeit, copy, or colorable

imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or

advertising of competing fastener products.

14

62.     Defendant's unauthorized use of the mark PEM in connection with selling, offering for sale, distributing and advertising its fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its fastener products.

### Count II – U.S. Trademark Reg. No. 1,177,822
### Federal Trademark Infringement Under The Lanham Act

63.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

64.     Defendant's acts, including its use of the mark PEM, constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

65.     U.S. Trademark Reg. No. 1,177,822 for the mark PEM entitles PennEngineering to a presumption of ownership, validity and exclusive rights to use the mark PEM in connection with the goods/services named in the registration.

66.     Defendant has used and is using a reproduction, counterfeit, copy, or colorable imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or advertising of competing fastener products.

67.      Defendant's unauthorized use of the mark PEM in connection with selling, offering for sale, distributing and advertising its competing fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its competing fastener products.

### Count III – U.S. Trademark Reg. No. 1,403,759
### Federal Trademark Infringement Under The Lanham Act

68.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

69. Defendant's acts, including its use of the mark PEM, constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

70. U.S. Trademark Reg. No. 1,403,759 for the mark PEM entitles PennEngineering to a presumption of ownership, validity and exclusive rights to use the mark PEM in connection with the goods/services named in the registration.

71. Defendant has used and is using a reproduction, counterfeit, copy, or colorable imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or advertising of competing fastener products.

72. Defendant's unauthorized use of the mark PEM in connection with selling, offering for sale, distributing and advertising its competing fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its competing fastener products.

### Count IV – U.S. Trademark Reg. No. 2,758,505
### Federal Trademark Infringement Under The Lanham Act

73. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

74. Defendant's acts, including its use of the mark PEM, constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

75. U.S. Trademark Reg. No. 2,758,505 for the mark PEM entitles PennEngineering to a presumption of ownership, validity and exclusive rights to use the mark PEM in connection with the goods/services named in the registration.

76. Defendant has used and is using a reproduction, counterfeit, copy, or colorable imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or advertising of competing fastener products.

77.     Defendant's unauthorized use of the mark PEM in connection with selling, offering for sale, distributing and advertising its competing fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its competing fastener products.

### Count V – PEM Family of Marks
### Federal Trademark Infringement Under The Lanham Act

78.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

79.     Defendant's acts, including its use of the mark PEM, constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

80.     The U.S. Registrations identified in Table I for the PEM Family of Marks entitle PennEngineering to a presumption of ownership, validity and exclusive rights to use the PEM Family of Marks in connection with the goods/services named in the registrations.

81.     Defendant has used and is using a reproduction, counterfeit, copy, or colorable imitation of the PEM Family of Marks on or in connection with the sale, offering for sale, distribution, or advertising of competing fastener products.

82.     Defendant's unauthorized use of the mark PEM in connection with selling, offering for sale, distributing and advertising its competing fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its competing fastener products.

### Count VI – U.S. Trademark Reg. No. 1,400,893
### Federal Trademark Infringement Under The Lanham Act

83.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

84.     Defendant's acts, including the advertising and sale of its Square-In-Square Products, constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

85.     U.S. Trademark Reg. No. 1,400,893 for the Double Square 1 Mark entitles PennEngineering to a presumption of ownership, validity and exclusive rights to use the Double Square 1 Mark in connection with the goods/services named in the registration.

86.     Defendant has used and is using a reproduction, counterfeit, copy, or colorable imitation of the Double Square 1 Mark on or in connection with the sale, offering for sale, distribution, or advertising of competing fastener products.

87.     Defendant's unauthorized commercial use of the product design of its Square-In-Square Products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its competing fastener products.

### Count VII – U.S. Trademark Reg. No. 3,404,061
### Federal Trademark Infringement Under The Lanham Act

88.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

89.     Defendant's acts, including the advertising and sale of its Square-In-Square Products, constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

90.     U.S. Trademark Reg. No. 3,404,061 for the Double Square 2 Mark entitles PennEngineering to a presumption of ownership, validity and exclusive rights to use the Double Square 2 Mark in connection with the goods/services named in the registration.

91.     Defendant has used and is using a reproduction, counterfeit, copy, or colorable imitation of the Double Square 2 Mark on or in connection with the sale, offering for sale, distribution, or advertising of competing fastener products.

92.      Defendant's unauthorized commercial use of the product design of its Square-In-Square Products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its competing fastener products.

### Count VIII - PEM
### False Designation of Origin Under The Lanham Act

93.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

94.     Defendant's acts, including its use of the mark PEM, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

95.     Defendant has used and is using a copy, variation, simulation or colorable imitation of the mark PEM in connection with Defendant's offering and sale of fastener products with full knowledge of the long and extensive prior use of the mark PEM by PennEngineering.

96.     Defendant's unauthorized use of the mark PEM in connection with selling, offering for sale, distributing and advertising its competing fastener products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with PennEngineering, or as to the origin, sponsorship, or approval of Defendant's goods by PennEngineering.

97.     Defendant's actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendant's goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

**Count IX – PEM Family of Marks**
**False Designation of Origin Under The Lanham Act**

98.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

99.     Defendant's acts, including its use of the mark PEM, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

100.    Defendant has used and is using a copy, variation, simulation or colorable imitation of the PEM Family of Marks in connection with Defendant's offering and sale of fastener products with full knowledge of the long and extensive prior use of the PEM Family of Marks by PennEngineering.

101.    Defendant's unauthorized use of the mark PEM in connection with selling, offering for sale, distributing and advertising its competing fastener products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with PennEngineering, or as to the origin, sponsorship, or approval of Defendant's goods by PennEngineering.

102.    Defendant's actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendant's goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

**Count X – Double Square 1 Mark**
**False Designation of Origin Under The Lanham Act**

103.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

104.     Defendant's acts, including the advertising and sale of its Square-In-Square Products, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

105.     Defendant has used and is using a copy, variation, simulation or colorable imitation of the Double Square 1 Mark in connection with Defendant's offering and sale of competing fastener products with full knowledge of the long and extensive prior use of the Double Square 1 Mark by PennEngineering.

106.     Defendant's unauthorized use of the product design of its Square-In-Square Products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with PennEngineering, or as to the origin, sponsorship, or approval of Defendant's goods by PennEngineering.

107.     Defendant's actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendant's goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

**Count XI – Double Square 2 Mark**
**False Designation of Origin Under The Lanham Act**

108.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

109.     Defendant's acts, including the advertising and sale of its Square-In-Square Products, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

110.     Defendant has used and is using a copy, variation, simulation or colorable imitation of the Double Square 2 Mark in connection with Defendant's offering and sale of competing fastener products with full knowledge of the long and extensive prior use of the Double Square 2 Mark by PennEngineering.

111.     Defendant's unauthorized use of the product design of its Square-In-Square Products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with PennEngineering, or as to the origin, sponsorship, or approval of Defendant's goods by PennEngineering.

112.     Defendant's actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendant's goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

**Count XII – Common Law Marks**
**False Designation of Origin Under The Lanham Act**

113.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

114.     Defendant's acts, including its use of the Common Law Marks, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

115.     Defendant has used and is using a copy, variation, simulation or colorable imitation of one or more of the Common Law Marks in connection with Defendant's offering and sale of competing fastener products with full knowledge of the long and extensive prior use of the Common Law Marks by PennEngineering.

116.     Defendant's unauthorized use of one or more of the Common Law Marks in connection with selling, offering for sale, distributing and advertising its competing fastener products, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with PennEngineering, or as to the origin, sponsorship, or approval of Defendant's goods by PennEngineering.

117.    Defendant's actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendant's goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

## Count XIII - PEM
## Common Law Trademark Infringement and Unfair Competition

118.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

119.    Defendant's acts, including its use of the mark PEM in connection with its competing fastener products, constitute common law trademark infringement of PennEngineering's mark PEM and common law unfair competition.

120.    Defendant's use of the mark PEM in connection with its competing fastener products is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendant's goods.

121.    Defendant's use of the mark PEM is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its mark PEM.

## Count XIV – PEM Family of Marks
## Common Law Trademark Infringement and Unfair Competition

122.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

123.    Defendant's acts, including its use of the mark PEM in connection with its competing fastener products, constitute common law trademark infringement of PennEngineering's PEM Family of Marks and common law unfair competition.

124.     Defendant's use of the mark PEM in connection with its competing fastener products is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendant's goods.

125.     Defendant's use of the mark PEM is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its PEM Family of Marks.

## Count XV – Double Square 1 Mark
## Common Law Trademark Infringement and Unfair Competition

126.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

127.     Defendant's acts, including the advertising and sale of its Square-In-Square Products, constitute common law trademark infringement of PennEngineering's Double Square 1 Mark and common law unfair competition.

128.     Defendant's use of the product design of its Square-In-Square Products is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendant's goods.

129.     Defendant's use of the product design of its Square-In-Square Products is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its Double Square 1 Mark.

## Count XVI – Double Square 2 Mark
## Common Law Trademark Infringement and Unfair Competition

130.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

131.    Defendant's acts, including the advertising and sale of its Square-In-Square Products, constitute common law trademark infringement of PennEngineering's Double Square 2 Mark and common law unfair competition.

132.    Defendant's use of the product design of its Square-In-Square Products is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendant's goods.

133.    Defendant's use of the product design of its Square-In-Square Products is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its Double Square 2 Mark.

## Count XVII – Common Law Marks
### Common Law Trademark Infringement and Unfair Competition

134.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

135.    Defendant's acts, including its use of the Common Law Marks in connection with its competing fastener products, constitute common law trademark infringement of one or more of PennEngineering's Common Law Marks and common law unfair competition.

136.    Defendant's use of the Common Law Marks in connection with its competing fastener products is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendant's goods.

137.    Defendant's use of the Common Law Marks is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its Common Law Marks.

## Count XVIII - PEM
## Trademark Counterfeiting Under The Lanham Act

138.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

139.     Defendant's acts, including its use of the mark PEM, constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

140.     Defendant, without authorization from PennEngineering, has and is continuing to use spurious designations that are identical to, or designations that are substantially indistinguishable from, the mark PEM in interstate commerce.

141.     The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendant's fastener products are genuine or authorized products of PennEngineering.

142.     On information and belief, Defendant has acted with knowledge of PennEngineering's ownership of the mark PEM with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the mark PEM.

143.     For the foregoing, PennEngineering is entitled to injunctive relief prohibiting Defendant from using the mark PEM or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendant all damages, including attorney fees, that PennEngineering has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## Count XIX – PEM Family of Marks
## Trademark Counterfeiting Under The Lanham Act

144.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

145.     Defendant's acts, including its use of the mark PEM, constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

146.     Defendant, without authorization from PennEngineering, has and is continuing to use spurious designations that are identical to, or designations that are substantially indistinguishable from, the PEM Family of Marks in interstate commerce.

147.     The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendant's fastener products are genuine or authorized products of PennEngineering.

148.     On information and belief, Defendant has acted with knowledge of PennEngineering's ownership of the PEM Family of Marks with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the PEM Family of Marks.

149.     For the foregoing, PennEngineering is entitled to injunctive relief prohibiting Defendant from using the PEM Family of Marks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendant all damages, including attorney fees, that PennEngineering has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

**Count XX – Double Square 1 Mark**
**Trademark Counterfeiting Under The Lanham Act**

150.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

151.    Defendant's acts, including the advertising and sale of its Square-In-Square Products, constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

152.    Defendant, without authorization from PennEngineering, has and is continuing to use spurious designations that are identical to, or designations that are substantially indistinguishable from, the Double Square 1 Mark in interstate commerce.

153.    The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendant's fastener products are genuine or authorized products of PennEngineering.  On information and belief, Defendant has acted with knowledge of PennEngineering's ownership of the Double Square 1 Mark with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Double Square 1 Mark.

154.    For the foregoing, PennEngineering is entitled to injunctive relief prohibiting Defendant from using the Double Square 1 Mark or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendant all damages, including attorney fees, that PennEngineering has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## Count XXI – Double Square 2 Mark
## Trademark Counterfeiting Under The Lanham Act

155.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

156.     Defendant's acts, including the advertising and sale of its Square-In-Square Products, constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

157.     Defendant, without authorization from PennEngineering, has and is continuing to use spurious designations that are identical to, or designations that are substantially indistinguishable from, the Double Square 2 Mark in interstate commerce.

158.     The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendant's fastener products are genuine or authorized products of PennEngineering.

159.     On information and belief, Defendant has acted with knowledge of PennEngineering's ownership of the Double Square 2 Mark with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Double Square 2 Mark.

160.     For the foregoing, PennEngineering is entitled to injunctive relief prohibiting Defendant from using the Double Square 2 Mark or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendant all damages, including attorney fees, that PennEngineering has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet

known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages

pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## Count XXII – False Advertising Under The Lanham Act

161.     The allegations of the preceding paragraphs are repeated and incorporated herein

by reference.

162.     Defendant's acts, including use of its "PEM® Series Substitute Cross Reference",

constitute false advertising under Section 43(a)(1)(B) of the Lanham Act. 15 U.S.C. §

1125(a)(1)(B).

163.     Defendant, in commercial advertising or promotion, has misrepresented the

nature, characteristics, qualities, or geographic origin of Defendant's goods or

PennEngineering's goods.

164.     Defendant's use of its "PEM® Series Substitute Cross Reference" falsely

suggests that Defendant's products identified therein have the same properties, quality and/or

performance characteristics as PennEngineering's products identified therein.

165.     The foregoing acts of Defendant are intended to cause, have caused, and are likely

to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into

believing that Defendant's fastener products are structurally and functionally equivalent to

PennEngineering's products.

166.     The foregoing acts of Defendant are likely to influence the purchasing decision of

consumers for PennEngineering's and Defendants competing fastener products.

167.     On information and belief, Defendant has made the aforementioned

misrepresentations without a basis in fact.

168.     Defendant's acts are being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misrepresenting the quality, properties, and/or performance characteristics of Defendant's products.

**WHEREFORE**, PennEngineering prays for:

a)     an award of damages for infringement of the mark PEM, the PEM Family of Marks, the Double Square Marks, and the Common Law Marks including Defendant's profits, and that such award by trebled due to Defendant's willful and deliberate conduct;

b)     an injunction permanently enjoining Defendant from using the mark PEM, the PEM Family of Marks, the Double Square Marks, and the Common Law marks in any manner in conjunction with fastener products;

c)     an award of costs and disbursements;

d)     an award of attorney fees;

e)     punitive damages due to the willful, wanton and malicious conduct of Defendant;

f)     an award of statutory damages; and,

g)     such other and further relief as the court may deem just and proper;

**JURY TRIAL**

PennEngineering requests a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues triable of right by a jury.

Respectfully submitted,

Ryder, Mazzeo & Konieczny LLC

Date: February 5, 2019

Joseph M. Konieczny, Sr. (Pa. 59,724)
P.O. Box 670
Plymouth Meeting, PA 19462
610-940-1962(voice)
610-940-1963 (fax)
jkonieczny@ryderlu.com

Attorneys for Penn Engineering & Manufacturing Corp.

32