**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Penn Engineering & Manufacturing Corp. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 2:19-CV-00513-GEKP |
| | : | |
| Peninsula Components, Inc., | : | |
| | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS and
TO EXTEND EXPERT WITNESS DEADLINES**

**I.     Introduction**

Plaintiff's and defendant's recent series of motions to compel are precipitated by the

breakdown of settlement negotiations that have lasted several months.  Beginning on February

27, 2019, when defendant's president wrote his first letter to plaintiff's president, the parties

themselves have conferred directly several times and outlined general terms of settlement.   As

early as June 7, 2019 and as late as September 11, 2019, the parties have exchanged formal draft

settlement agreements and at one point had reached agreement on all terms of the formal draft

settlement agreement except one term, namely, a mutual, general release of all claims.  All the

while, counsel had initiated discovery and mutually extended[1] several discovery deadlines with

the hopes that final settlement could be consummated.  Over the past two months, the parties

have conducted several meet-and-confer telephone conferences relating to numerous discovery

disputes.  While most disputes were resolved, several disputes remain unresolved and require the

---

[1] In the Scheduling Order dated May 23, 2019, dkt. 12, the Court gave permission to the parties to extend discovery deadlines without leave of court.

Court's intervention.  Moreover, one particular discovery dispute has thwarted plaintiff's ability to prepare its expert report on damages.  Therefore, in addition to compelling production of the documents and information discussed below, plaintiff requests that the Court re-set and extend all expert witness deadlines as set forth in paragraphs 3-6 of the Scheduling Order.

## II.    Brief Factual Background

The complaint alleges twenty two (22) counts of wrongdoing against defendant for trademark infringement, false designation of origin, false advertising, and trademark counterfeiting under the Lanham Act, as well as common law trademark infringement and unfair competition.  In short, plaintiff is one of the leading manufacturers of industrial fastening solutions in the U.S.  Defendant is poaching plaintiff's customers by using at least 80 of plaintiff's trademarks including plaintiff's tradename and dominant trademark PEM, which is famous in the parties' industry.  Defendant is using at least 79 of plaintiff's common law marks in printed media and in the visual text and metadata of its website.  Defendant has also purchased plaintiff's dominant mark PEM as a Google Adword and at times has associated its own website address with online advertisements reading "PEM Fasteners."  These combined activities are intended to create confusion in the industry.[2]

Plaintiff's first two sets of requests for production of documents ("RFPs") were served on July 9, 2019, and a third set was served on July 13, 2019.  The RFPs requested information on several relevant topics including Pencom's sales of fasteners using the infringing marks (the "Relevant Fasteners").  Such standard sales information possessed by Pencom includes invoices, financial statements, customer lists, etc. for the Relevant Fasteners during three relevant time

---

[2] Defendant does not deny these actions; instead it argues that its activities constitute nominative fair use of plaintiff's marks.

periods defined below:

      A.     Time Period 1 means February 2, 2013 to the present day.

      B.     Time Period 2 means the time period during which Pencom's Google Ads campaign was active, and during which Google displayed an internet advertisement for Defendant's goods or services in response to a user entering the phrase "Penn Engineering", "PEM", or any one of the PEM Family Marks or Common Law Marks, as a keyword or search term in the Google search engine.

      C.     Time Period 3 means the time period during which Pencom's Google Ads campaign was active, and during which Google displayed an internet advertisement for Defendant's goods or services in response to a user entering the phrase "Penn Engineering", "PEM", or any one of the PEM Family Marks or Common Law Marks, as a keyword or search term in the Google search engine, wherein the internet advertisement visually displayed "Penn Engineering", "PEM", or any of the PEM Family Marks or Common Law Marks.

All totaled, plaintiff propounded 18 interrogatories and 65 RFPs.

Defendant filed responses to plaintiff's RFPs on August 23, 2019 but did not produce any documents until September 12, 2019. On that date, defendant provided an electronic link to download approximately 54,000 pages of documents, which were chopped up into 3,259 files. All of the documents were PDF images of a variety of documents whose native format was e-mail, Excel, Word, and others. Defendant's responses did not correlate the documents to the particular RFP to which the documents were responsive. Defendant produced no load file for the documents. Defendant produced no index or other description of the files and the files were not organized in any logical order.

During at least one meet-and-confer telephone conference on September 25, 2019, and in formal written objections, plaintiff objected to the manner in which defendant produced the documents and offered several alternatives for re-producing the documents in a useful format.

See exh. 1.  Since then, the parties have conferred several times on the same issue; however, defendant has not corrected the deficiencies in its original production with one exception.[3]

Furthermore, in response to several interrogatories, defendant did not provide a substantive response.  Instead, it stated that pursuant to Fed.R.Civ.P.33(d), the answer to the interrogatory could be derived or ascertained from the records defendant produced.  However, because the documents were not organized as they are kept in the usual course of business or organized and labeled to correspond to the categories in the requests, the documents cannot be efficiently searched to derive the answer to each interrogatory without imposing an undue burden on plaintiff.

## II.     Legal Standard

Federal Rule of Civil Procedure 37 enables a party, upon notice to other parties, to move for an order compelling discovery responses or production by another party or affected person. Fed. R. Civ. P. 37(a)(1).  Rule 37 also provides that incomplete responses are to be deemed failures to disclose or produce.  Fed. R. Civ. P. 37(a)(4).  Ultimately, it is within the discretion of the court to grant a motion to compel discovery for good cause shown.  *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 661 (3d Cir. 2003).  The mandate for liberal interpretation of the discovery rules and Federal Rules of Civil Procedure, in particular Rule 26, signifies the importance of parties being able to discover relevant facts and compel their disclosure when requested to reach a just resolution of their case.  *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947).

## III.    Arguments

### A.      Defendant Failed to Properly Respond to Plaintiff's RFPs and Interrogatories

---

[3] On October 14, 2019, defendant provided 13 files in native Excel format.  Defendant made three subsequent disclosures of documents on October 14, 16, and 18.

Despite producing numerous documents, defendant failed to properly respond to plaintiff's RFPs and properly produce its documents. When producing documents in response to an RFP, a party must either produce the documents as they are kept in the usual course of business or must organize and label them to the categories in the request. Fed. R. Civ. P. 34(b)(2)(E)(i).  Rule 34(E) states:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
>   (i) A party must produce documents <u>as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request</u>;
>
>   (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
>   (iii) A party need not produce the same electronically stored information in more than one form.

Fed.R.Civ.P. 34(E).  Defendant's responses and production failed both prongs of Rue 34(E)(i).

"[A] party exercising Rule 34's option to produce records as they are kept in the usual course of business should organize the documents in such a manner that the requesting party may obtain, with reasonable effort, the documents responsive to their requests". *Parks, LLC v. Tyson Foods, Inc.*, 2015 U.S. Dist. LEXIS 112861, at *6-7 (E.D. Pa. Aug. 25, 2015).  "Because businesses have an incentive to keep their documents in a manner that allows ready access, a production of documents as kept in the ordinary course of business should permit a systemized retrieval of relevant documents." *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 630 (M.D. Pa. 1997).  For documents to be kept "in the usual course of business", they must be produced in such a way as to enable the requesting party to substantially replicate the system used by the producing party. *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 335 (N.D.N.Y 2008).  The party must (1) preserve the format of the electronically stored information

and provide sufficient information about the context in which it is kept and used.  *Teledyne Instruments, Inc. v. Cairns,* 2013 U.S. Dist. LEXIS 153497, at *33 (M.D. Fla. Oct. 25, 2013).

Defendant's production of 3,259 unsorted files that are not correlated to any RFP constitutes a "data dump" prohibited by Rule 34.  This District has held that "data dumps" consisting of multiple documents that are not sorted into topics or categories are an unacceptable discovery practice by a party producing documents. *See e.g. Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 266 (E.D. Pa. 2015); *see also Graco, Inc. v. PMC Glob., Inc.*, 2011 U.S. Dist. LEXIS 30980, at *91 (D.N.J. Mar. 24, 2011) ("A producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect).  *See Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 266 (E.D. Pa. 2015) ("data dump" consisting of 93 boxes of documents not sorted into topics or categories was not acceptable discovery practice by party producing documents in commercial litigation). Rule 34 also requires defendant to produce the documents in the same native format. Fed.R.Civ.P. 34(E)(ii).

Defendant produced 54,000 pages of documents, which were chopped up into 3,259 PDF files.   A very large number of the files contain only a single page.  Instead of producing the files in their native format, the documents were all converted into PDF images and produced with no load file or any other type of index.[4]  Even defendant's financial Excel files were converted and originally produced as PDF files.[5]  As a result, defendant's Excel spreadsheets could not be sorted, tabulated or even displayed properly on a single screen.

---

[4] Since at least as early as the parties meet-and-confer on September 25, 2019, and as recently as October 25, 2019, defendant has promised to produce a load file but has not yet done so. See exh. 2.
[5] On October 14, 2019, defendant eventually produced 13 files in their native Excel format.

Moreover, the files were not organized or arranged in any logical order.  Financial, marketing, advertising, development, etc were all mixed together.  Likewise, non-confidential, confidential and highly confidential files were not segregated from one another.  Each PDF file was separately pass-coded regardless of status.  As a result of all of these conditions, the documents are not searchable in any efficient way.  Without such identification, the relevance of such documents is unknown.

Defendant did not avail itself of the option to organize and label the documents to correspond to the categories in the request.  On September 24, 2019, defendant filed supplemental responses to plaintiff's first set of interrogatories, which included a correlation table for interrogatory nos. 1, 3, 4, 5, 12, 13, and 14; however, none of defendant's original or supplemental responses to plaintiff's RFPs included any correlation table.

Because defendant's document production[6] did not satisfy Rule 34, defendant should be ordered to organize and label the documents it has produced to correspond to the categories of information set forth in plaintiff's request for production.  Defendant should also be ordered to produce the documents in their native format with all metadata preserved.  Alternatively, defendant should be ordered to produce a load file with all metadata for the documents it has produced.

### B.      Defendant Failed to Produce Responsive Documents, and Altered Others, That Identify Its Customers

On October 14, 2019, defendant finally produced 13 native Excel files for some financial information.  However, the native Excel files were *altered* to obscure the identity of defendant's customers.  Defendant deleted all customer identity information

---

[6] Defendant's document production includes three subsequent disclosures of documents on October 14, 16, and 18, which were produced in the same manner as defendant's initial document production but with several Excel native files.

and substituted it with a customer code.  Defendant did not provide the customer key

code.  Despite repeated oral and written requests by plaintiff, defendant Pencom failed to

produce such information. See exhs. 1 and 2.  Documents identifying the identity of

defendant's customers fall squarely within the scope of at least the 12 RFPs listed below:

21.   All Documents Relating to Defendant's sales of Relevant Fasteners
      during Time Period 1.
22.   All Documents Relating to Defendant's sales of Relevant Fasteners
      during Time Period 2.
23.   All Documents Relating to Defendant's sales of Relevant Fasteners
      during Time Period 3.
24.   All Documents Relating to Defendant's sales of clinch fasteners during
      Time Period 1.
25.   All Documents Relating to sales derived from customers or sales leads
      generated through any of Defendant's Online Keyword Advertising
      Programs during Time Period 2.
26.   All Documents Relating to sales derived from customers or sales leads
      generated through Defendant's PEM Online Keyword Advertising
      Program.
27.   All sales records and invoices Relating to sales of any Google Ad
      Fastener during Time Period 1.
28.   All sales records and invoices Relating to sales of any Substitute
      Fastener during Time Period 1.
29.   All sales records and invoices Relating to sales of any Double Dart
      Product during Time Period 1.
30.   All sales records and invoices Relating to sales of any of Defendant's
      clinch fasteners during Time Period 1.
53.   All customer lists for the Relevant Fasteners from Timer Period 1.
62.   All Documents Relating to Defendant's sales of Relevant Fasteners
      during Time Period 1, including, but not be limited to, detailed reports
      by customer, noting sale date, product sold, quantity, list and net price.

See exh. 3.  As described above, plaintiff has multiple counts for infringement, false advertising

and counterfeiting under the Lanham Act, 15 U.S.C. §1 et seq.  Under Section 35 of the Lanham

Act, plaintiff may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff,

and (3) the costs of the action." 35 U.S.C. §1117.  The plaintiff is entitled to discovery on all

theories, including plaintiff's lost profits, before electing its theory of recovery.  In order to

determine whether plaintiff lost any customers to defendant, plaintiff must inspect defendant's

customer list and conduct discovery of defendant's customers.  All documents disclosing defendant's customers are relevant to this litigation and should have been produced.  Therefore, defendant should be ordered to produce: (i) all sales documents identifying its customers; and (2) its original (unedited) native Excel financial files which disclose defendant's customers name, address, phone number, e-mail address and any other information gathered from the customer by defendant.

### C.   Defendant's Failure to Produce Its Customer Information Has Frustrated Plaintiff's Ability to Generate Its Expert Report on Damages

Defendant's failure to produce any customer information has thwarted discovery of plaintiff's potential lost profits, and thereby prevented plaintiff's damages expert from completing his damages report.  The original deadline for submitting expert reports was August 30, 2019 and was initially extended by agreement until October 21, 2019.  Because of the stalemate on production of customer information, the parties have agreed in principal to extend the October 21, 2019 deadline; however, the parties cannot agree on the duration of the extension. See exh. 2.  Defendant has proposed disclosing its customer information on October 28, 2019 and extending the expert deadline only until November 1, 2019.[7]  Defendant's proposal is unreasonably short because, among other things, it does not give plaintiff any time to depose a sample set of defendant's customers.  Plaintiff proposed a 3-4 week extension from the date on which defendant discloses its customer information.  Therefore, plaintiff also moves this court for an Order extending the expert witness deadlines by one month from the date defendant

---

[7] Defendant's proposal is contingent on plaintiff producing its customer information to defendant on that same date. Defendant is essentially holding its customer information "hostage."  Defendant has argued that plaintiff's customer information is relevant if plaintiff elects to claim damages based on lost profits.  Plaintiff agreed to produce its customer information if plaintiff elects lost profits as the measure of its damages.  However, unless and until plaintiff elects lost profits as the measure of its damages, plaintiff's customer information is irrelevant to any claim or defense and defendant has not articulated any other reason for needing such information.

properly responds to plaintiff's RFPs and produces its customer information.  In the alternative, plaintiff moves this court for an Order: (1) precluding defendant from using its customer information in any manner in this case; (2) precluding defendant from challenging disgorgement of defendant's profits as the appropriate remedy for defendant's infringement; and (3) extending the expert witness deadline until one month from the date of the Court's order. *See Schmidt v. Mars, Inc.*, 587 F. App'x 12, 16 (3d Cir. 2014)(defendant was prohibited from using any documents at trial that she failed to produce in discovery).

## IV.     Conclusion

For the reasons set forth herein, Penn Engineering & Manufacturing Corp. respectfully requests this Court to GRANT plaintiff's motion and issue plaintiff's proposed order.

Respectfully submitted,

Ryder, Mazzeo & Konieczny LLC


Dated: October 28, 2019            By:     /Joseph M. Konieczny, Sr./
                                           P.O. Box 670
                                           Plymouth Meeting, PA 19462
                                           (610) 940-1962 (voice)
                                           (610) 940-1963 (Fax)
                                           jkonieczny@ryderlu.com

                                           *Attorneys for Plaintiff*