IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENN ENGINEERING &** | : | **CIVIL ACTION** |
| **MANUFACTURING CORP.** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-513 |
| | : | |
| **PENINSULA COMPONENTS, INC.,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                                                    **August 3, 2021**

Presently pending before the Court is Defendant's Motion to Compel Discovery Related to the January 15, 2021 Expert Report of Erich Joachimsthaler (Mot. to Compel, ECF No. 193), Plaintiff's response thereto (Resp., ECF No. 204), and Defendant's reply in support.  (Reply, ECF No. 207).[1]  For the reasons that follow, Defendant's motion shall be **GRANTED IN PART** and **DENIED IN PART**.

I.     **RELEVANT BACKGROUND**[2]

Between October 16 and 20, 2020, the Vivaldi Group (Vivaldi), the company of Plaintiff's expert witness, Dr. Erich Joachimsthaler,[3] interviewed Penn Engineering &

---

[1] The Honorable Gene K. Pratter referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 161).

[2] The factual background is recounted in further detail in my April 1, 2021 memorandum granting in part and denying in part Plaintiff's consolidated motion to compel responses to requests for production and requests for admission.  (Memo., ECF No. 187).  The instant memorandum includes only factual and procedural history pertinent to this dispute.

[3] Joachimsthaler founded Vivaldi and serves as its Chief Executive Officer.  (Resp., ECF No. 204, at 2).

Manufacturing Corporation's (PEM) employees Suzanne Lawton, Greg Swafford and Chris Aldred. (Resp., ECF No. 204, at 2; Reply, ECF No. 207, at 3). PEM served Joachimsthaler's expert report on Peninsula Components, Inc. (Peninsula) on January 15, 2021. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 2; Reply, ECF No. 207, at 3). In his report, Joachimsthaler stated that he relied upon information provided in "[i]n-depth interviews" with these individuals. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 2; Resp., ECF No. 204, at 2). On January 28, February 2, March 30, April 7, April 20, and May 24, 2020, Peninsula requested notes from Vivaldi's interviews with Lawton, Swafford and Aldred and its invoices to PEM and/or its counsel for work performed on the report. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 3; Mot. to Compel, Exs. A-C, ECF No. 193-2; Reply, ECF No. 207, at 3). On May 25, 2020, PEM responded to Peninsula's request for interview notes as follows: "None exist. Drafts of the report withheld as not discoverable." (Memo. in Supp. of Mot. to Compel, Ex. D, ECF No. 193-2). On this date, PEM also produced a seven-page invoice with a total amount due visible on the first page but with the following six pages redacted.[4] (*Id.*, ECF No. 193-1, at 3-4; Mot. to Compel, Ex. D, ECF No. 193-2; *see also* Resp., Ex. 2, ECF No. 204-2). Peninsula noticed the depositions of Lawton, Swafford and Aldred and requested a less redacted version of the invoice on May 28, 2021. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 3-4; Mot. to Compel, Ex. E, ECF No. 193-2; Reply, ECF No. 207, at 4). On June 1, 2021, PEM refused to produce another version of the invoice, and on June 7, 2021, it objected to the deposition notices. (Mot. to Compel, Ex. F, ECF No. 193-2; Reply, ECF No. 207, at 4).

---

[4] On April 27, 2020, PEM also produced a single-page October 30, 2020 invoice showing Vivaldi's retainer. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 1 n.1, 3). This invoice is not at issue here.

Peninsula filed the instant motion to compel on June 8, 2021, to which PEM responded on June 22, 2021.  (Mot. to Compel, ECF No. 193; Resp., ECF No. 204).  Peninsula filed a reply in support of its motion on June 24, 2021.  (Reply, ECF No. 207).

**II**.     **LEGAL STANDARD**

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal litigation.  Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Although the scope of discovery is broad, it is not unlimited.  *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009); *see also Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012) ("Discovery is not without bounds . . . and courts will not permit parties to engage in fishing expeditions . . . .") (quoting *MacDermid Printing Sols., L.L.C., v. E.I. du Pont de Nemours & Co.*, No. 07-4325, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)).  Upon a party's motion or of its own accord, the court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

3

    (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

   A party who has received inadequate disclosures or discovery responses may seek a court order compelling production of the materials sought. *See* Fed. R. Civ. P. 37(a). The moving party must initially demonstrate the relevance of the information sought to a particular claim or defense. *Bostwick v. Shoop*, No. 1:09-CV-2212, 2010 WL 4536977, at *2 (M.D. Pa. Nov. 3, 2010) (citing *Paluch v. Dawson*, Civil No. 1:CV–06–01751, 2008 WL 2785638 at *2 (M.D. Pa. July 17, 2008)). Relevance in this context has been "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 349 U.S. 495, 501 (1947)). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Peay v. Fisher*, No. 3:15-CV-00345, 2016 WL 3876634, at *1 (M.D. Pa. July 15, 2016) (citing *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).

**III. DISCUSSION**

   Peninsula asks the Court to compel PEM to produce three forms of discovery. First, it requests that I overrule PEM's objections to the deposition notices for Lawton, Swafford and Aldred and order them to appear for their depositions. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 2; Reply, ECF No. 207, at 6-7). Second, it seeks a less redacted version of the Vivaldi invoice showing when and in what amount work was performed by which timekeeper, as well as "whether any reimbursement or other form of compensation was provided." (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 1-2). Third, it wants the portions of

Joachimsthaler's draft expert reports that reveal facts provided by Lawton, Swafford and Aldred to Joachimsthaler and ultimately relied upon him in forming his opinions. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 2; Reply, ECF No. 207, at 1-2).

### A. Depositions of Lawton, Swafford and Aldred

Peninsula observes that in Joachimsthaler's expert report he repeatedly refers to interviews conducted with Lawton, Swafford and Aldred. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 6; Reply, ECF No. 207, at 6). It asserts that the deposition of these individuals is appropriate because it is entitled to know the bases of the report and the only notes of the interviews are contained in draft reports that PEM refuses to produce. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 6). It maintains that, under these circumstances, the Court should exercise its discretion to permit additional depositions beyond the Rule 30 limit. (*Id.* at 7 n.4). It contends that courts routinely permit parties to depose witnesses who provide underlying facts to experts where the expert does not otherwise retain a record of the interaction with the witness. (*Id.* at 8 (citing *Walker v. BRE DDR Harbison Court LLC*, No. 3:17-cv-01586-JMC, 2019 U.S. Dist. LEXIS 128307, at *19 (D.S.C. Jan. 4, 2019))).

PEM counters that Peninsula has already exceeded the maximum number of allowable depositions (ten) without leave of court or consent of the parties and that Peninsula failed to seek its consent for these depositions before serving notices. (Resp., ECF No. 204, at 8-9). It complains that Lawton, Swafford and Aldred were identified in Joachimsthaler's expert report several months ago and that Peninsula already deposed Lawton. (*Id.* at 8; *see also* Reply, ECF No. 207, at 4). Substantively, it argues that the depositions are unreasonable and unnecessary because "Defendant may freely question Dr. Joachimsthaler regarding the factual information provided to him by the witnesses and relied on by him in his report." (Resp., ECF No. 204, at 10).

5

In reply, Peninsula rejects any argument that it is "too late" or has taken "too many depositions." (Reply, ECF No. 207, at 7). It points out that even though it sought documents memorializing the witness interviews as early as January 2021, PEM never informed Peninsula that it had none, except as embodied in the draft reports, until the end of May. (*Id.* at 6). It also observes that PEM has recently identified Aldred as a trial witness, without disclosing the subject area of his testimony, and that PEM previously failed to disclose that Vivaldi planned to interview Lawton the day after her deposition, thus depriving Peninsula of the opportunity to question her about those discussions. (*Id.* at 4). Further, it rejects PEM's contention that it does not need the additional depositions. Peninsula notes that "Dr. Joachimsthaler mentions witnesses Aldred, Lawton and Swafford at least 15 separate places in his report" and that, "[c]learly, these three witnesses were integral to the opinions" formulated by him. (Reply, ECF No. 207, at 6).

Federal Rule of Civil Procedure was amended in 1993 to "place presumptive limits on the number of depositions and interrogatories, subject to leave of court to pursue additional discovery." FED. R. CIV. P. 26(b) advisory committee's note to 1993 amendment. Rule 30(a)(2)(A)(i) now provides that parties require leave of court "if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken . . . ." FED. R. CIV. P. 30(a)(2)(A)(i); *see also* FED. R. CIV. P. 26(b)(2)(A) ("By order, the court may alter the limits in these rules on the number of depositions . . . under Rule 30."). Under amended Rule 30, "the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . ." FED. R. CIV. P. 30(a)(2).

Courts have held this requirement satisfied when a party seeking additional depositions beyond ten demonstrates that they are "reasonable and necessary." *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519(AET), 2006 WL 6487632, at *3 (D.N.J. Aug. 22, 2006); *see also Chabot v. Walgreens Boots All.*, No. 1:18-CV-2118, 2021 WL 949443, at *2 (M.D. Pa. Mar. 12,

2021) (quoting *Alaska Elec. Pension Fund*, 2006 WL 6487632, at *3); *Davis v. Solaris Oilfield Site Servs. Operating, LLC*, No. 2:19-cv-00627-RJC, 2020 WL 4041548, at *5 (W.D. Pa. July 17, 2020) (same). Depositions are generally found "reasonable and necessary," in turn, when a party has exhausted its available depositions, identified the would-be deponent with specificity, and made a "'particularized' showing of need" for the additional depositions. *Alaska Elec. Pension Fund*, 2006 WL 6487632, at *3-4. "To meet this requirement of a particularized showing of need, the moving party must go beyond general assertions regarding the potential relevance of the proposed deponents' testimony to demonstrate that the probable testimony of each proposed deponent is essential to the moving party's case." *Id.* at *4 (*Archer Daniels Midland Co. v. Aon Risk Servs.*, 187 F.R.D. 578, 587 (D. Minn. 1999)).

Here, the depositions of Lawton, Swafford and Aldred are reasonable and necessary. Peninsula has exhausted its available depositions and identified the proposed deponents by name. Rather than relying on blanket assertions of relevance, Peninsula has also shown a particularized need for their testimony. He points out that Joachimsthaler extensively references information provided by these three witnesses in his report. (Reply, ECF No. 207, at 6). Under the 2010 amendment to Rule 26(a)(2)(B)(ii), Peninsula has a right to all "facts or data" considered by Joachimsthaler in forming his report. FED. R. CIV. P. 26(a)(2)(B)(ii). However, Joachimsthaler does not have notes from the witness interviews, which PEM sought for the "purpose of being able to test the basis of a testifying expert's opinions at trial by use of a contemporaneous written record." (Mot. to Compel, Ex. D, ECF No. 193-2; Reply, ECF No. 207, at 6). PEM claims that Peninsula can obtain the necessary information in its deposition of Joachimsthaler, but his deposition will not permit Peninsula to fulfill this purpose. (Resp., ECF No. 204, at 10). The advisory committee notes to the 2010 amendment instruct that the phrase "facts or data" is to "be interpreted broadly to require disclosure of any material considered by the expert, from whatever

7

source, that contains factual ingredients." FED. R. CIV. P. 26(a)(2)(b) advisory committee's note to 2010 amendment. Further, discoverability "extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.* In light of Peninsula's clear right to this information, Peninsula has demonstrated a particularized need to take additional depositions beyond those normally allowed under Rule 30.

PEM's remaining arguments are easily addressed. Peninsula did not seek PEM's consent before issuing the deposition notices, but this fact does not serve as a reason to deny Peninsula the requested relief. *See* FED. R. CIV. P. 30(a)(2) (a party may exceed the limit on the number of depositions by stipulation of the parties *or* "leave of court"). Nor does the Court agree with PEM's contention that Peninsula should have sought the depositions earlier. PEM served Joachimsthaler's report on January 15, 2021, leading Peninsula on January 28, 2021, to request notes of interviews with Lawton, Swafford and Aldred. (Mot. to Compel, Ex. A, ECF No. 193-2). The depositions of these individuals only became necessary, however, four months later when PEM finally advised Peninsula that no interview notes existed. (*Id.*, Ex. D, ECF No. 193-2). After learning of this fact on May 25, 2021, Peninsula promptly issued deposition notices three days later. (*Id.*, Exs. D-E, ECF No. 193-2). It also does not prove dispositive that Peninsula has already deposed Lawton. According to Peninsula, PEM failed to disclose that Vivaldi intended to interview her on October 16, 2020, the day after her deposition, thus depriving Peninsula of an opportunity to question her about the information she provided in that interview. (Reply, ECF No. 207, at 4-5).

Accordingly, the Court grants the motion to compel insofar as Peninsula seeks to depose Lawton, Swafford and Aldred. Peninsula shall limit its questioning of Lawton and Swafford to the information they provided to Vivaldi during their October 2020 interviews. Because PEM

8

has recently identified Aldred as a trial witness, Peninsula need not limit its questioning of him to his interview, but shall instead proceed consistent with the Federal Rules of Civil Procedure.

### B. Draft Expert Reports

Peninsula also seeks any portions of draft expert reports containing facts that Lawton, Swafford and Aldred provided to Joachimsthaler and upon which he relied in forming his opinions. (Reply, ECF No. 207, at 2; *see also* Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 2). Peninsula argues that its right to discover all facts undergirding Joachimsthaler's report means that PEM must produce interview notes in whatever form they exist, including, as necessary, in draft expert reports. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 7). He asserts that discoverability hinges upon "whether the requesting party had other opportunities to uncover the underlying facts . . . ." *Id.* at 7-8 (citations omitted). PEM accuses Peninsula of "misrepresent[ing] the basis for requesting the draft reports" and claims that it never advised Peninsula that the draft reports contain interview notes. (Resp., ECF No. 204, at 7). It notes that Federal Rule of Civil Procedure 26(b)(4) protects drafts of expert reports from disclosure and that a court may compel their production only upon a showing by the discovering party of substantial need for the materials and an inability to obtain the information without undue hardship. (*Id.* (citing FED. R. CIV. P. 26(b)(4)(B); *In re Schaefer*, 331 F.R.D. 603, 615 (W.D. Pa. June 3, 2019))). PEM contends that Peninsula has failed to make this showing. It contends that Peninsula does not need the draft reports because PEM never stated that they contain interview notes. (*Id.* at 8). Further, it posits that Peninsula can obtain the information in its deposition of Joachimsthaler. (*Id.*).

In reply, Peninsula addresses PEM's accusation that it misrepresented the reasons that it needs the draft reports. It notes that in response to its request for interview notes PEM responded, "None exist. Drafts of the report withheld as not discoverable." (Mot. to Compel,

Ex. D, ECF No. 193-2). It submits that the only logical conclusion from this response is that although there are no stand-alone interview notes they are contained in Joachimsthaler's draft reports. (Reply, ECF No. 207, at 5). It points out that PEM has never claimed otherwise. (*Id.*).

The Court finds production of the draft reports unwarranted in light of the compelled depositions of Lawton, Swafford and Aldred. Federal Rule of Civil Procedure 26(b)(4)(B) expressly protects "drafts of any report or disclosure required under Rule 26(a)(2) [pertaining to expert witnesses], regardless of the form in which the draft is recorded." FED. R. CIV. P. 26(b)(4)(B). Under subsection (b)(3)(A), a party may discover these materials only if they are otherwise discoverable pursuant to subsection (b)(1) and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(i)-(ii). Here, Peninsula cannot make the required "undue hardship" showing. It acknowledges that, at most, only those portions of the draft reports reflecting facts provided by Lawton, Swafford and Aldred are potentially discoverable. (Reply, ECF No. 207, at 2; *cf. Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-cv-2706, 2016 WL 8291968, at *6 (D. Minn. Apr. 19, 2016) (ordering portions of draft expert reports containing editorial comments of other experts), *rev'd in part on other grounds*, 2017 WL 690186 (D. Minn. Feb. 21, 2017)). However, Peninsula can obtain the equivalent of this information by questioning these individuals about their communications with Vivaldi during their depositions, as ordered in the preceding section.

Accordingly, the Court denies the motion to compel insofar as it seeks production of portions of draft reports containing this information.[5]

---

[5] Although the Court denies this portion of the motion to compel, it rejects PEM's charge that Peninsula seeks the draft reports without basis. In response to Peninsula's request for interview notes, PEM represented that there were none and that it was withholding draft reports. (Mot. to Compel, Ex. D, ECF No. 193-2). PEM remains coy about whether the drafts in fact contain interview notes, but it is curious that PEM would reference draft expert reports in

C.     **Vivaldi's Invoice**

Finally, Peninsula seeks a less redacted version of Vivaldi's March 3, 2021 substantive invoice for its services, one showing individual timekeepers, when each performed work, how much each billed, and "whether any reimbursement or other form of compensation was provided" to Vivaldi or any affiliated individual.[6] (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 2). In the seven-page invoice produced, the first page lists a total amount due, but PEM redacted the remaining six pages. (*Id.*; *see also* Resp., Ex. 2, ECF No. 204-2). Peninsula claims that it needs the aforementioned information to establish Joachimsthaler's biases and to identify sources of facts and data on which he relied in forming his opinions. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 2).

PEM refutes that Peninsula could use this information to demonstrate bias and contends that Joachimsthaler has already identified his factual sources in his report. (Resp., ECF No. 204, at 4-5). PEM argues that the work-product doctrine protects information concerning the identity of individual timekeepers and when and how much each billed[7] insofar as it reveals counsel's mental impressions, for example, by betraying their views of the relative importance of different

---

response to a request for notes. And, as Peninsula observes, if the draft reports do not contain interview notes, and no separate notes exist, these facts mean that there is no written record of Vivaldi's interviews of Lawton, Swafford and Aldred. This certainly suggests that the draft reports contain this written record of the interviews.

[6] Peninsula does not seek disclosure of substantive descriptions of work performed. *See Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 593 (2016).

[7] PEM does not deny that it must disclose the fourth category of information requested by Peninsula, nonmonetary compensation paid to Vivaldi. (*See* Resp., ECF No. 204, at 3 & n.4 (stating that it understands the request to encompass information regarding "compensation other than money," but failing to assert that such information is not discoverable); *see also* FED. R. CIV. P. 26(b)(4) advisory committee's note to 2010 amendment ("[a]ny communications about additional benefits to the expert, such as further work in the event of a successful result in the present case," are discoverable)). Accordingly, PEM shall remove any redactions of this information in the invoice.

11

aspects of the case as reflected in the amount of time spent by timekeepers with different specialties. *Id.* (citing FED. R. CIV. P. 26(b)(3)). As with draft expert reports, PEM argues that Peninsula may discover this work product only upon a showing that it is otherwise discoverable under Rule 26(b)(1) and that Peninsula has a substantial need for it and cannot obtain similar information elsewhere without undue hardship. *Id.* (citing FED. R. CIV. P. 26(b)(3)(A)).

PEM also relies upon *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 2:17-cv-01023-JFC, 2019 WL 2501471 (W.D. Pa. Mar. 19, 2019) (special master report and recommendation), "as an example of a court that ordered disclosure of an expert's invoices with redactions, to only show (1) the total amount of time that each of its testifying expert witnesses spent conducting their analysis and drafting their expert reports and (2) the hourly rate or other billing rate for each expert." (Resp., ECF No. 204, at 5). Peninsula attempts to distinguish this case on the basis that it observed that the parties used "vague and general language" in their requests that they could not narrow "at the last minute" to obtain more specific information than initially requested. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 5). PEM denies that this observation served as the basis of the result in the case and instead posits that the primary reason for the refusal to compel disclosure of itemized time entries was the conclusion that production of total amounts of time and money billed accorded with the 2010 amendments to Rule 26. (*Id.* (citing *Sherwin-Williams Co.*, 2019 WL 2501471, at *4)). In support of this reading of the case, PEM excerpts *Sherwin-Williams*'s discussion of Rule 26's requirement that a party disclose the compensation paid to a testifying expert, including any related communications, and highlights its comparison of pre- and post-amendment cases. (*Id.* at 6 (citing *Sherwin-Williams Co.*, 2019 WL 2501471, at *5) (additional citations omitted)).

In *Sherwin-Williams*, the parties issued document subpoenas to each other's testifying experts for "All bills, invoices, and payments sufficient to show the amount of time You have

spent conducting Your Analysis and drafting Your Opening Expert Report and any Reply Report, as well as Your compensation for such time." 2019 WL 2501471, at *2. After the defendant objected on the basis of, *inter alia*, the work-product doctrine, the plaintiff proposed that the defendant redact the documents to show only timekeeper names, the dates and amounts of time billed, and the amounts paid (and offered to do the same in response to the plaintiff's subpoenas), but the defendant refused. *Id.* Upon consideration of the plaintiff's expedited motion to compel production of the redacted invoices, the Special Master first observed that the requests were "somewhat vague and general" to the extent that they did not specify what the plaintiff meant by "sufficient to show the amount of time." *Id.* at *3. He noted that the requests, as written, did not ask for "the amount of time each testifying expert spent on a daily basis" and the plaintiff could not, "at the last minute, seek to make it[s] [request] more specific" to require such itemized information. *Id.* However, he concluded that the requests sought, "at least, the total amount of time" each expert worked on his or her report "and the total compensation for that work." *Id.*

The Special Master further concluded that "[p]roduction of the total amount of time billed and the total amount of compensation is consistent with Federal Rule of Civil Procedure 26 as amended in 2010." *Id.* at *4. After recounting the Rule 26 disclosure requirements for communications between attorneys and testifying experts about compensation, he found that the parties could discover aggregated information because it "relate[s] to compensation for the expert's study or testimony" and because it would assist the parties to make "full inquiry into [compensation-related] potential sources of bias." *Id.* at *5 (citing FED. R. CIV. P. 26(b)(4)(C)(i); quoting FED. R. CIV. P. 26(b)(4) advisory committee's note to 2010 amendment). He then distinguished the plaintiff's cited cases. He pointed out that *EEOC v. Walmart*, No. CV 01-339-KKC, 2008 WL 11346464 (E.D. Ky. Aug. 5, 2008), which ordered production of unredacted

expert invoices, was decided prior to "the 2010 Amendments . . . designed to afford greater protection to communications between attorneys and experts." *Id.* (citing *Inman v. Gen. Elec. Co.*, No. 2:11CV666, 2015 WL 5084312 (W.D. Pa. Aug. 27, 2015)). He further observed that in the plaintiff's remaining cited cases, the court either permitted the responding party to disclose only total compensation or otherwise redact privilege information. *Id.* (citing *Ampersand Chowchilla Biomass v. United States*, 136 Fed. Cl. 589, 591 (2018); *Button v. Royal Caribbean Cruises*, No. 12-23624, 2013 WL 12064490 (S.D. Fla. 2013); *Amster v. R. Cap. Int'l Grp.*, No. 00-9708, 2002 WL 2031614 (S.D.N.Y. Sept. 4, 2002)).

For these reasons, the Special Master issued the following recommendations:[8]

> 1. Unless the parties otherwise agree, both Sherwin and PPG, should be ordered to produce all testifying expert witness invoices redacted to show:
>
>> a. the total amount of time that each of its testifying expert witnesses spent conducting their Analysis and drafting their respective expert reports (this includes all reports, including opening reports, rebuttal reports and reply reports);
>>
>> b. the hourly or other billing rates for each expert and any other persons or companies (employees, assistants, fellow experts who worked with them and/or contributed to their reports and billed time) and the total amount each testifying expert witness or other person received in compensation for such time (any person who billed time should be split out and separately accounted for); and
>>
>> c. the remaining time entry dates, the amount of time spent on each entry and descriptive information should be redacted.

*Id.* at *3.

---

[8] The docket in *Sherwin-Williams* does not indicate that the district court ever formally adopted or rejected the Special Master's Report and Recommendation.

Peninsula asserts that the basis for the decision in *Sherwin-Williams* was that the parties could not belatedly revise their "vague and general" requests for invoices "sufficient to show the amount of time" incurred by each other's experts to seek an itemized breakdown of their billings instead. (Memo. in Supp. of Mot. to Compel, ECF No. 193-1, at 5). However, this assertion proves only half-correct. The Special Master also identified a separate, seemingly independent basis for his conclusion: "Production of the total amount of time billed and the total amount of compensation is consistent with Federal Rule of Civil Procedure 26 as amended in 2010." *Sherwin-Williams Co.*, 2019 WL 2501471, at *4 (discussing Rule 26(b)(4) and advisory committee notes thereto). In doing so, he distinguished the sole case cited by Peninsula, *Ampersand Chowchilla Biomass, LLC*, on the basis that in that case "the court permitted defendant to redact privileged information contained within the billing records." *Id.* at *5. Because the Federal Claims Court in *Ampersand Chowchilla Biomass* did not specify what information the defendant could redact, the case does not foreclose Peninsula's argument that PEM has redacted too much. But, for this same reason, it does not answer the question of what PEM may redact.

As noted in *Sherwin-Williams*, both before and after the 2010 amendments to Rule 26, courts have refused to order "a breakdown of the compensation in an invoice" where the movant fails to show a need for such information. *Id.* (citing *Amster*, 2002 WL 2031614, at *2; *Button*, 2013 WL 12064490, at *3-4). Peninsula fails to make such a showing here. It argues without explanation that the information will "establish[ ] potential biases of plaintiff's expert," but Peninsula does not explain how details about how much money was billed on what date by which timekeeper will demonstrate the expert's bias in a way that aggregated information will not. Nor does Peninsula need itemized daily information to "identify the sources of facts and data on which plaintiff's expert relied in forming his opinion." (Memo. in Supp. of Mot. to

15

Compel, ECF No. 193-1, at 2). First, this information, to the extent reflected in the original unredacted invoice, would appear only in timekeepers' substantive descriptions of the tasks performed, which Peninsula tacitly concedes that it may not discover. *See Davita Healthcare Partners, Inc.*, 128 Fed. Cl. at 593. Second, as PEM points out, Joachimsthaler's report already identifies the sources of facts and data provided to him. Peninsula also remains free to question Joachimsthaler about any additional sources at his deposition.

I find *Sherwin-Williams* persuasive and grant similar relief in this case. PEM shall produce a new redacted version of the invoice showing each timekeeper's billing rate and the total monetary amount of his or her billings.[9] Peninsula may redact the dates, substantive descriptions and amounts of time billed in specific entries.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Peninsula's motion. PEM shall produce Suzanne Lawton and Greg Swafford for deposition limited to the information

---

[9] The Special Master recommended that responding parties produce each timekeeper's billing rate and total monetary billings and only the testifying experts' total amount of time billed. *Sherwin-Williams Co.*, 2019 WL 2501471, at *3. However, with the first two pieces of information, each timekeeper's rate and total amount of money billed, it is possible to determine the amount of time billed as well. PEM contends that this information is protected work product because it may reveal counsel's mental impressions insofar as timekeepers with different specialties billed different amounts of time. (Resp., ECF No. 204, at 4). However, as noted in *Sherwin-Williams*, the protection for communications between attorneys and testifying experts, and those assisting them, is not absolute. *Sherwin-Williams Co.*, 2019 WL 2501471, at *3. Federal Rule of 26(b)(4)(C)(i) specifically makes discoverable "communications [that] relate to compensation for the expert's study or testimony." FED. R. CIV. P. 26(b)(4)(C)(i); *see also* FED. R. CIV. P. 26(a)(2)(B)(vi) (requiring expert reports to include "a statement of the compensation to be paid for the study and testimony in the case"). *Sherwin-Williams*, upon which PEM so heavily relies, found that aggregate figures about time incurred by each timekeeper – or information allowing a party to calculate these figures – were discoverable under Rule 26(b)(4). *Sherwin-Williams Co.*, 2019 WL 2501471, at *3 (compelling production of "the total amount *each* testifying expert witness or other person received in compensation for such time") (emphasis added).

they provided to the Vivaldi Group during their October 2020 interviews. It shall produce Chris Aldred for deposition consistent with the Federal Rules of Civil Procedure. Further, PEM shall produce a less redacted version of its March 3, 2021 invoice showing each timekeeper's billing rate and the total monetary amount of his or her billings. PEM must produce the deponents and invoice within 10 days of the date of this memorandum and the accompany order, unless mutually agreed otherwise by both parties.

    In all other respects, the Court denies the motion.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge