IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENN ENGINEERING & | : | CIVIL ACTION |
| MANUFACTURING CORP. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-513 |
| | : | |
| PENINSULA COMPONENTS, INC., | : | |
| Defendant. | : | |

## MEMORANDUM

SITARSKI, M.J.                                                          August 12, 2021

Presently pending before the Court is Defendant's Motion to Compel Production (Mot. to Compel, ECF No. 200),[1] Plaintiff's response thereto (Resp., ECF No. 212), and Defendant's reply in support.  (Reply, ECF No. 216).[2]  For the reasons that follow, Defendant's motion shall be **GRANTED IN PART** and **DENIED IN PART**.

## I.      RELEVANT BACKGROUND[3]

At her depositions in this matter on June 9 and June 14, 2021, Penn Engineering & Manufacturing Corporation's (PEM) corporate designee, Meghan Brown, disclosed the existence of three unproduced documents: (1) an internal email chain among senior PEM staff discussing

---

[1]  Also pending before the Court is a version of the motion with its redactions removed. (Unredacted Mot. to Compel, ECF No. 203).

[2]  The Honorable Gene K. Pratter referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 161).

[3]  For additional facts, see my April 1, 2021 memorandum granting in part and denying in part Plaintiff's consolidated motion to compel responses to requests for production and requests for admission.  (Memo., ECF No. 187).  The instant memorandum includes only factual and procedural history pertinent to this dispute.

how Peninsula Components, Inc. (Peninsula) obtained fasteners from a PEM distributor and

whether PEM permits its distributors to sell its fasteners to competitors like Peninsula; (2) a

report of all sales of PEM fasteners by PEM distributors; and (3) one or more reports showing

returns by PEM distributors of nonconforming or defective PEM products.  (Unredacted Memo.

in Supp. of Mot. to Compel, ECF No. 203-1, at 1-3; Resp., ECF No. 212, at 3-5).  Peninsula's

counsel attempted to question Brown about the contents of the documents, but PEM's counsel

instructed her not to answer.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1,

at 4).  PEM also refused to produce the documents on the grounds of the attorney-client privilege

and work-product doctrine.  (*Id.*, Ex. C, ECF No. 203-4, at 2).

Peninsula filed the instant motion to compel on June 15, 2021, to which PEM responded

on June 29, 2021.  (Mot. to Compel, ECF No. 200; Resp., ECF No. 212).  Peninsula filed a reply

in support of its motion on July 6, 2021.  (Reply, ECF No. 216).


## II.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal

litigation.  Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible
> in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Although the scope of discovery is broad, it is not unlimited.  *Inventio AG v.*

*Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009); *see also Eisai Inc.*

*v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012)

("Discovery is not without bounds . . . and courts will not permit parties to engage in fishing

expeditions . . . .") (quoting *MacDermid Printing Sols., L.L.C., v. E.I. du Pont de Nemours &*

*Co.*, No. 07-4325, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)).  Upon a party's motion or of

its own accord, the court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to
> obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

A party who has received inadequate disclosures or discovery responses may seek a court

order compelling production of the materials sought.  *See* FED. R. CIV. P. 37(a).  The moving

party must initially demonstrate the relevance of the information sought to a particular claim or

defense.  *Bostwick v. Shoop*, No. 1:09-CV-2212, 2010 WL 4536977, at *2 (M.D. Pa. Nov. 3,

2010) (citing *Paluch v. Dawson*, Civil No. 1:CV–06–01751, 2008 WL 2785638 at *2 (M.D. Pa.

July 17, 2008)).  Relevance in this context has been "construed broadly to encompass any matter

that could bear on, or that could reasonably lead to other matter that could bear on any issue that

is or may be in the case."  *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978) (citing

*Hickman v. Taylor*, 349 U.S. 495, 501 (1947)).  "The burden then shifts to the opposing party,

who must demonstrate in specific terms why a discovery request does not fall within the broad

scope of discovery or is otherwise privileged or improper."  *Peay v. Fisher*, No. 3:15-CV-00345,

2016 WL 3876634, at *1 (M.D. Pa. July 15, 2016) (citing *Goodman v. Wagner*, 553 F. Supp.

255, 258 (E.D. Pa. 1982)).

### III.   DISCUSSION

Based upon the documents Brown referenced at her deposition, Peninsula seeks to

compel three categories of information:

> Internal Penn Engineering & Manufacturing Co. correspondence
> regarding its policy and practices (if any) with respect to its
> distributors who sell products to competitors such as Peninsula.
>
> Facts kept by plaintiff in its distributor database that show every
> reported sale by a distributor and therefore would enable plaintiff
> and Peninsula to determine how many times plaintiff's distributors
> have in fact sold product to plaintiff's competitors – including
> Peninsula – during any given time period.
>
> Factual information that plaintiff possesses showing quality-based
> returns of plaintiff's products by plaintiff's distributors.

(Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 1-4).

PEM notes that it has agreed to produce "some" "non-privileged or non-protected

business records that are relevant to this litigation," but it refuses to produce the documents

specifically cited by Brown at her depositions, citing the attorney-client privilege and work-

product doctrine.  (Resp., ECF No. 212, at 3-6).  It argues that to the extent the documents are

protected by the work-product doctrine only, Peninsula has failed to demonstrate a substantial

need for, and undue hardship without, the documents to justify disclosure.  (*Id.* at 9).  It further

contends that Peninsula's motion is untimely as to the first two categories of documents and that

the third category is overbroad and unduly burdensome and seeks irrelevant information.  (*Id.* at

9-12).

Peninsula insists that PEM's promised limited document production does not moot the

dispute.  (Reply, ECF No. 216, at 1).  It maintains that PEM has failed to carry its burden of

demonstrating the claimed protections.  (*Id.* at 2-3).  It stresses that, in any event, it does not seek

protected documents, but that it may discover factual information contained within those

documents.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 7; Reply, ECF

4

No. 216, at 2).  Finally, Peninsula denies that its motion, filed on the last day of fact discovery, is untimely, or that it seeks irrelevant information.  (*Id.* at 5-7).

### A.    The Work-Product Doctrine[4]

Rule 26(b)(3) codifies the availability of the work-product protection in federal cases. *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121 (D.N.J. 2002).  Pursuant to this rule, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . )."  FED. R. CIV. P. 26(b)(3)(A).  "In the Third Circuit, courts employ a two-part test to determine whether particular documents are protected by the work product doctrine."  *Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*, 2010 WL 4292175, at *11 (D.N.J. Oct. 21, 2010).  First, I must "examine whether the documents at issue were prepared in reasonable anticipation of litigation."  *Id.*  Next, I must "determine whether the documents in question were prepared with the primary purpose of litigation."  *Id.* (citing *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183-184 (D.N.J.2003)); *see also In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) ("the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation" (quoting 8C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024, at 198 (1970))). The party asserting the doctrine bears the burden of proving that it applies.  *Raritan Bay Fed. Credit Union*, 2010 WL 4292175, at *11 (citing *Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982); *In re Grand Jury Investigation*, 599 F.2d at 1235).

---

[4]  Because the Court finds, as set forth below, that the work-product doctrine protects the three documents specifically mentioned by Brown at her depositions, I do not consider the applicability of the attorney-client privilege.

"'The first prong of the inquiry is the reasonable anticipation test [,]' which requires a party to 'show that there existed an identifiable specific claim of impending litigation when the materials were prepared.'" *Raritan Bay Fed. Credit Union*, 2010 WL 429175, at *12 (quoting *In re Gabapentin Patent Litig.*, 214 F.R.D. at 183) (additional quotations omitted). A "remote," "inchoate" or even "likely" prospect of litigation is insufficient. *Id.* (quoting *In re Gabapentin Patent Litig.*, 214 F.R.D. at 183) (additional citations omitted). Nor is attorney involvement or the fact that litigation ultimately occurred dispositive. *Id.* The second prong, the "primary purpose" test, requires me to determine if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (quoting *In re Grand Jury Proceedings*, 604 F.2d at 803; *In re Gabapentin Patent Litig.*, 214 F.R.D. at 184). "Documents created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are routinely prepared in the ordinary course of business are outside the scope of work product protection." *Id.* (quoting *In re Gabapentin Patent Litig.*, 214 F.R.D. at 184).

In addition, "the work-product protection cannot be asserted to prevent disclosure of the underlying facts, which are discoverable in any adversary proceeding." EDNA S. EPSTEIN, ATTORNEY-CLIENT PRIVILEGE & THE WORK-PRODUCT DOCTRINE 2.I.D (6th ed. 2017). Rather, "[c]ourts will generally order production of the information sought, in any form in which the producing party can gather it, reserving the right to claim work-product protection for a particular document." *Id.* The producing party "may choose in what form it produces relevant factual information. But, it cannot withhold relevant information on the basis of attorney work-product." *Koch Materials Co.*, 208 F.R.D. at 121.

Even where the work-product doctrine applies, courts may order production of otherwise protected materials if the discovering party could otherwise obtain them under Rule 26(b)(1) and

it demonstrates that it has a "substantial need" for them but cannot acquire the information

elsewhere "without undue hardship . . . ." FED. R. CIV. P. 26(b)(3)(A)(i)-(ii).  However, in

ordering production, the court still "must protect against disclosure of the mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning

the litigation." FED. R. CIV. P. 26(b)(3)(B).

     **B.**    **Policies and Practices Regarding Distributor Sales to Competitors**

    First, Peninsula moves to compel internal PEM correspondence about its policies and

practices, if any, concerning sales of its products by PEM distributors to PEM's competitors,

including Peninsula.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 7;

Reply, ECF No. 216, at 1-2).  It observes that these documents are relevant because if PEM

permitted or acquiesced in the resale of its products to competitors, that fact would tend to

undercut PEM's assertion that Peninsula violated the law by reselling the products yet again and

would also tend to substantiate Peninsula's laches and statute of limitations defenses, given

PEM's knowledge of the practice.  (*Id.* at 2).  Regarding the email chain specifically referenced

by Brown at her deposition, Peninsula asserts that it "seeks only the facts reflected in the email

messages," not the entire document itself.  (*Id.* at 7).

    PEM responds that the work-product doctrine protects the email chain because its

personnel created it in response to counsel's request for information about "how Defendant was

able to purchase authentic PEM fasteners from one of PennEngineering's distributors."  (Resp.,

ECF No. 212, at 3-4, 6).  It also asserts that the attorney-client privilege protects the document

because the communications in it occurred on behalf of and were shared with PEM's attorney to

obtain his legal advice.  (*Id.* at 4-5).  PEM posits that insofar as Peninsula otherwise requests

discoverable documents regarding its policies and procedures about distributor resales to

competitors, that request is late because no timely issued request for production of documents

(RFP) asked for such documents.  (*Id.* at 7-8).  Further, it claims that it knows of no responsive

documents other than the protected email chain.  (*Id.* at 7).  Nevertheless, it promises to search

for and produce "all non-privileged and non-protected documents in this category."  (*Id.* at 8).

Peninsula replies that PEM's promise does not suffice and reiterates its request for a court

order.  (Reply, ECF No. 216, at 2).  It asserts that PEM has failed to identify its basis for

withholding the email chain or to set forth facts establishing that basis.  (*Id.* at 2-3).  Peninsula

complains that PEM did not previously provide this information for the email chain (or for the

other documents mentioned by Brown at her depositions).  (*Id.* at 3-4).  Rather, Peninsula argues

that "[t]his . . . appears to be a textbook example of a party claiming protection because it sent

fact information to its lawyer."  (*Id.* at 4).  Lastly, it maintains that it timely requested this

category of documents in RFP number 98.  (*Id.* at 7 n.5).

The Court agrees with PEM that the work-product doctrine protects the email chain itself.

PEM personnel obviously created it in "reasonable anticipation" of litigation, which had begun

nearly two years prior to the emails.  *See Raritan Bay Fed. Credit Union*, 2010 WL 429175, at

*12.  Further, PEM drafted the email chain for the "primary purpose" of the litigation,

specifically, to inform counsel "how Defendant was able to purchase authentic PEM fasteners

from one of PennEngineering's distributors."  *See id.*; *see also* Resp., ECF No. 212, at 3-4.

Regrettably, PEM apparently did not advise Peninsula of this purpose previously, but the Court

nonetheless finds PEM's assertion of the work-product doctrine proper.  Contrary to Peninsula's

contention, PEM did not draft the email chain in the usual course of business and only later

forward it to its attorney to claim protection over it.  (*See* Reply, ECF No. 216, at 4; *see also*

*Raritan Bay Fed. Credit Union*, 2010 WL 429175, at *12).  Instead, the document exists

"because of" the litigation and is therefore protected work product.[5]  *See In re Grand Jury*

*Proceedings*, 604 F.2d at 803; *Raritan Bay Fed. Credit Union*, 2010 WL 429175, at *12.

"However, because the work product privilege does not protect the facts in [a] document

(the privilege protects documents, not facts), the party seeking those facts may obtain them

through other means of discovery, such as through depositions and interrogatories."  *ECDC*

*Envtl. LC v. N.Y. Marine & Gen. Ins. Co.*, No. 96CIV.6033(BSJ)(HBP), 1998 WL 614478, at

*16 (S.D.N.Y. June 4, 1998) (citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d

1252, 1262 (3d Cir. 1993); *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 150-51

(D.N.J. 1997)).  Here, Peninsula has issued RFP number 98 covering the factual information it

seeks in the email chain.  (Resp., Ex. 4, ECF No. 212-4, at RFP No. 98).  PEM agrees to produce

all responsive unprotected documents requested by Peninsula, but it is not clear that its promised

production is as broad as what RFP number 98 requests.  The RFP seeks documents relating to

policies for "authorized distributors" of PEM products, but PEM takes the position that

distributors that sell to PEM's competitors are instead "non-compliant authorized distributors,"

such that RFP number 98 seeks different information than that at issue in this category.  (*Id.*;

Resp., ECF No. 212, at 7).  But nowhere does the RFP limit itself to policies regarding

distributors that both are authorized to deal in PEM's products and comply with those policies.

Indeed, it seems illogical that PEM would have policies applicable to "unauthorized" distributors

---

[5]  As noted, work product is discoverable upon a showing by the discovering party that
the material is otherwise discoverable under Rule 26(b)(1) and "that it has substantial need for
the materials to prepare its case and cannot, without undue hardship, obtain their substantial
equivalent by other means."  FED. R. CIV. P. 26(b)(3)(A)(i)-(ii).  Peninsula disavows that it seeks
any work product in this case.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1,
at 7).  Further, it does not directly address its "substantial need" for any of the documents
specifically referenced by Brown or its inability to obtain the information contained therein
"without undue hardship."  Even if it had, the Court would deny any request for work product in
light of the substantially equivalent information ordered produced in this memorandum.

that, by their very nature, operate without authority from PEM.  The fact that PEM's authorized distributors may engage in allegedly unauthorized activity, such as selling to PEM's competitors, does not take the policies applicable to them outside the scope of RFP number 98.

Similarly, PEM asserts that it has no unprotected documents regarding policies applicable to its distributors that sell its products to Peninsula because PEM only "discovered for the first time during this litigation that Defendant had been purchasing" its products from its distributors. (Resp., ECF No. 212, at 7).  PEM bases this narrow reading of the motion to compel – that it only seeks policies concerning distributors that sold to Peninsula specifically – on the fact that the motion seeks information about policies regarding PEM distributors that sell PEM products "to competitors such as Peninsula."  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 7; Reply, ECF No. 216, at 1).  But Peninsula's motion seeks policies that implicate sales to all "competitors," not just Peninsula, and RFP number 98's broad request for all applicable policies likewise contains no such limitation.  (*Id.*; Resp., Ex. 4, ECF No. 212-4, at RFP No. 98).

Accordingly, the Court denies the motion to compel insofar as it seeks the internal email chain among senior PEM staff discussing how Peninsula obtained PEM fasteners from a PEM distributor.  However, the Court grants the motion insofar as it seeks all documents regarding any policies and practices with respect to PEM distributors that sell PEM products to PEM's competitors.

## C.  Database of Distributor Sales

Second, Peninsula moves to compel information in PEM's database showing distributor sales.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 7; Reply, ECF No. 216, at 2).  Peninsula learned at Brown's deposition that PEM's distributors must provide sales information monthly, that PEM stores this information in a database and that Brown had another

employee search the database to determine which distributor sold PEM products to Peninsula. (*Id.* at 2-3). Peninsula notes that the information in the database will allow it to determine how often and when PEM's distributors have sold PEM products to its competitors, including Peninsula. (*Id.*). It contends that this information is relevant for the reasons set forth above, that is, it may undercut PEM's claim that Peninsula's reselling of its products violated the law and substantiate its defenses to that claim. (*Id.* at 2).

Citing *In re Adiguzelli*, No. 11-25483, 2012 Bankr. LEXIS 2405 (Bankr. D.N.J.. May 29, 2012), PEM responds that the work-product doctrine and attorney-client privilege protects the report of distributor sales referenced at Brown's deposition because she had the document prepared at the request of, and subsequently circulated it to, counsel. (Resp., ECF No. 212, at 4-5). PEM asserts that the information in the database does "not necessarily fall within the scope of Defendant's RFPs," but it nonetheless agrees to "produce a spreadsheet from its database of all sales from authorized distributors to Defendant." (*Id.* at 8). According to Peninsula, this concession renders the dispute as to information in the database moot. (*Id.*).

Peninsula replies that "Plaintiff's promise to produce some sort of limited spreadsheet containing information of its choosing . . . does not resolve this matter." (Reply, ECF No. 216, at 1-2). Peninsula contends that although PEM produced a spreadsheet at the close of fact discovery, it remains unclear what information it contains. (*Id.* at 2). It maintains that PEM fails to address "what other information it is or is not telling the Court it will produce, when it will produce such information, and why it was not produced earlier." (*Id.*). To the extent that PEM denies that Peninsula has requested the information in the database, Peninsula points to RFP number 101, which asks for all known or reported instances of unauthorized sales by authorized distributors. (*Id.* at 7 n.5). Peninsula also reiterates its claim that PEM has failed to carry its

burden of demonstrating protection for the documents referenced by Brown at her deposition, including the original distributor sales report.  (*Id.* at 3).

      The Court again finds the specific documents at issue protected but the general category of information requested discoverable.  PEM created the distributor sales report, and the associated email chain, in the midst of and "because of" the pending litigation.  (Resp., ECF No. 212, at 4-5; *see also Raritan Bay Fed. Credit Union*, 2010 WL 429175, at \*12.).  They reflect counsel's "mental impressions, conclusions, opinions, [and] . . . theories" about what information is important to PEM's claims and are work product.[6]  *See* FED. R. CIV. P. 26(b)(3)(B); *Raritan Bay Fed. Credit Union*, 2010 WL 429175, at \*12.  However, as PEM concedes in part, it must produce the factual information in the database responsive to RFP number 101.  The Court is not convinced that the spreadsheet provided to Peninsula includes all responsive information, insofar as it contains only authorized distributors' sales "to Defendant," whereas the RFP seeks all sales "to non-authorized distributors and/or representatives," not just Peninsula.  (Resp., ECF No. 212, at 8).  As Peninsula explains, information regarding sales to others as well is relevant because PEM's acquiescence in the sale of its products to competitors may undercut its claim that Peninsula violated the law by reselling the products.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 7; Reply, ECF No. 216, at 2).  PEM's knowledge of the resales may also lend support to Peninsula's affirmative defenses to PEM's claims.  (*Id.*).  Thus, PEM's

---

     [6]  I find the database sales report, and the spreadsheet of distributor returns discussed in the next section, to be work-product on the basis of Rule 26(b)(3) and the two-part test described in *Raritan Bay Federal Credit Union*, not on the basis of the court's treatment of the document at issue in *In re Adiguzelli*.  Although, like here, the document in *In re Adiguzelli* was "a compilation of information derived from another source," it contained, unlike here, "notes and highlightings obviously intended for use by counsel . . . ."  *See In re Adiguzelli*, 2012 Bankr. LEXIS 2405, at \*5.  I note, however, that the court in that case also found that the discovering party had a right to the underlying information contained in the document, just not the document itself.  *Id.*

production of a spreadsheet containing only some of the requested information does not moot Peninsula's motion as to this category of information.

Accordingly, the Court denies the motion to compel insofar as it seeks the distributor sales report and associated email chain generated by PEM at counsel's direction.  However, the Court grants the motion insofar as it seeks information in PEM's database showing authorized distributor sales to unauthorized distributors or representatives.

### D.   Information Regarding Quality-Based Returns

Third, Peninsula moves to compel information PEM possesses showing returns of PEM's products by its distributors for quality reasons.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 3-4).  At her deposition, Brown testified that she had provided PEM's counsel with one or more spreadsheets cataloguing instances in which PEM's distributors had returned PEM products because they were defective or otherwise nonconforming.  (*Id.* at 3).  Peninsula asserts that "quality issues reported by members of the very marketplace in which plaintiff contends Peninsula is harming plaintiff by selling inferior product" are relevant.  (*Id.*).  It notes that PEM has tested the quality of Peninsula's products and produced an expert report identifying alleged defects.  (*Id.*).  It also contends that information regarding returns is relevant to PEM's claim that Peninsula, in violation of the law, "materially altered" the PEM products it sold because did not provide the same warranty for them that PEM provides.  (*Id.* at 3-4).  Peninsula argues that distributor returns, which PEM must approve pursuant to its warranty policy, "will reflect whether and how plaintiff actually implements its supposed warranty on its parts."  (*Id.* at 3).

PEM responds that the work-product doctrine and attorney-client privilege protect the spreadsheet and related email chain because PEM employees created them after its counsel asked Brown "to generate a specific report regarding certain product returns" and return the document

to counsel for their consideration.  (Resp., ECF No. 212, at 5).  PEM argues that Peninsula's

request for information about quality-based returns is overly broad and unduly burdensome

because the underlying RFP contains no temporal limitation.[7]  Further, it posits that the request

is overbroad and seeks irrelevant information because only the quality of Peninsula's products,

not its own, is at issue in the litigation.  (*Id.* at 10).  It contends that its claims require only a

"likelihood of confusion" between its and Peninsula's products, not that the latter be proven

"inferior," and observes that it refers to Peninsula's products as such "only once" in its operative

complaint.  (*Id.* at 11 (citing *Interspace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983))).  PEM

points out that Peninsula deposed Brown extensively about its warranty, as written and as

implemented, and dismisses as a "conspiracy theory" Peninsula's suggestion that it does honor it.

(*Id.*).  It claims, in effect, that the issue of how the parties implement their respective warranties

for PEM products is a red herring because "Defendant has admitted that it provides *no warranty*

for the authentic PEM fasteners it sells . . . ."  (*Id.* (emphasis in original)).  It maintains that raw

data about returns of its products will prove "useless" without additional information about the

total number of products sold or the "return rate" for products.  Finally, it notes that Peninsula

has not disclosed the return rates for its products.  (*Id.* at 10).

---

[7]  PEM states that "[t]his request most-closely correlates to RFP nos. 117 and 118," which ask for, respectively, documents regarding "instances where a Plaintiff's Fastener Product was returned to Plaintiff or its authorized distributor or representative by any customer as defective or non-conforming" and any "follow-up and/or action step taken . . . ."  (Resp., ECF No. 212, at 9; *see also* Resp., Ex. 4, ECF No. 212-4, at RFP Nos. 117-18).  Peninsula appears to assert that its present request falls within the scope of RFP number 104, which asks for documents regarding "the return of any Plaintiff's Fastener Product to Plaintiff by an authorized distributor or representative because the product was alleged to be defective or non-conforming." (Reply, ECF No. 216, at 7 n.5; *see also* Resp., Ex. 4, ECF No. 212-4, at RFP No. 104).  The Court finds the information Peninsula seeks to compel potentially responsive to any or all of these RFPs.  However, it also notes that none of the RFPs include a temporal limitation.

Peninsula reiterates that it does not seek protected documents but denies that PEM has carried its burden of showing that any protection applies.  (Reply, ECF No. 216, at 2-4).  It maintains that even if the specific documents at issue are not discoverable, the general category of information it seeks is.  (*Id.* at 3).  It also opposes PEM's relevance arguments.  It notes that PEM initially objected to Peninsula's request to test samples of PEM's products on the grounds that whether Peninsula's products are inferior was irrelevant, but it later abandoned that position and produced the samples.  (*Id.* at 5).  It points out that PEM is the party that put the comparative quality of the two companies' products at issue by pleading the alleged inferiority of Peninsula's products in its complaint.  (*Id.* at 6).  Peninsula further observes that PEM itself considers this information relevant because its counsel requested that Brown compile the information in a report for their use in the litigation, which is exactly why PEM now claims the report is work-product.  (*Id.*).  Lastly, it argues that the logical conclusion to PEM's argument that the gross number of returns is useless without the total number of sales to calculate the return rate is that PEM should produce that information as well.  (*Id.*).  To the extent that PEM does not produce this additional information, Peninsula asserts that any lack of completeness of the information goes to its admissibility at trial, not its relevance for purposes of discovery.  (*Id.*).

Applying the Third Circuit's two-part test, the Court finds that the spreadsheet and associated email chain are work product.  *See Raritan Bay Fed. Credit Union*, 2010 WL 429175, at *12.  PEM's counsel asked Brown "to generate a specific report regarding certain product returns."  (Resp., ECF No. 212, at 5).  The spreadsheet referenced by Brown at her deposition is that report.  The spreadsheet, as well as the email chain regarding its formation and forwarding it to counsel, were created during the pending litigation.  Further, these documents were not "prepared in the ordinary course of business" but rather at the specific request of counsel

"because of" the pending litigation.  *In re Grand Jury Proceedings*, 604 F.2d at 803; *Raritan Bay Fed. Credit Union*, 2010 WL 429175, at *12.  Both documents are work product.

Although Peninsula may not discover the spreadsheet and email chain, PEM must produce information about quality-based returns of PEM's products by its distributors.  This information is relevant for the reasons stated in Peninsula's briefing.  First, and perhaps most importantly, PEM put the quality of Peninsula's products vis-à-vis its own at issue by pleading in its Second Amended Complaint that "Defendant is using the Infringing Marks on inferior products."  (Sec. Am. Compl., ECF No. 211, at ¶ 55).  PEM argues that it mentions the alleged inferiority of Peninsula's products "only once" in its complaint, but even if that mattered, it is not exactly true.  PEM goes on to aver in its complaint not only that Peninsula's facilities lack "the same industry certifications" as its facilities, but also that Peninsula "lacks the same quality-control procedures" in its manufacturing process.  (*Id.*).  It also avers that Peninsula holds its products out as having "the same properties, quality and performance characteristics" as PEM's, but that it fails to verify this by independent product testing.  (*Id.* at ¶ 54; *see also id.* at ¶ 16 (discussing PEM's "superior product quality")).

Further, whatever the initial references to the relative quality of the parties' products in the complaint, this issue has become significant in the litigation.  The parties have produced product samples for each other to test, as well as expert reports addressing this issue.  (Unredacted Memo. in Supp. of Mot. to Compel, ECF No. 203-1, at 3; Reply, ECF No. 216, at 5).  Indeed, PEM's contention that quality information, such as the number of quality-based returns of its products, is irrelevant is belied by the fact that its own counsel asked Brown to have this information compiled for them in June of this year.  (Reply, ECF No. 216, at 5).  To the extent that information about returns may also prove relevant to Peninsula's defense to PEM's claim that Peninsula does not warranty its products like PEM does, that is simply an additional

reason that the information should be produced.  (*See* Unredacted Memo. in Supp. of Mot. to

Compel, ECF No. 203-1, at 3; Reply, ECF No. 216, at 3-4).  But the information is clearly

relevant to PEM's assertion that the quality of Peninsula's products does not match the quality of

its own products.

      The Court is not persuaded by PEM's contentions that information about returns is

irrelevant.  PEM complains that this information is irrelevant to the warranty issue because

Peninsula provides no warranty at all, and thus there is no comparison to be made between how

the two companies implement warranties.  (Resp., ECF No. 212, at 11-12).  However,

information about how PEM implements its warranty may prove relevant to the degree of

difference between the companies' respective practices regarding returns, and in any event the

Court does not base its decision solely on the information's relevance to the warranty issue

because the information is also relevant to the relative quality of the parties' products.  PEM also

posits that raw data about returns of its products is irrelevant without information about the rate

at which products are returned, but the Court disagrees.  (*Id.* at 10).  Although the information

Peninsula seeks might be more probative in the context of the return rate, this concern presents

an issue for admissibility at trial, not discoverability now.  (*See* FED. R. EVID. 401, 403 (evidence

is relevant if it tends to make any fact of consequence in determining the action "more or less

probable than it would without the evidence," but even relevant evidence is excludable if its

relevance is substantially outweighed by its risk of, *inter alia*, "misleading the jury"); *see also*

*Oppenheimer Funds*, 437 U.S. at 351 (relevance must be "construed broadly to encompass any

matter that could bear on, or that could reasonably lead to other matter that could bear on any

issue that is or may be in the case")).  Finally, PEM complains that Peninsula has not produced

return rates for its products, but the Court is not ordering PEM to do so either.  (Resp., ECF No.

212, at 10).  As stated, the raw data may prove relevant even without either or both parties'
return rates.

       Further, I can address PEM's overbreadth and burden concerns by limiting the amount of
information it must produce.  Although the complaint is silent as to when Peninsula began its
allegedly unlawful activities, just as RFP numbers 104, 117 and 118 are silent as to the period of
time for which Peninsula seeks information, the Court finds that narrowing Peninsula's instant
request to the last ten years will permit Peninsula to substantiate any defenses it believes it has
based upon the information.  (*See generally* Sec. Am. Compl., ECF No. 211; *see also* Resp., Ex.
4, ECF No. 212-4, at RFP No. 104, 117-18).  In addition, because Peninsula has made no
showing as to the relevance of information about which distributor returned which product, PEM
need not produce such information, to the extent that PEM prefers to produce only information
about the number of returns.  And of course PEM need only produce information for returns of
"the relevant category of fasteners."  (Resp., ECF No. 212, at 9).  The Court further notes that
even though PEM protests that production of information about returns from authorized
distributors presents an undue burden upon it, disproportionate to the information's relevance, it
apparently gathered some or all of this information internally for its counsel in the span of four
days.  (*Id.* at 5 (noting that Brown had a spreadsheet of this information compiled between June
1 and June 4, 2021)).

       Accordingly, the Court denies the motion to compel insofar as it seeks the spreadsheet of
product returns and associated email chain generated by PEM at counsel's direction.  However,
the Court grants the motion insofar as it seeks information about quality-based returns by PEM's
distributors of the fastener products at issue over the last ten years.

**IV.     CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Peninsula's motion.

Within ten days of the date of this memorandum and accompanying order, PEM shall produce:

(1) all documents regarding any policies and practices with respect to PEM distributors that sell

PEM products to PEM's competitors; (2) all information in PEM's database showing authorized

PEM distributor sales to unauthorized distributors or representatives; and (3) all information

about quality-based returns by PEM's distributors of the fastener products at issue over the last

ten years.

In all other respects, the Court denies the motion.


BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge