**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENN ENGINEERING & MANUFACTURING CORP.**<br>**Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | **No.: 19-cv-513** |
| **PENINSULA COMPONENTS, INC.,**<br>**Defendant.** | : | |

**MEMORANDUM**

**SITARSKI, M.J.** **August 30, 2021**

Presently pending before the Court is Plaintiff's Motion to Compel Access to Defendant's Google Ads Accounts, or in the Alternative, Production of Google Ads Reports (Mot. to Compel, ECF No.199-1), Defendant's response thereto (Resp., ECF No. 210), and Plaintiff's reply in support (Reply, ECF No. 217).[1] For the reasons that follow, Plaintiff's motion shall be **GRANTED**.

## I. RELEVANT BACKGROUND[2]

Plaintiff Penn Engineering & Manufacturing Corporation (PEM) alleges that since at least January 2019 Defendant Peninsula Components, Inc. (Peninsula) has programmed its Google Ads account to display advertisements unlawfully suggesting an affiliation between PEM and Peninsula in response to Google users' search for a variety of keywords and phrases

---

[1] The Honorable Gene K. Pratter referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 161).

[2] For additional facts, see my April 1, 2021 memorandum granting in part and denying in part Plaintiff's consolidated motion to compel responses to requests for production and requests for admission. (Memo., ECF No. 187). The instant memorandum includes only factual and procedural history pertinent to this dispute.

containing PEM's famous "PEM" trademark. (Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 2-3; *see also* Sec. Am. Compl., ECF No. 211, at ¶ 48). According to PEM, Google compiles data relating to each customer's Ads account, and a customer may easily access this data in both standardized and customizable reports through its account. (Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 3). To obtain these reports and related documents, PEM served Peninsula with the following requests for production of documents on July 8, 2019 (RFPs):

> RFP No. 8: All Documents between Defendant and Google, Inc. related to any of Defendant's Online Keyword Advertising Programs hosted by Google, Inc.
>
> RFP No. 10: All Documents related to any report generated by or on behalf of Defendant using any Google Analytics account, Google Ads account, or any other analytic tool related to Defendant's Online Keyword Advertising Program hosted by Google, Inc.
>
> RFP No. 11: All Documents related to the creation of Defendant's PEM Online Keyword Advertising Program hosted by Google, Inc.

(Peninsula's Responses to PEM's First Set of RFPs, ECF No. 199-4, at RFP Nos. 8, 10-11; *see also* Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 4).

On August 23, 2019, Peninsula objected on various grounds,[3] but subject to these objections and the parties' Stipulated Protective Order, it agreed to produce responsive documents within its possession, custody, or control. (Peninsula's Responses to PEM's First Set of RFPs, ECF No. 199-4, at RFP Nos. 8, 10-11). Peninsula contends that it "produced its entire file" for its Google Ads program in the fall of 2019. (Resp., ECF No. 210, at 5). In late 2019, Peninsula also deposed Blake Gardiner, Peninsula's Director of Marketing, and corporate

[3] Peninsula objected to these RFPs as vague, ambiguous, confusing, overbroad and insufficiently precise or particular, and to the extent that they sought information protected by any applicable privilege. (Peninsula's Responses to PEM's First Set of RFPs, ECF No. 199-4, at RFP Nos. 8, 10-11).

representatives of Peninsula's Google Ads program vendors, Logical Position (Logical) and ThomasNet. (*Id.* at 5-6), who both also "produced their entire files" for the program. (*Id.* at 5-8). Peninsula's and the vendors' files only included reports previously compiled, according to PEM, rather than all information available to Peninsula through its Google Ads account. (Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 2-3). Thus, some time on or after September 12, 2020, PEM served Peninsula with RFP number 104 requesting Peninsula's login credentials and instructions for various Google advertisement and business services, related and substitute services, and in-house and third-party advertisement services for other platforms. (Peninsula's Responses to PEM's Seventh Set of RFPs, ECF No. 199-4, at RFP No. 104). Peninsula objected to the request[4] and refused to produce any information in response to it. (*Id.*).

On May 15, 2021, PEM served Peninsula with RFP number 130, which requested Google Ads reports available at a specific URL provided by PEM or, in the alternative, the credentials previously requested in RFP number 104. (Peninsula's Responses to PEM's Twelfth Set of RFPs, ECF No. 199-4, at RFP No. 130). PEM's counsel followed up on May 24, 2021, with an email to Peninsula's counsel requesting the reports. (Mot. to Compel, Ex. 3, ECF No. 199-5). Instead of responding directly to RFP number 130, PEM filed a motion for a protective order on May 26, 2021, as to it and other discovery requests issued by PEM.[5] (Mot. for Pro. Order, ECF No. 189). Also, on May 27, 2021, Peninsula's counsel responded to the email that "there appear

[4] Peninsula objected to this RFP as unreasonably cumulative, vague, ambiguous, confusing, overbroad, insufficiently precise or particular, intrusive, oppressive, annoying, unduly burdensome, disproportionate, propounded to cause embarrassment, and seeking irrelevant information. (Peninsula's Responses to PEM's First Set of RFPs, ECF No. 199-4, at RFP No. 104).

[5] Peninsula moves for a protective order as to 16 sets of discovery requests issued by PEM, including RFP number 130. (Mot. for Pro. Order, ECF No. 189). The motion remains pending.

to be thousands of possible report types listed under that URL" and asked PEM's counsel to clarify. (Mot. to Compel, Ex. 3, ECF No. 199-5, at 7). He replied on June 1, 2021, that Peninsula could start by producing the "ad performance" and "campaign settings" reports and provided instructions for it to download the reports. (*Id.* at 6-7). After counsel exchanged emails disputing whether the prior document productions in the matter contained all responsive documents, Peninsula produced two Excel spreadsheets on June 8, 2021. (*Id.* at 5; *see also* Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 6). Peninsula claims that these spreadsheets are the requested ad performance and campaign settings reports, but PEM disputes that they contain all relevant information requested. (Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 6; Resp., ECF No. 210, at 8-9; Reply, ECF No. 217, at 4).

On June 13, 2021, PEM filed the instant motion to compel access to Peninsula's Google Ads account or all responsive reports, to which Peninsula responded on June 28, 2021. (Mot. to Compel, ECF No. 199; Resp., ECF No. 210). Peninsula filed a reply in support of its motion on July 6, 2021. (Reply, ECF No. 217).

## II. LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal litigation. Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Although the scope of discovery is broad, it is not unlimited. *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009); *see also Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012) ("Discovery is not without bounds . . . and courts will not permit parties to engage in fishing expeditions . . . .") (quoting *MacDermid Printing Sols., L.L.C., v. E.I. du Pont de Nemours & Co.*, No. 07-4325, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)). Upon a party's motion or of its own accord, the court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

A party who has received inadequate disclosures or discovery responses may seek a court order compelling production of the materials sought. *See* FED. R. CIV. P. 37(a). The moving party must initially demonstrate the relevance of the information sought to a particular claim or defense. *Bostwick v. Shoop*, No. 1:09-CV-2212, 2010 WL 4536977, at *2 (M.D. Pa. Nov. 3, 2010) (citing *Paluch v. Dawson*, Civil No. 1:CV–06–01751, 2008 WL 2785638 at *2 (M.D. Pa. July 17, 2008)). Relevance in this context has been "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 349 U.S. 495, 501 (1947)). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Peay v. Fisher*, No. 3:15-CV-00345,

2016 WL 3876634, at *1 (M.D. Pa. July 15, 2016) (citing *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).

## III. DISCUSSION

PEM asserts that the Google Ads reports are clearly relevant and that the burden or expense for Peninsula to produce them, or to provide its account credentials for PEM to obtain them directly, does not outweigh the likely benefit of the documents. (Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 7). According to PEM, the dispute distilled to its essence is that Peninsula has failed "to produce all documents *within its control*; instead, it only produced documents *within its possession*." (Reply, ECF No. 217, at 2 (first emphasis in original; second emphasis added)). PEM contends that the documents produced to date are "incomplete and outdated" and that "[t]he original, current Google Ads reports are needed to form a complete understanding of the methodology that Defendant used to develop and operate its online advertising program," including its scope, the targeted audience of the campaigns, the infringing keywords used, the infringing ads displayed, the dates and number of times each ad was displayed, and the number of impressions and click-through rate for each ad. (*Id.* at 5).

Peninsula does not deny "the general relevance of discovery requests directed at its Google Ads campaigns" but opposes further production on three other grounds. (Resp., ECF No. 210, at 3). First, Peninsula observes that in 2019 it and its vendors produced reports and Peninsula deposed Gardiner and vendors regarding them. (Resp., ECF No. 210, at 5-7). Second, it claims that it produced the two reports specifically identified by PEM's counsel in his June 1, 2021 email. (*Id.* at 8-9). Third, Peninsula posits that it would prove "disproportionate to any legitimate discovery needs to require Peninsula to give Plaintiff access and training and support to use Peninsula's Google Ads account." (*Id.* at 9-11).

Because relevant information is normally discoverable if it is also "proportional to the needs of the case," and because a party must produce information not only within its "possession" but also within its "control," the Court considers Peninsula's arguments against compelling production, including that doing so would prove disproportionate. FED. R. CIV. P. 26(b)(1); FED. R. CIV. P. 34(a)(1).

**A. 2019 Document Productions and Depositions**

Peninsula asserts that the information PEM seeks was provided in 2019 when PEM, Logical and ThomasNet each produced its "entire file" concerning Peninsula's Google Ads program and Peninsula deposed PEM's marketing director and representatives of Logical and ThomasNet. (Resp., ECF No. 210, at 5). It contends that the reports produced contained "detailed information regarding Peninsula's ads, ad campaigns, and the keywords used in all campaigns." (*Id.* at 6-7). Peninsula further claims that several reports were marked as exhibits at the ThomasNet deposition, which "was devoted to questions about the above-referenced reports, including the time periods when Peninsula's Google Ads ran, what ad campaigns were created and when, the keywords used in the ads and the campaigns, and the numbers of users' impressions and clicks on each of the ads." (*Id.* at 7). According to Peninsula, after these 2019 depositions, PEM "never indicated the need for any additional documents or information" about the program, Peninsula's use of the "PEM" trademark in online advertising, or the events surrounding PEM's discovery of Peninsula's alleged misuse of its trademark. (*Id.* at 6).

PEM replies that Peninsula's arguments skirt the real issue: that Peninsula has failed to produce the "*most current, original Google reports that contain the specific information identified by PennEngineering* . . . ." (Reply, ECF No. 217, at 5 (emphasis in original)). PEM alleges that it may recover damages on its trademark infringement and false advertising claims from February 5, 2013, through the present because Peninsula continues to infringe upon PEM's

trademark in its ads; however, the reports that Logical and ThomasNet produced cover only a five-month period in 2017 and a one-year period starting in October 2018.[6] (Reply, ECF No. 217, at 6; *see also Am. Diabetes Ass'n v. Friskney Fam. Tr., LLC*, 177 F. Supp. 3d 855, 879 (E.D. Pa. 2016) (applying six-year statute of limitations to Lanham Act claims in Pennsylvania (citing *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 137 (3d Cir. 2005)))). It also contends that the sole report provided by Logical is in an unusable format. (Reply, ECF No. 217, at 6). Finally, PEM claims that the depositions did not cure the deficiencies in the document productions because Gardiner "could not answer simple and direct questions related to Defendant's online advertising campaign" and because the depositions of Logical and ThomasNet were limited to their "inadequate, incomplete, and outdated" reports. (*Id.* at 9-10).

The Court agrees with PEM that the 2019 document productions and depositions do not satisfy Peninsula's discovery obligations. By Peninsula's own acknowledgment, the Google Ads reports produced by its vendors were only those they "had generated for Peninsula," not all reports available to Peninsula through its account. (Resp., ECF No. 210, at 6). Peninsula contends that the reports ThomasNet produced nonetheless contained all relevant ad, campaign and keyword information ever generated in Peninsula's Google Ads account, but PEM also seeks additional information about the dates on which each ad was displayed, target audiences, click-through rates, and the number of impressions. (*Id.* at 6; Reply, ECF No. 199-1, at 5). Peninsula claims that this information was provided to PEM at the ThomasNet deposition, but it fails to explain how this deposition testimony, or the ThomasNet reports themselves to the extent that they contained this additional information, would render the original reports from Peninsula's

[6] It is not clear if PEM's own "entire file" included any Google Ads reports or, if it did, what time periods they covered.

Google Ads account – which Peninsula concedes are relevant – undiscoverable. (*See* Resp., ECF No. 210, at 6). In any event, there can be no question that the 2019 document productions and depositions were necessarily limited to information in existence at that time and could not have contained information generated afterwards in 2020 and 2021. Accordingly, they cannot serve as a basis to deny PEM the Google Ads reports it seeks.[7]

**B. 2021 Google Ads Reports**

Peninsula further contends that it fulfilled any remaining discovery obligations when it produced two Excel spreadsheets containing updated information on June 17, 2021. (Resp., ECF No. 210, at 8-9). According to Peninsula, these documents were the "ad performance" and "campaign settings" reports requested by PEM's counsel in his June 1, 2021 email follow up to RFP number 130, as can be seen by the titles of the spreadsheets. (*Id.* at 9). Peninsula claims these are the "genuine, original, and most current Google Ads reports" covering the entire period for which data is available and that no "more original" or "more current" reports are available. (*Id.*). PEM counters with a breakdown of the information contained in the spreadsheets and points out that neither contains the requested information regarding the keywords used by Peninsula to trigger the online ads, the date ranges it used those keywords or the date ranges the ads were displayed to potential customers. (*Id.* at 7-8).

The Court has reviewed the unredacted versions of the spreadsheets and is also unable to locate the missing information identified by PEM. Nowhere does either document contain a "keyword" category, nor does either contain a list of what appear to be keywords, even if not

[7] The Court also disagrees with Peninsula's contention that PEM failed to pursue further information about Peninsula's Google Ads program after the depositions in late 2019. (Resp., ECF No. 210, at 6). On the contrary, sometime between September 12 and November 2, 2020, PEM served Peninsula with RFP number 104, which requested login credentials and instructions for Peninsula's Google advertisement and business services. (Peninsula's Responses to PEM's Seventh Set of RFPs, ECF No. 199-4, at RFP No. 104).

referred to as such. (Mot. to Compel, Ex. 4, ECF No. 199-6; *Id.*, Ex. 5, ECF No. 199-7). In addition, as PEM notes, the campaign settings spreadsheet contains dates for the various campaigns, but neither spreadsheet includes dates that the keywords were used or that the ads were displayed. (*Id.*, Ex. 4, ECF No. 199-6; *Id.*, Ex. 5, ECF No. 199-7). It may turn out that the additional information PEM expects to find in the original reports is simply not there, in which case PEM will have to content itself with the information that is available. However, it is important to bear in mind the circumstances under which the spreadsheets were produced. After Peninsula objected to producing all the reports potentially available through its account, PEM suggested that, "[t]o get started," Peninsula produce the ad performance and campaign settings reports, apparently to determine whether these reports contained all relevant information. (Mot. to Compel, Ex. 3, ECF No. 199-5, at 6-7). It appears that they do not contain all the expected information, even if, as Peninsula contends, the spreadsheets mirror the original reports. Nevertheless, in attempting to resolve the dispute through its request for these two reports, PEM did not relinquish its right to pursue other responsive, nonprivileged documents as well. Peninsula's production of the spreadsheets does not relieve it of its duty to produce any such documents not yet produced.

**C. Proportionality**

Lastly, Peninsula argues that the amount of time its employees will have to devote to educating and training PEM to use its Google Ads account is disproportionate to any legitimate need PEM has for the reports. (Resp., ECF No. 210, at 9 (citing *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975))). It claims that PEM seeks to embark on a fishing expedition and that its employees "should also not be required to assist in the creation of potentially thousands of custom reports that Peninsula does not use in the ordinary course of business, solely for this litigation." (*Id.* at 10-11 (citing *Lynn Elecs. Corp. v. Automation Mach. & Dev. Corp.*, No. 86-

2301, 1988 WL 25332, at *2 (E.D. Pa. 1988))). Further, Peninsula repeats its arguments, addressed by the Court in the preceding sections, that the reports are cumulative of the documents already produced and the depositions already taken and that PEM fails to indicate what information remains missing or how PEM will obtain it from Peninsula's Google Ads account.[8] (*Id.* at 9-10).

PEM disavows any need for support or training from Peninsula and states that if Peninsula does not wish to provide the reports directly, "PennEngineering simply needs the login credentials, and nothing more from Defendant." (Reply, ECF No. 217, at 10). It states that it only requires access "perhaps lasting less than an hour or so" and suggests that Peninsula use a screen-sharing tool to observe and monitor the account during this time. (*Id.* at 11). PEM also offers to restrict viewing of the account to its attorneys and experts only. (Memo. in Supp. of Mot. to Compel, ECF No. 199-1, at 7).

One on hand, Peninsula contends that the URL it received from PEM lists 53 categories of reports, each with "dozens of potentially available reports," such that "thousands of possible report types" exist. (Resp., ECF No. 210, at 8). On the other, PEM posits that it would take "perhaps . . . less than an hour or so" to download the necessary reports. (Reply, ECF No. 217, at 11). It is possible that both parties are correct. According to the June 1, 2021 email from PEM's counsel, it takes only three, or possibly four, mouse clicks to download a report. (Mot. to

[8] In addition, Peninsula distinguishes *Robin Singh Educational Services, Inc. v. Cepelinski*, No. CV 20-7516, 2021 WL 945243, at *11 (C.D. Cal. Jan. 26, 2021), originally cited by PEM in its opening brief, on the basis that that case ordered the production of similar online advertising information because it was relevant to establishing personal jurisdiction over the defendant, whereas in this case "Peninsula does not contend that Google Ads reports are irrelevant . . . ." (Resp., ECF No. 210, at 10). The Court agrees that *Cepelinski* centered upon the relevance of the discovery, which is not contested in this case, and therefore does not base its decision in this matter on that case.

Compel, Ex. 3, ECF No. 199-5, at 6-7). Thus, the scope of the production may not prove as daunting as Peninsula fears.

Peninsula also has the option of permitting PEM to download the reports directly. If Peninsula chooses this course, the Court finds it appropriate, based on the representations in PEM's briefing, to limit account access to three hours and to PEM's attorneys and experts only. Peninsula may choose to monitor PEM's access remotely via screen-sharing, by sending a representative in-person to the physical location where Peninsula intends to access the account, or both. Peninsula need not provide PEM any support or training.

The Court rejects Peninsula's contention, unsupported by any legal citation, that it need not produce the reports because it does not use them in the ordinary course of its business. (Resp., ECF No. 210, at 11). Pursuant to Rule 34(a)(1)(A), a party may issue a request, otherwise within the scope of Rule 26(b)(1), "to produce and permit the requesting party or its representative to inspect [or] copy . . . any designated . . . electronically stored information [ESI]—including . . . graphs, charts, . . . and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form," provided that the ESI is also "in the responding party's possession, custody, or control . . . ." FED. R. CIV. P. 34(a)(1)(A). Here, Peninsula is merely producing, or permitting access to, ESI in its control and in the form in which the information is stored, not constructing new litigation documents for PEM.

Further, Peninsula's cited cases are distinguishable. In *In re Fontaine*, the defendant in an adversarial bankruptcy proceeding sought all approved and denied loan applications received by the plaintiff-bank to demonstrate that it had not relied upon the misrepresentations in his own application. 402 F. Supp. at 1221. The plaintiff opposed production, observing that the "defendant would need the aid of plaintiff's employees to interpret numerous codes therein with

the result that plaintiff's business would be seriously disrupted." *Id.* The bankruptcy court initially permitted the discovery, but the district court reversed, holding that, unlike in this case, "there is no likelihood that useful evidence might be uncovered which is relevant to the subject matter." *Id.* (citation omitted). The district court further stated that even if the loan applications were relevant, "the extreme burden" of producing them was unjustified "upon the balancing of the interests to be served . . . ." *Id.* at 1221 (citations omitted). Here, as noted, the burden appears to be, at most, a few hours of mouse clicks on the computer by a single employee, not multiple employees sifting through volumes of paper documents. Moreover, Peninsula has the option of largely transferring this burden to PEM. Whatever Peninsula chooses, there is no reason to believe that its "business would be seriously disrupted." *Id.*

Nor is *Lynn Electronics Corp. v. Automation Machinery & Development Corp.* pertinent to the outcome here. 1988 WL 25332. In that case, the plaintiff issued the defendant interrogatories asking it to identify, for the duration of its thirty-year history, every instance in which it had been sued over a research and development project, as well as every instance in which a research and development project had exceeded its budget by 10 percent or more. *Id.* at *1. The court rightly characterized the defendant's discovery requests as a "fishing expedition" and limited the discovery. *Id.* at *2-3. In doing so, it observed that the first interrogatory "would not appear necessary for the development of plaintiff's case" and that the second was "based on apparently unsubstantiated allegations," in addition to being issued "at [a] late date . . . ." *Id.* at *2. In this case, Peninsula concedes the relevance of the Google Ads reports, which are available, individually at least, with a few mouse clicks rather than by poring over 30 years of documents. (*See* Resp., ECF No. 210, at 10).

Accordingly, the Court grants PEM's motion. Within 10 days of the date of this memorandum and the accompanying order, Peninsula shall provide PEM with either: (1) all

Google Ads reports listed in the URL emailed by PEM's counsel to Peninsula's counsel on May 15, 2021,[9] or (2) three hours of access to its Google Ads account, limited to PEM's attorneys and experts only. If Peninsula chooses the latter option, it may monitor PEM's access remotely and/or in-person, and it does not have to provide any support or training to PEM.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

[9] The Court notes that PEM's proposed order also directs Peninsula to generate "a report that shows the dates each ad was displayed and the corresponding keywords used to trigger [the] ad." (Proposed Order, ECF No. 199-2). As set forth herein, Peninsula need only produce such information to the extent that it is contained in the original Google Ads reports. It does not have to attempt to compile this information separately for PEM's use. Further, the Court orders production of the Google Ads reports as listed in the URL for the sake of clarity between the parties. (*See* Reply, ECF No. 217, at 3 (noting that the URL lists the reports "readily available from Google Ads")).