IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENN ENGINEERING &** | : | **CIVIL ACTION** |
| **MANUFACTURING CORP.** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-513 |
| | : | |
| **PENINSULA COMPONENTS, INC.,** | : | |
| Defendant. | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                    September 3, 2021

Presently pending before the Court is Defendant's Motion for a Protective Order (Def.'s Mot. for Pro. Order, ECF No. 189-1), Plaintiff's response thereto (Pl.'s Resp., ECF No. 195), Defendant's reply in support (Def.'s Reply, ECF No. 195), and the parties' supplemental memoranda (Pl.'s Supp. Memo., ECF No. 208; Def.'s Supp. Memo., ECF No. 209).[1] For the reasons that follow, Plaintiff's motion shall be **GRANTED IN PART** and **DENIED IN PART**.

### I.      RELEVANT BACKGROUND[2]

Between May 6, 2021, and May 15, 2021,[3] Plaintiff Penn Engineering & Manufacturing

---

[1] The Honorable Gene K. Pratter referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 161).

[2] For additional facts, see my April 1, 2021, memorandum granting in part and denying in part Plaintiff's consolidated motion to compel responses to requests for production and requests for admission. (Memo., ECF No. 187). The instant memorandum includes only factual and procedural history pertinent to this dispute.

[3] Fact discovery closed on June 15, 2021, and the federal rules permit 30 days to respond to written discovery requests. *See* FED. R. CIV. P. 33(b)(2), 34(b)(2)(A), 36(a)(3).

Corporation (PEM) served Defendant Peninsula Components, Inc. (Peninsula) with 16 sets[4] of discovery requests comprising four interrogatories, 30 requests for production of documents (RFPs) and 185 requests for admissions (RFAs). (Def.'s Mot. for Pro. Order, Exs. A-R, ECF Nos. 189-2 to 189-19; Def.'s Memo. in Supp of Mot. for Pro. Order, ECF No. 189-1, at 1; Def.'s Reply, ECF No. 201, at 2). Most of the requests relate to five areas of Peninsula's allegedly infringing activities: (1) unauthorized "gray market" reselling of PEM's products; (2) copying of PEM's performance data and representing that Peninsula's products share these performance qualities; (3) reverse-engineering PEM's products; (4) designing its Google Ads campaign such that searches for phrases containing PEM's trademark trigger Peninsula ads, including ones incorporating the trademark; and (5) publishing cross-reference charts correlating and equating the qualities of products made by the two companies. (Pl.'s Supp. Memo., ECF No. 208, at 2-3). Prior to the issuance of these requests, PEM had issued Peninsula 28 interrogatories, 104 RFPs and 89 RFAs throughout the course of discovery.[5] (*See id.* at 2).

On May 26, 2021, Peninsula moved for a protective order on the May 2021 discovery requests. (Def.'s Mot. for Pro. Order, ECF No. 189-1). PEM filed its response in opposition on June 9, 2021. (Pl.'s Resp., ECF No. 195). On June 16, 2021, Peninsula filed a reply supporting its motion but also withdrawing its request for a protective order as to the four interrogatories because I had authorized them in my March 5, 2021, Order entered after the status conference

---

[4] PEM also served two additional sets of discovery, one correcting the numbering in an earlier set and another inadvertently duplicating a set served in the same email. (Def.'s Memo. in Supp. of Mot. to Compel, ECF No. 189-1, at 1 n.1).

[5] The parties have issued roughly similar total numbers of discovery requests in this matter, with the exception of the RFAs. PEM and Peninsula, respectively, have issued each other 32 and 25 interrogatories, 134 and 126 RFPs, two and three requests for parts, 274 and 60 RFAs, three and four Rule 30(b)(6) deposition notices, and 10 and 12 other deposition notices. (Pl.'s Supp. Memo., ECF No. 203, at 2).

held on that date. (Def.'s Reply, ECF No. 201, at 2 n.1; *see also* Order, ECF No. 179, at ¶ 2). On June 23, 2021, PEM filed a motion for leave to file a sur-reply. (Pl.'s Mot. for Leave to File Sur-reply, ECF No. 205). I denied this motion on June 24, 2021, but ordered the parties to file supplemental memoranda addressing the proportionality considerations set forth in Rule 26(b)(1). (Order, ECF No. 206). The parties filed their memoranda on June 28, 2021, pursuant to my June 24, 2021, Order. (Pl.'s Supp. Memo, ECF No. 208; Def.'s Supp. Memo, ECF No. 209).

## II.  LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal litigation. Rule 26(b)(1), as amended in 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1) (amended 2015).

The scope of discovery remains broad even after the 2015 amendment, but it is not unlimited. *Royal Mile Co., Inc. v. UPMC & Highmark Inc.*, No. 2:10-cv-01609-JFC, 2016 WL 6915978, at *2 (W.D. Pa. June 24, 2016). "Even if discovery is proportional to the needs of the case, courts have the discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit." *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 18-11273, 2020

WL 1969898, at *6 (D.N.J. Apr. 24, 2020).  Upon a party's motion or of its own accord, the court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

In determining whether good cause exists for a protective order, courts employ a balancing test, weighing the requesting party's need for information against the injury that might result if disclosure is compelled.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) (citation omitted).  Injury includes annoyance, embarrassment, oppression, or undue burden or expense.  *See* FED. R. CIV. P. 26(c)(1). The alleged injury must be "clearly defined and serious" and "so unreasonable as to justify restricting discovery." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (citation omitted); *DeFelice v. Consol. Rail Corp.*, 124 F.R.D. 603, 604 (W.D. Pa. 1989) (citing 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2035 (1970)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not establish good cause. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

### III. DISCUSSION

The 2015 amendment to Rule 26(b)(1) "restore[d] the proportionality factors to their original place in defining the scope of discovery." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment.  "Courts determine the proportionality of discovery on a case by case basis

4

with the aforementioned factors, and 'no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional.'" *Williams v. BASF Catalysts, LLC*, No. 11-1754, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017) (quoting *Emps Ins. Co. v. Daybreak Express, Inc.*, Civ. No. 16–4269 (JLL/SCM), 2017 U.S. Dist. LEXIS 86224, at *5, 2017 WL 2443064 (D.N.J. June 5, 2017)) (additional citations omitted). However, they "should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms; they do not call for . . . complex analysis." 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2008.1 (3d ed. 2021).

### A.  Importance of the Issues

The first proportionality factor listed under Rule 26(b)(1), "the importance of the issues at stake in the action," centers on "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." FED. R. CIV. P. 26(b)(1) & advisory committee's note to 2015 amendment. This factor "recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment. In addition, "[m]any other substantive areas also may involve litigation that seeks relatively small amounts of money, or no money at all, but that seeks to vindicate vitally important personal or public values." *Id.*

Peninsula asserts that "[t]here is no public importance to this case." (Def.'s Supp. Memo., ECF No. 209, at 1). PEM contends that the importance of the five allegedly "infringing, commercial activities" on which it seeks discovery "is self-evident" and that "[t]hese are not tangential issues; they are the heart of the case." (Pl.'s Supp. Memo., ECF No. 208, at 2-3). However, PEM does not identify any particular importance of the issues involved outside of the

5

litigation or explain how they implicate "vitally important" values. FED. R. CIV. P. 26 advisory committee's note to 2015 amendment. Rather, PEM argues that two of the activities, Peninsula's Google Ads campaign and publication of cross-reference charts, are relevant to two of its affirmative defenses to these activities. (Pl.'s Supp. Memo., ECF No. 208, at 3). But this alleged fact hardly endows the issues in this matter with a wider significance. Whether or not Peninsula's commercial activities at issue were in fact unlawful is unlikely to "have an impact beyond the parties involved," and "[t]hus this factor weighs against allowing the proposed discovery." *See Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*, No. 5:15-CV-37-FL, 2017 WL 876266, at *4 (E.D.N.C. May 3, 2017) (finding that a breach of commercial contract case did not involve important issues beyond the scope of the litigation itself).

### B. Amount in Controversy

"For the 'amount in controversy,' the court compares the cost of discovery to the amount in controversy to determine its proportionality." *Id.* (citing *Bell v. Reading Hosp.*, No. CV 13-5927, 2016 WL 162991, at *3 (E.D. Pa. Jan. 14, 2016)). PEM contends that "[t]his is a *multi-million dollar* infringement and unfair competition dispute." (Pl.'s Supp. Memo., ECF No. 208, at 4) (emphasis in original). Peninsula maintains that it owes PEM nothing. (Def.'s Supp. Memo., ECF No. 208, at 2). However, at this stage the Court must compare the cost of the requested discovery to the amount "in controversy" between the parties, not the amount, if any, for which Peninsula will ultimately prove liable to PEM. *See Arrow Enter. Computing Sols., Inc.*, 2017 WL 876266, at *4 (using the amount sought in the complaint as the amount in controversy). In comparison to the millions PEM seeks, Peninsula calculates that at 15 minutes per RFA it would need 46 hours for its senior staff and attorneys to complete them. (*Id.* at 5). But even adding significant time for Peninsula to respond to the RFPs and assuming substantial

billing rates, the cost of completing the discovery, while certainly not negligible itself, comes nowhere close to the millions of dollars potentially at issue in this matter. Under these circumstances, the amount in controversy weighs in favor of permitting the discovery. *See Arrow Enter. Computing Sols., Inc.*, 2017 WL 876266, at *4 (finding that the amount in controversy factor counseled in favor of permitting the requested discovery where "even if the court grant[ed] the full scope of discovery," there was "no tangible evidence that the cost [would] be so expensive as to overtake the value of this litigation"); *Bell*, 2016 WL 162991, at *3 (finding that the cost of producing the requested discovery "would certainly not exceed the amount of controversy in this matter" and thus the factor weighed in favor of permitting the discovery).

   **C.**  **Parties' Access to Information**

"The direction to consider the parties' relative access to relevant information" is intended to address cases involving "information asymmetry." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment. In such cases, "[o]ne party – often an individual plaintiff – may have very little discoverable information[,] [but] [t]he other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve." *Id.* When these circumstances occur, "often . . . the burden of responding to discovery lies heavier on the party who has more information, and properly so." *Id.*

The averments in the complaint suggest that Peninsula, as the party responsible for the various allegedly infringing activities, has access to more relevant information than PEM. For example, although both parties have propounded numerous written discovery requests and deposition notices to each other, and the size of PEM's document production in this matter is unknown, Peninsula has produced over 68,000 documents to date. (Pl.'s Resp., ECF No. 195, at

1, 7). Along these lines, PEM alleges that Peninsula alone possesses the documents requested in the most recently issued RFPs. Thus, the parties' relative access to these documents – Peninsula having full access, PEM none – weighs in favor or their production.

Nonetheless, consideration of this factor does not suggest that Peninsula should respond to the RFAs. RFAs "are not intended for factual discovery that should be done through" other discovery mechanisms. *Russo v. Baxter Healthcare Corp.*, 51 F. Supp. 2d 70, 79 (D.R.I. 1999); *see Mueller v. CBS, Inc.*, No. 99–cv–1310, 2001 WL 1781926, at *1 (W.D. Pa. Aug. 24, 2001) (distinguishing RFAs from other discovery methods). Indeed, an RFA is "not properly speaking a discovery device, rather it is 'a procedure for obtaining admissions for the record of facts already known' by the seeker." *Ghazerian v. United States*, No. 89–8900, 1991 WL 30746, at *1 (E.D. Pa. Mar. 5, 1991) (quoting 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2253). To this end, PEM acknowledges that its "main purpose" in issuing the RFAs "was to *confirm* by admission" facts already known to it. (Pl.'s Resp., ECF No. 195, at 1-2) (emphasis added). PEM even compiled a table setting forth the existing evidentiary support in the record for many of its RFAs. (*Id.*, Ex. 1, ECF No. 195-1). Thus, if Peninsula does not admit or deny the RFAs, PEM will not be deprived of relevant information because the RFAs are themselves based upon information PEM already has. The parties' relative access to information counsels in favor of requiring Peninsula to respond to the RFPs but not the RFAs.

### D. Parties' Resources

"[C]onsideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment. Rather, "[t]he court must

8

apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." *Id.* Here, PEM "is a massive, industry-dominating company that has thousands of employees spread across the globe." (Def.'s Supp. Memo., ECF No. 209, at 4). But Peninsula is no "mom-and-pop operation" either, with 300 employees and multiple facilities in three countries. (Pl.'s Supp. Memo., ECF No. 208, at 5; Def.'s Supp. Memo., ECF No. 209, at 4). Peninsula has the resources to respond to the issued discovery. Accordingly, this factor weighs in favor of permitting it, with the caveat that the Court may nonetheless limit the discovery as necessary to prevent abuse as contemplated by the notes to the 2015 amendment. *See* FED. R. CIV. P. 26 advisory committee's note to 2015 amendment; *see also Arrow Enter. Computing Sols., Inc.*, 2017 WL 876266, at *5 (finding that consideration of this factor weighed "slightly in favor of discovery" where the responding party had "sufficient resources," but nonetheless considering the proportionality of the requests).

   **E.**  **Importance of the Discovery in Resolving the Issues**

"With the 'importance of the discovery in resolving the issues,' the court looks at whether this discovery request goes to a central issue or a side one." *Arrow Enter. Computing Sols., Inc.*, 2017 WL 876266, at *5 (citing *Labrier v. State Farm Fire & Cas. Co.*, 314 F.R.D. 637, 641, 643 (W.D. Mo. 2016), *order vacated on other grounds by In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017)). "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to

consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

The RFPs pertain to allegedly infringing activities by Peninsula that constitute the gravamen of PEM's complaint. These activities are the central issues of the litigation. Peninsula does not dispute this fact, but instead points out that "plaintiff has admitted that [the RFPs] are duplicative of earlier requests designed to confirm whether Peninsula has any additional relevant documents." (Def.'s Supp. Memo., ECF No. 209, at 5; *see also* Pl.'s Resp., ECF No. 195, at 1-2). Despite the importance of the issues, the Court will not require Peninsula to reproduce documents already produced because doing so will not aid the parties in resolving the remaining issues in the case. Thus, this factor weighs in favor of requiring production due to the centrality of the allegedly infringing activities, but only to the extent that Peninsula has not previously produced the documents requested.

PEM claims that the RFAs also relate to these important activities and are designed to "resolve several issues on summary judgment," "to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." (Pl.'s Resp., ECF No. 195, at 11 (citing *Caruso v. Coleman Co.*, 1995 U.S. Dist. LEXIS 7934 (E.D. Pa. June 7, 1995), *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38 (S.D.N.Y. May 21,1997); Pl.'s Supp. Memo., ECF No. 208, at 6)). Peninsula argues that responses to the RFAs will not resolve any issues in the case because summary judgment is disfavored in trademark cases and because the parties are unlikely to change their settlement positions. (Def.'s Supp. Memo., ECF No. 209, at 4). It also discusses PEM's cited cases and asserts that they actually support the entry of a protective order. (Def.'s Reply, ECF No. 201, at 6).

In *Caruso*, the court found that even though the defendant had improperly objected to several RFAs, it did not have to provide further responses to them where "there [was] no expectation that these requests would narrow or eliminate the issues for trial, since the defendant's positions on each of the requests [were] explicitly stated in clear and unambiguous terms at the many depositions taken in this case." 1995 U.S. Dist. LEXIS 7934, at *5. Applying *Caruso* to this case, the RFAs will not narrow or eliminate trial issues because Peninsula's positions on them are evident from the numerous depositions specifically cited as "evidentiary support for admission[s]" in PEM's first exhibit to its response. (Pl.'s Resp., Ex. 1, ECF No. 195-1).

In *T. Rowe Price Small-Cap Fund*, the court concluded that "[w]here requests to admit are utilized at the completion of the pretrial discovery phase, as they were in this action, they can no longer serve the purpose of obviating the need for costly discovery and, thus, their sole purpose is to streamline the presentation of evidence at trial." 174 F.R.D. at 43. However, the court further found that even this purpose had limited value where the discovering party could submit underlying deposition testimony in lieu of admissions. *Id.* at 45. It explained:

> In the absence of an admission, the [fact finder] will be required to determine what weight to give the deponents' testimony with respect to several discrete factual issues. There is very little burden on plaintiff in having to submit the relevant deposition testimony at trial and, if it is uncontroverted, the burden on the [fact finder] in deciding whether to credit the testimony is insignificant.

*Id.* In this case, the value of RFAs in resolving the issues is similarly limited because PEM issued them at the close of fact discovery and because the RFAs are based upon allegedly undisputed deposition testimony that PEM could present instead of the expected admissions. (Pl.'s Resp., Ex. 1, ECF No. 195-1). Indeed, in an observation that applies equally in this case, the court in *T. Rowe Price Small-Cap Fund* noted that "far more time appears to have been spent

11

litigating this dispute than will be required to put before the court the relevant deposition testimony." 174 F.R.D. at 45.

Because, as noted in *Caruso* and *T. Rowe Price Small-Cap Fund*, PEM can simply submit underlying deposition testimony, responses to the RFAs are unlikely to contribute meaningfully to issue resolution at summary judgment or trial, nor are they likely to reduce litigation costs significantly, particularly with fact discovery at an end. Therefore, although the RFAs, like the RFPs, relate to important issues, this factor does not weigh in favor of requiring responses to them.

### F. Burden Versus Likely Benefit

Finally, I must balance the burden or expense of the requested discovery with its likely benefit. FED. R. CIV. P. 26(b)(1). The party opposing discovery must "specifically demonstrate" the burden or expense that responding to discovery would impose, and the party seeking discovery "should show the benefit coming from the request." *Arrow Enter. Computing Sols., Inc.*, 2017 WL 876266, at *5 (citing FED. R. CIV. P. 26 advisory committee's note to 2015 amendment). When the information and materials sought are relevant, a court should "scrutinize" an assertion that production would impose a disproportionate burden or expense, "and an unsupported burden objection is not a guaranteed protection against responding to discovery." 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2008.1. Nevertheless, courts "relatively frequently limit or forbid discovery when the cost and burden seem to outweigh the likely benefit in producing evidence . . . ." *See id.* (collecting cases). Analysis of this factor may involve revisiting "previous factors in[ ] a final analysis of

burdens versus benefits."[6] *Arrow Enter. Computing Sols., Inc.*, 2017 WL 876266, at *5 (citing FED. R. CIV. P. 26 advisory committee's note to 2015 amendment). Because the RFPs and RFAs raise distinct considerations, I analyze them separately.

    1.    **RFPs**

Peninsula seeks a protective order permitting it not to respond to 30 RFPs. Peninsula points out that four of these RFPs – numbers 130 and 132 through 134 – were at issue in PEM's June 13, 2021, motion to compel concerning Peninsula's Google Ads reports. (Pl.'s Mot. to Compel, ECF No. 199). In light of my August 30, 2021, memorandum and Order granting the motion to compel, I shall deny the motion for a protective order as to these RFPs. (Order, ECF No. 228). Peninsula also contends that five other of the RFPs – numbers 105, 109, 118, 119 and 129 – are directed to PEM's proposed unjust enrichment claim disallowed by Judge Pratter in her ruling on PEM's motion for leave to file a second amended complaint. (Def.'s Supp. Memo., ECF No. 209, at 5; *see also* Order, ECF No. 202). Generally speaking, these RFPs relate to performance data associated with Peninsula's products. (Def.'s Mot. for Pro. Order, Exs. G, K, O, ECF Nos. 189-8, 189-12, 189-16). PEM asserts that the documents requested in these RFPs are relevant to not only the rejected unjust enrichment claim, but also its pending false advertising claim. (Pl.'s Resp., Ex. 1, ECF No. 195-1, at 3-4). In its complaint, PEM avers that "Defendant is advertising its fastener products using performance data, which it copied from PennEngineering and which it did not independently verify by its own performance testing." (Sec. Am. Compl., ECF No. 211, at ¶ 54). The Court agrees that information about this data is

---

[6] For this reason, the Court's treatment of this factor is more extensive than those previously considered.

relevant to PEM's false advertising claim and therefore considers these RFPs in conjunction with the others.

As noted in the preceding section, the requested documents are central to this case. To the extent that Peninsula has not already produced them, discovery of the documents presents a substantial likely benefit in that they could help the parties narrow the issues. In contrast, Peninsula identifies no special burden in responding to the RFPs and primarily addresses this issue in the context of the RFAs, not the RFPs. (*See, e.g.,* Def.'s Supp. Memo., ECF No. 209, at 5 ("Peninsula will be subject to a substantial burden if it is required to respond to the 185 requests for admission in particular.")). Accordingly, this factor weighs in favor of producing any unproduced documents requested by the RFPs. Thus, in light of the significant amount in controversy, Peninsula's sole access to the documents, its sufficient resources as a sizable international company, the importance of the documents in resolving the issues in the litigation, and the unspecified but presumably limited to moderate burden of supplementing its document production, the Court will order Peninsula to produce any nonprivileged responsive documents not already produced to PEM.

### 2. RFAs

I also compare Peninsula's burden in responding to the 185 RFAs issued by PEM to their likely benefit. PEM maintains that Peninsula has failed to articulate any specific burden. (Pl.'s Supp. Memo., ECF No. 208, at 6 (citing *Lux Global Label Co., LLC v. Shacklett*, 2020 U.S. Dist. LEXIS 62200 (E.D. Pa. Apr. 8, 2020)); *see also* Pl.'s Resp., ECF No. 195, at 8). It claims that the number of RFAs "is directly proportional to the complexity of Defendant's unlawful acts of unfair competition." (Pl.'s Resp., ECF No. 195, at 10). It points out the length of its amended complaint, the number of counts alleged therein, and the number of trademarks at issue in the

case and contends that it only served the additional discovery requests after Peninsula produced 8000 new documents.  (*Id.* at 1, 10).  It observes that courts are disinclined to find undue burden in responding to RFAs "*where the responding party can make the necessary inquiries without extraordinary expense or effort.*"  (*Id.* at 12 (quoting *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. May 21, 1997)) (emphasis added by PEM)).  Citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352 n.17 (1978), PEM notes that a court should deny a discovery request only when one or more of three circumstances is present: "(1) when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit; (2) when a party's aim is to delay bringing a case to trial; or (3) when a party's aim is to embarrass or harass the person from whom he seeks discovery."  (*Id.*).  According to PEM, none of these circumstances exist here.[7]  (*Id.*).

Peninsula provides a specific estimate of the time it would take to respond to the RFAs. (Def.'s Supp. Memo., ECF No. 209, at 5).  It cites to cases holding similar numbers of RFAs excessive or unduly burdensome and points out that PEM makes no attempt to distinguish these cases.  (Def.'s Memo. in Supp. of Mot. for Pro. Order, ECF No. 189-1, at 5-8 (citations omitted);

---

[7] Responding to arguments made in Peninsula's opening brief, PEM counters that no "*per se* rule" exists against issuing a large number of discovery requests near the discovery deadline, that its allegedly prior similar conduct in issuing "last minute" discovery requests actually led to a partially granted motion to compel, that the page count of the RFAs and other requests is misleading because they contain exhibits and identical sets of definitions and instructions, and that RFAs may seek admission of facts rather than authentication of documents. (Pl.'s Resp., ECF No. 195, at 8-9, 13-14).  The Court registers its disappointment at seeing 185 RFAs issued between May 6 and May 15, 2021, when at the March 5, 2021, status conference it specifically warned the parties: "I sure don't expect you to wait until, you know, May 15th and serve them, and then find yourselves in a pickle with any disputes that may arise, because the discovery deadline is June 15th. That was established by Judge Pratter. And that would include serving you[r] discovery so that it can be answered, and any objections can be first met and conferred over, and then possibly subject to further motion practice." (Mar. 5, 2021 Tr., ECF No. 182, at 18:16-23).  Nonetheless, because I do not base my decision on Peninsula's underlying arguments, I do not address PEM's counterarguments against them.

15

Def.'s Reply, ECF No. 201, at 7). Peninsula maintains that PEM has already taken substantial discovery in this matter and that the RFAs constitute an attempt "to shift the burden of sifting through . . . discovery" from PEM to it and "to eliminate trial testimony by having Peninsula paste together statements favorable to plaintiff (depriving Peninsula the opportunity to have witnesses explain those statements in context to a jury, as it is entitled)." (Def.'s Memo. in Supp. of Mot. for Pro. Order, ECF No. 189-1, at 4-5, 7 (quoting *Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 318 (S.D.N.Y. 2009); Def.'s Supp. Memo., ECF No. 209, at 3-4)). It explains that its supplemental document production contained relatively few new documents because it related specifically to manufacturing and sales drawings already produced for the most part but produced again to eliminate any contention by PEM that Peninsula had withheld responsive documents. (Def.'s Reply, ECF No. 201, at 3-5).

As an initial matter, the Court disagrees with PEM that Peninsula has failed to "specifically demonstrate" the burden imposed by responding to the RFAs, as required under Rule 26(b)(1). *See Arrow Enter. Computing Sols., Inc.*, 2017 WL 876266, at *5 (citing FED. R. CIV. P. 26 advisory committee's note to 2015 amendment). On the contrary, Peninsula specifies that at 10 to 15 minutes per response it would take 31 to 46 hours of attorney and senior staff time to respond to all 185 RFAs. (Def.'s Supp. Memo., ECF No. 209, at 5). Given that Peninsula has retained, in PEM's words, "two, high-priced law firms" to represent it in this matter, Peninsula is likely to incur commensurate expenses along with this substantial burden. (*See* Pl.'s Supp. Memo., ECF No. 208, at 5). These facts distinguish this case from *Lux Global Co., LLC*, cited by PEM, in which I ordered production of two laptops and a cellphone and access to email and cloud accounts after the responding party failed to identify any substantial

burden or expense in producing the devices or allowing the account access. *See* 2020 U.S. Dist. LEXIS 62200, at *7-10.

Because of the substantial burden and expense necessitated by responding to this many RFAs, "[c]ourts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive." *Robinson v. Morgan Stanley*, No. 06 C 5158, 2009 U.S. Dist. LEXIS 93971, at *6 (N.D. Ill. Oct. 8, 2009) (citing *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 206 (6th Cir. 1986)) (additional citations omitted); *see also Murray v. U.S. Dep't of Treasury*, No. 08-cv-15147, 2010 U.S. Dist. LEXIS 90512, at *4 (E.D. Mich. Sept. 1, 2010) ("The Court finds that 182 requests for admission is oppressive and unduly burdensome.") (citation omitted); *Joseph L. v. Conn. Dep't of Children & Fams.*, 225 F.R.D. 400, 403 (D. Conn. 2005) (163 RFAs were "excessive to the point of being abusive"). Nor do courts make a special allowance simply because a case is complex.[8] *Fleming v. Escort, Inc.*, No. CV 09-105-S-BLW, 2011 U.S. Dist. LEXIS 14254, at *7 (D. Idaho Feb. 13, 2011) (finding in a patent case "that 216 RFAs are excessive"). Although Peninsula cited these cases in its opening brief, PEM ignored them in its two ensuing submissions.

Further, even PEM acknowledges that the RFAs are "[t]he one exception" to the otherwise roughly equal discovery requests issued by each party. (Pl.'s Supp. Memo., ECF No. 208, at 2). Although the parties have issued approximately the same number of interrogatories,

---

[8] The parties dispute whether this case is complex. PEM argues that the RFAs "relate to five factually-complex forms of infringement and unfair competition" involving tens of trademarks and resulting in 34 counts against Peninsula. (Pl.'s Resp., ECF No. 195, at 10; *see also* Sec. Am. Compl., ECF No. 211, at ¶¶ 59-229). Peninsula responds that PEM "previously told this Court that this was not a complex case when it opposed Peninsula's motion requesting the appointment of a Special Discovery Master" and that "[t]his is not a patent infringement case or products liability case having complicated technological issues." (Def.'s Reply, ECF No. 201, at 1, 3) (emphasis in original). The Court does not consider whether this case is "complex" to be dispositive of its decision.

RFPs, requests for parts, Rule 30(b)(6) deposition notices, and individual and expert deposition notices, PEM has issued **over 200 more** RFAs than Peninsula has, 274 to 60.  (*Id.* at 2; *see also supra* 2 n.5).  It is true that "[t]here is no requirement that parties have to spend equal amounts on discovery, or that a party who has less to produce be somehow limited in what it can request as a result," but those truths render the disparity in RFAs issued in this case no less striking.  *See Bell*, 2016 WL 162991, at *4.

PEM contends that the additional 185 RFAs were necessitated by Peninsula's April 2021 production of 8000-plus new documents, to which Peninsula replies that it had produced most of these documents previously.  (Pl.'s Resp., ECF No. 195, at 1, 6; Def.'s Reply, ECF No. 201, at 3-5).  But even if Peninsula only produced all 8000-plus documents for the first time in April, PEM's issuance of 185 RFAs based on them is grossly incongruous with the prior discovery practice in this matter.  Indeed, although Peninsula had previously produced over 60,000 documents prior to the April supplemental production, PEM had issued only 89 RFAs before issuing the discovery at issue in this motion.  (Pl.'s Resp., ECF No. 195, at 7).

A substantial amount of money is at issue in this litigation, and the party from which discovery is sought has the resources to respond to it.  (*See supra* § V.B, D).  The case may even be "complex."  (*See supra* 17 n.9).  But, even in cases like this one, there must be some limit to discovery.  *See, e.g., Fleming*, 2011 U.S. Dist. LEXIS 14254, at *7.  While the Court does not implement a "*per se*" rule" as to how many RFAs a party may issue in such a case, there is a line, and PEM has crossed it.  The Court will not speculate as to why PEM chose to issue Peninsula 185 RFAs leading up to the close of discovery after issuing less than half that number throughout the rest of the repeatedly extended discovery period, but even ignoring the timing of the RFAs, their issuance was consistent with an "aim . . . to . . . harass" Peninsula.  *Sanders*, 437 U.S. at

18