IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENN ENGINEERING &** | : | **CIVIL ACTION** |
| **MANUFACTURING CORP.** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-513 |
| | : | |
| **PENINSULA COMPONENTS, INC.,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                                          September 15, 2021

Presently pending before the Court is Defendant's Motion to Strike Plaintiff's Confidentiality Designations on Its Supplemental Expert Reports (Mot. to Strike, ECF No. 220), Plaintiff's response thereto (Resp., ECF No. 223) and Defendant's reply in support (Reply, ECF No. 226).[1] For the reasons that follow, Defendant's motion shall be **GRANTED IN PART** and **DENIED IN PART**.

**I.   RELEVANT BACKGROUND**[2]

On July 15, 2021, Plaintiff Penn Engineering & Manufacturing Corporation (PEM) served Defendant Peninsula Components, Inc. (Peninsula) with supplemental expert reports of Erich Joachimsthaler and Carmen Vertullo. (Resp., ECF No. 223, at 1). Joachimsthaler's supplemental report contains three sections: (1) an introduction including an update for the

---

[1] The Honorable Gene K. Pratter referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 161).

[2] For additional facts, see my April 1, 2021, memorandum granting in part and denying in part Plaintiff's consolidated motion to compel responses to requests for production and requests for admission.  (Memo., ECF No. 187).  The instant memorandum includes only factual and procedural history pertinent to this dispute.

supplemental report and a summary of his qualifications; (2) a "summary of issues and opinions"; and (3) a "detailed analysis." (Joachimsthaler Supp. Rpt., ECF No. 220-3, at 2). The third section contains two subsections, one addressing "the business context in which harm and damage to PennEngineering can occur" and a second responding to the opinions rendered by Peninsula's expert, Jonathan Hochman. (*Id.*). The first subsection is further broken down into four areas of analysis: (1) "brands, industrial fasteners, and business impact"; (2) "customer journey, brands, and role of digital marketing"; (3) "customers, brands, and likelihood of confusion"; and (4) "Pencom's freeriding strategies and likelihood of harm to the PennEngineering Brand." (*Id.*). The report is 130 pages, including 42 pages of exhibits. (*See generally id.*). PEM designated the entire supplemental report "CONFIDENTIAL" pursuant to the stipulated protective order entered by Judge Pratter on September 12, 2019.[3] (Memo. in Supp. of Mot. to Strike, ECF No. 220-1, at 1; *see also* Stip. Pro. Order, ECF No. 20).

Vertullo's supplemental report contains 11 sections: (1) an introduction; (2) a qualifications section; (3) a statement of compensation; (4) a recitation of the instructions given to him to complete the report; (5) a section entitled "self-clinching fastener design and function"; (6) a section entitled "determination of equivalency"; (7) a section entitled "test and inspection process"; (8) a section entitled "test and inspection results"; (9) a section entitled "meaning of 'substitute' in the cross-reference chart"; (10) a section entitled "copying and using PennEngineering's Performance Data Based on Reverse Engineering"; and (11) a statement of his conclusions. (Vertullo Supp. Rpt., ECF No. 220-4, at 2). The report is 20 pages, not

---

[3] PEM mistakenly designated only the cover page of Joachimsthaler's report "CONFIDENTIAL" but intended for the entire report to be marked as such. (Joachimsthaler Supp. Rpt., ECF No. 220-3; *see generally* Resp., ECF No. 223 (taking the position that the entire report is confidential); *see also* Email from Silver to Konieczny, ECF No. 220-2, at 2 (pointing out the mistake)).

including exhibits.[4] (*Id.*). PEM initially designated it "HIGHLY CONFIDENTIAL" in its entirety but later redesignated it "CONFIDENTIAL."[5] (Resp., ECF No. 223, at 1 n.1).

On July 19, 2021, counsel for Peninsula, Sam Silver, emailed counsel for PEM, Joseph Konieczny, challenging the blanket confidentiality designations of the supplemental reports and requesting a meet-and-confer within the next seven days, pursuant to the terms of the stipulated protective order. (Email from Silver to Konieczny, ECF No. 220-2, at 1-2). Mr. Silver followed up with another email two days later requesting that Mr. Konieczny not wait until the end of the seven-day period to propose a time. (*Id.* at 1). After Mr. Konieczny failed to provide Mr. Silver with any response at all, Peninsula filed the instant motion on July 27, 2021, seeking to strike the confidentiality designations from the supplemental reports. (Mot. to Strike, ECF No. 220). On August 10, 2021, PEM filed a response, to which Peninsula filed a reply on August 17, 2021. (Resp., ECF No. 223; Reply, ECF No. 226).

**II**.      **DISCUSSION**

The Court begins with the relevant language of the parties' stipulated protective order. *See Wright v. City of Phila.*, No. 16-5020, 2017 WL 5571061, at *1 (E.D. Pa. Nov. 20, 2017) (looking to the parties' confidentiality agreement for the "standard of review and allocation of burden" in considering a motion to strike confidentiality designations); *Avaya, Inc. v. CISCO Sys., Inc.*, No. 10-5881, 2011 WL 13143138, at *1 (D.N.J. Nov. 4, 2011) (beginning the analysis

---

[4] It does not appear that the exhibits to the Vertullo supplemental report were transmitted to the Court, unlike with those to the Joachimsthaler report. (Vertullo Supp. Rpt., ECF No. 220-3).

[5] PEM mistakenly designated all but the cover page of Vertullo's report "HIGHLY CONFIDENTIAL" but intended for the entire report to be marked as such. (Vertullo Supp. Rpt., ECF No. 220-4; *see also supra* note 3).

of a motion to strike confidentiality designations with a review of the applicable portion of the parties' stipulated confidentiality order). Three sections of the order primarily apply to the instant dispute, sections 5.1, 6.1 and 6.2:

> 5.1   <u>Exercise of Restraint and Care in Designating Material for Protection</u>.  Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify - so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.
>
> Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.
>
> . . . .
>
> 6.1   <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.
>
> 6.2   <u>Meet and Confer.</u> The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 7 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of

> the challenge process only if it has engaged in this meet and confer
> process first or establishes that the Designating Party is unwilling
> to participate in the meet and confer process in a timely manner.

(Stip. Pro. Order, ECF No. 20, at §§ 5.1, 6.1, 6.2).

Peninsula points out that PEM has not limited its confidentiality designations to individual facts or lines in the reports but has instead designated every single page of both reports confidential, including those pages pertaining only to the experts' qualifications or illustrations from PEM's website. (Memo. in Supp. of Mot. to Strike, ECF No. 220-1, at 3). It contends that these blanket designations make it impossible to explain its challenge to every designation, to share the reports as needed to defend itself in the litigation or to file any portion of the reports in the public record without going through the cumbersome process of moving for leave to file under seal. (*Id.*). It requests that I strike the confidential designations in the supplemental reports. (*Id.*).

PEM counters with four arguments against Peninsula's requested relief. First, it claims that Peninsula has "failed to sustain its burden of proving that the confidential designations were improper." (Resp., ECF No. 223, at 4). Second, it posits that Peninsula has waived its right to challenge the designations. (*Id.* at 6). Third, it characterizes as "speculative" Peninsula's alleged difficulties caused by the designation of the entire supplemental reports as "CONFIDENTIAL." (*Id.* at 7). Fourth, PEM maintains that complete de-designation of the supplemental reports would prove "[d]raconian." (*Id.* at 7-8).

### A. Burden

The parties dispute which of them has the burden regarding confidentiality. Peninsula asserts that "Section 5.1 of the Protective Order expressly prohibits blanket designations such as those at issue in the motion." (Memo. in Supp. of Mot. to Strike, ECF No. 220-1, at 2) (citing Stip. Pro. Order, ECF No. 20, at § 5.1). PEM responds that Peninsula has the "burden of proving

that the confidential designations were improper." (Resp., ECF No. 223, at 4). Quoting section 6.2 of the order, it maintains that, "[a]s the challenging party, Defendant has the burden under the Protective Order of initially 'describing the basis for each challenge.'" (*Id.* (quoting Stip. Pro. Order, ECF No. 20, at § 6.2)). It argues that Peninsula must "specifically identify[ ] the material that it is challenging and . . . establish, at least *prima facia*, that such material was improperly designated." (*Id.* at 5). It observes that the Third Circuit has a "preference" for "broad 'umbrella' protective order[s] that 'would initially protect all documents that the producing party designated in good faith as confidential'" but that still permit the opposing party to challenge the designation. (*Id.* (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986))). It claims that under this approach, the opposing party must indicate exactly what documents are not confidential, and then the producing party has "'the burden in justifying the protective order with respect to those documents.'" (*Id.* (quoting *Cipollone*, 785 F.2d at 1122)). Peninsula replies that *Cipollone*, which addressed the circumstances under which the court might fashion an "umbrella" versus a "document-by-document" protective order, is irrelevant because "[t]he parties here *agreed* long ago on the terms of the Protective Order," and those terms "forbid the very sort of blanket, or 'umbrella,' designations that plaintiff concedes it employed to the reports at issue." (Reply, ECF No. 226, at 2 (emphasis in original)).

The Court agrees that the stipulated protective order places the initial burden on the party designating material confidential. Section 5.1 requires the party to "take care" to designate only the "specific material" that is actually confidential. (Stip. Pro. Order, ECF No. 20, at § 5.1). Where practical, the producing party has a duty to designate as confidential "only those *parts* of . . . documents . . . that qualify – so that *other portions* of the . . . documents . . . for which protection is not warranted are not swept unjustifiably within the ambit of this Order." (*Id.* (emphasis added)). Section 5.1 expressly forbids "[m]ass, indiscriminate, or routinized

6

designations . . . ." (*Id.*). Indeed, it contemplates the possibility of sanctions for a party that makes "[d]esignations that are shown to be clearly unjustified or that have been made for an improper purpose . . . ." (*Id.*).

Here, PEM failed to "take care" to designate only the specific "parts" of the reports that are confidential while ensuring that the "other portions" that are not confidential were not designated as such. Instead, it engaged in exactly the type of "routinized designations" that the order prohibits. (*See* Resp., ECF No. 223, at 1 (claiming that it is "customary" to designate entire expert reports confidential)). It designated such clearly not confidential portions of the reports as the experts' qualifications and prior engagements, their compensation, and publicly available websites and information referenced by them. (*See generally* Joachimsthaler Supp. Rpt., ECF No. 220-3, at 4-7, Exs. A, B, F, G; Vertullo Supp. Rpt., ECF No. 220-4, at 2-4, Exs. A, C). The Court also finds particularly problematic PEM's blanket designations of the instructions from counsel about the scope of the report; various facts and data relied upon by the experts, including lists of materials reviewed by the experts and provided to them and interviews conducted by them; and the experts' opinions and conclusions. (*See generally* Joachimsthaler Supp. Rpt., ECF No. 220-3, at Exs. C-E; Vertullo Supp. Rpt., ECF No. 220-4). Although not addressing confidentiality directly, Federal Rule of Civil Procedure 26(b)(4)(C)(ii)-(iii) specifically provides that a party may discover for use in litigation facts and data provided to an opposing expert by counsel and considered by the expert, as well as assumptions provided by counsel and upon which the expert relied. FED. R. CIV. P. 26(b)(4)(C)(ii)-(iii). And if PEM's experts truly base their opinions entirely upon confidential information, it remains unclear how PEM intends to present those opinions to the jury. *See United States v. Gibson*, No. 15-23-RGA, 2018 WL 1005964, at *3 (D. Del. Feb. 21, 2018) ("I also do not think that having an opinion based on nothing but confidential information that cannot be disclosed to the jury is admissible

7

expert testimony. It is the essence of *ipse dixit* testimony. There is no way effectively to test its reliability.").

Section 2.2 of the stipulated protective order defines "CONFIDENTIAL" information as that which "qualif[ies] for protection under Federal Rule of Civil Procedure 26(c)." (Stip. Pro. Order, ECF No. 20, at § 2.2). Rule 26(c)(1) protects information if its disclosure would cause the producing party "annoyance, embarrassment, oppression, or undue burden or expense . . . ." FED. R. CIV. P. 26(c). Applying Rule 26(c)(1), even a perfunctory review of the supplemental reports shows that PEM has designated large swaths of nonconfidential information "CONFIDENTIAL" and, in fact, that the reports contain far more nonconfidential information than confidential information. (*See generally* Joachimsthaler Supp. Rpt., ECF No. 220-3; Vertullo Supp. Rpt., ECF No. 220-4).

Accordingly, Mr. Silver attempted to schedule a meet-and-confer with Mr. Konieczny pursuant to section 6.2 of the order. (Email from Silver to Konieczny, ECF No. 220-2, at 2). Mr. Konieczny did not respond. (*See id.*). Nonetheless, PEM contends that Peninsula's motion should fail because Peninsula has not "describ[ed] the basis for each challenge" as required by section 6.2. (Resp., ECF No. 223, at 4). But by arguing that it has no duty to engage in a nuanced confidentiality analysis until Peninsula points to specific pieces of allegedly nonconfidential information marked "CONFIDENTIAL," PEM seeks to invert the burden to identify confidential information in this matter. Section 5.1 of the stipulated order required PEM, in the first instance, to wade through the reports and identify, part by part, confidential versus nonconfidential information. (Stip. Pro. Order, ECF No. 20, at § 5.1). PEM has not performed this task. Instead, it designated the supplemental reports "CONFIDENTIAL" in their entirety. Requiring Peninsula to specify "the basis for each challenge" pursuant to section 6.2

8

would merely shift to it PEM's section 5.1 burden to "take care to limit any such designation to specific material that qualifies" as confidential. (*Id.* at §§ 5.1, 6.2).

Relying on *Cipollone*, PEM maintains that this circuit favors broad "umbrella" protective orders that start with the premise that documents "designated in good faith as confidential" are confidential but that still allow an opposing party to challenge individual designations by "raising the issue with respect to certain documents." (Resp., ECF No. 223, at 5 (quoting *Cipollone*, 785 F.2d at 1122)). In *Cipollone*, the magistrate judge entered protective orders[6] in substantially the form requested by the defendants. 785 F.2d at 1110. The plaintiffs appealed, and the district court "substantially revised" the protective orders using a "document-by-document," as opposed to umbrella, approach. *Id.* at 1121-22. The defendants then appealed, and the Third Circuit weighed the comparative advantages of each type of order. *Id.* at 1122-23. It opined that "the document-by-document approach adopted by the district court" would "deter[ ] over-designation of confidentiality" and be "preferable" in some cases, such as where the court "has reason to believe that virtually all confidentiality designations will be spurious . . . ." *Id.* at 1123. On the other hand, it noted that the umbrella approach "ha[d] several advantages over the document-by-document method . . . in a complex case" and that it was "a useful method of dealing with large-scale discovery." *Id.* The court observed that either approach was consistent with Rule 26(c), provided that the ultimate burden of demonstrating confidentiality remained "at all times" with the party asserting it. *Id.* at 1122. Accordingly, it concluded "that the district court erred to the extent that it felt *obliged* to utilize the document-by-document approach to avoid shifting the burden of proof of confidentiality and . . .

---

[6] *Cipollone* involved appeals from two product liability cases brought against tobacco companies. 785 F.2d at 1110.

9

commend[ed] the umbrella approach for consideration of the district courts in this circuit in complex cases." *Id.* at 1123 (emphasis in original).

As Peninsula notes, unlike *Cipollone*, "this is not a dispute about what type of protective order would be appropriate." (Reply, ECF No. 226, at 2). Here, the parties have stipulated to a protective order, entered by Judge Pratter, and my task is to enforce the terms of that order, not fashion a new one. *See Avaya, Inc.*, 2011 WL 13143138, at *1 ("The language of the parties' [stipulated confidentiality order] is clear. The parties, represented by learned counsel, negotiated the terms of that document and those are the terms that the Court will apply here."); *see also* Stip. Pro. Order, ECF No. 20. In *Cipollone*, by contrast, the Third Circuit was called upon to review a protective order entered by the district court in a dispute between the parties about the nature and language of an appropriate order. 785 F.2d at 1110-11. Even in that case, moreover, the court opined that Rule 26 permits a document-by-document order, although, in some circumstances, an umbrella approach might prove preferable. *Id.* at 1122-23. Thus, PEM cannot – and does not – claim that the stipulated protective order to which it agreed in this case is nonetheless unenforceable under *Cipollone*. *See id.*

Accordingly, the Court will not deny Peninsula's motion on the basis that it failed to identify specific nonconfidential information designated "CONFIDENTIAL" in the supplemental expert reports. On the contrary, PEM, as the party designating the reports "CONFIDENTIAL," has failed to carry its burden of demonstrating that the reports are subject to such protection.

      **B.**    **Waiver**

PEM next argues that Peninsula has waived the right to challenge its designation of the supplemental expert reports as "CONFIDENTIAL" because they "*overwhelmingly overlap* with and incorporate the entirety of the contents of the original reports" served in January 2021.

(Resp., ECF No. 223, at 6 (emphasis in original)).  PEM notes that it also designated the original expert reports "CONFIDENTIAL," but that Peninsula has never challenged those designations. (*Id.*).  It observes that the supplemental reports contain no "new matter" except Joachimsthaler's explanation of how Peninsula's use of PEM's keywords "to divert as much traffic away from PennEngineering as possible" has damaged PEM and Vertullo's description of PEM's fastener manufacturing process and opinion regarding reverse engineering, but that Peninsula has not limited its challenge to this material.  (*Id.* at 3-4).  PEM argues that Peninsula has waived its right to challenge the designations under section 6.1 of the stipulated protective order because PEM "would unfairly [be] require[d] . . . to incur an unnecessary economic burden of filtering through the expert reports . . . ."  (*Id.* at 7).  Peninsula counters by referring the Court to the language of section 6.1 and asserting that it permits the present challenge to PEM's confidentiality designations.  (Reply, ECF No. 226, at 2).

Section 6.1 states: "A Party or Non-Party may challenge a designation of confidentiality *at any time*." (Stip. Pro. Order, ECF No. 20, at § 6.1 (emphasis added)).  This section provides that "a Party *does not waive* its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed."  (*Id.* (emphasis added)). It only requires "a prompt challenge" when "necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation . . . ."  (*Id.*).  PEM points to the purportedly "unfair[ ]" and "unnecessary economic burden" of having to "filter[ ] through" the supplemental reports' "more than 100 substantive pages," but this burden represents nothing more than the one section 5.1 already imposes. (Resp., ECF No. 223, at 7; *see also supra* § II.B).  Whether PEM specifically identifies confidential portions of the reports now or had done so before making any designations, the burden on it is the same.  An earlier challenge by Peninsula would not have enabled it "to avoid" the burden and

expense of separating "specific material that qualifies" as confidential from "other portions . . . for which protection is not warranted," as required by the order. (Stip. Pro. Order, ECF No. 20, at §§ 5.1, 6.1). Thus, the Court finds that Peninsula has not waived its right to challenge PEM's designation of the supplement reports as "CONFIDENTIAL."

### C. Difficulties Caused by the Blanket Designations

Peninsula asserts that the consequences of PEM's designation of the entire supplemental reports as "CONFIDENTIAL" are "not trivial." (Memo. in Supp. of Mot. to Strike, ECF No. 220-1, at 3). It claims that the blanket designations have prevented it from sharing "the reports with certain individuals for purposes of defending itself against claims asserted in the reports" and that it cannot file any part of the reports without first having to seek leave to file under seal. (*Id.*). PEM counters that Peninsula does not identify these "certain individuals" or explain why they must view the supplemental reports. (Resp., ECF No. 223, at 7). It also posits that Peninsula "only *speculates* that it will eventually file these reports at all." (*Id.* (emphasis in original)). In reply, Peninsula argues that it has already "been forced repeatedly to take special steps to file routine briefs because they mention or attach matters that plaintiff has designated pursuant to the Protective Order" and that "normal pre-trial and trial practice" requires the use of expert reports in *Daubert* and summary judgment motions and related hearings and oral arguments, as well as to examine the experts and other witnesses about the reports during trial. (Reply, ECF No. 226, at 4). In addition, it observes that PEM itself has filed material designated "CONFIDENTIAL" in the public record for this case, including several pages of Joachimsthaler's initial report. (*Id.* at 5; *see* Resp. to Mot. to Compel Expert Disco., ECF No. 204, at Ex. 1).

In essence, PEM contends that the Court should not enforce the clear terms of the stipulated protective order because Peninsula has failed to show that it will suffer prejudice from

12

the blanket designations.  However, the order does not require Peninsula to show prejudice, either already suffered or to be suffered in the future.  (*See generally*, Stip. Pro. Order, ECF No. 20).  Rather, it places the initial burden of identifying specific confidential information on the party claiming confidentiality, and then requires only that the opposing party lodge any challenges to confidentiality via the meet-and-confer process.  (*Id.* at §§ 5.1, 6.2; *see also supra* § II.A).  Further, the Court disagrees that it is merely "speculative" that PEM's blanket designations will negatively impact Peninsula's ability to present its defenses.  Section 7.2 limits who may see information designated "CONFIDENTIAL," and section 12.3 requires any party seeking to file such information to obtain a court order permitting it to be filed under seal.  (*Id.* at §§ 7.2, 12.3).  It is hardly "speculative" to consider how these limitations are likely to impede Peninsula's motion and trial practice and otherwise to impede its ability to defend against PEM's claims.  As Peninsula observes, parties routinely attach expert reports, in whole or in part, to *Daubert* and summary judgment motions in particular, and it is impossible to imagine an effective cross-examination of an expert that makes no reference to his or her report.  The Court will not require that Peninsula move to seal these routine filings or to close the courtroom for expert examinations where PEM has failed to show the confidentiality of the underlying information.

Therefore, the Court will not deny Peninsula's motion on the grounds that any prejudice that it will suffer due to PEM's blanket designations is speculative.  The stipulated protective order does not require any such showing by Peninsula, and in any event such prejudice is likely, not speculative.

### D. Complete De-designation

Peninsula requests that the Court strike all "CONFIDENTIAL" designations from Joachimsthaler's and Vertullo's supplemental expert reports.  (Memo. in Supp. of Mot. to Strike,

ECF No. 220-1, at 3; Reply, ECF No. 226, at 5). PEM characterizes such relief as "the most [d]raconian" possible and maintains that Peninsula has failed to "identify[ ] any factors justifying that remedy." (Resp., ECF No. 223, at 8). It repeats its claim that Peninsula has the burden of picking out any improperly designated information. (*Id.*). Although the Court again rejects PEM's attempt to shift to Peninsula the burden of sorting confidential from nonconfidential information, it also rejects, at this stage, Peninsula's invitation to de-designate the reports fully. Joachimsthaler's and Vertullo's supplemental expert reports appear to contain some information that may indeed require protection. The Court shall provide PEM one more opportunity to fulfill its obligation under section 5.1 of the stipulated protective order to designate "only those parts of . . . documents . . . that qualify – so that other portions of the . . . documents . . . for which protection is not warranted are not swept unjustifiably within the ambit of th[e] Order."[7] (Stip. Pro. Order, ECF No. 20, at § 5.1).

## III.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in parts Peninsula's motion. The Court denies Peninsula's request to remove all confidentiality designations from Erich Joachimsthaler's and Carmen Vertullo's supplemental expert reports. However, within five days of the date of this Order, PEM shall provide Peninsula copies of these reports with updated

---

[7] The stipulated protective order requires the designating party, "[t]o the extent it is practical to do so," to identify each confidential "part" or "portion" of the document at issue, but it does not define these terms. (Stip. Pro. Order, ECF No. 20, at § 5.1). The Court observes that both supplemental reports consist of numbered paragraphs and believes that, at a minimum, the order requires the designating party to make individualized confidentiality designations on a paragraph-by-paragraph basis. The Court reminds PEM that it is far better-positioned to identify its confidential information than the Court is. If PEM forces the Court to undertake its burden of isolating confidential from nonconfidential information, PEM runs the risk that protected information may not receive the necessary designation.

confidentiality designations limited to only the parts or portions of the reports containing confidential information.

                                                BY THE COURT:

                                                /s/ Lynne A. Sitarski
                                                LYNNE A. SITARSKI
                                                United States Magistrate Judge