**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PENN ENGINEERING & | : | CIVIL ACTION |
| MANUFACTURING CORP. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-513 |
| | : | |
| PENINSULA COMPONENTS, INC., | : | |
| Defendant. | : | |

## <u>MEMORANDUM</u>

**SITARSKI, M.J.**                                                              **October 13, 2021**

Presently pending before the Court is Defendant's Motion to Enforce and for Sanctions[1]

(Mot. for Sanctions, ECF No. 231-1), Plaintiff's response thereto (Resp., ECF No. 234), and

Defendant's reply (Reply, ECF No. 236).[2]  For the reasons that follow, Defendant's motion is

**GRANTED**.


## I.      RELEVANT BACKGROUND[3]

On August 12, 2021, this Court, upon a motion to compel by Defendant Peninsula

---

[1]  The full name of Defendant's motion is "Motion to Enforce and for Sanctions of Defendant Peninsula Components, Inc. as a Result of Plaintiff's Failure to Follow a Court Order Compelling Production of Information."  By the Court's count, this motion is the *twenty-eighth* substantive discovery motion filed by the parties.  Disappointingly, the game of whack-a-mole continues.  While this motion was pending, the parties filed yet another discovery motion.  (*See* Def.'s Mot. for Clarification, ECF No. 237).

[2]  The Honorable Gene K. Pratter referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 161).

[3]  For additional facts, see my April 1, 2021, memorandum granting in part and denying in part Plaintiff's consolidated motion to compel responses to requests for production and requests for admission.  (Memo., ECF No. 187).  The instant memorandum includes only factual and procedural history pertinent to this dispute.

Components, Inc. (Peninsula), ordered Plaintiff Penn Engineering & Manufacturing Corporation (PEM) to produce the following within 10 days: (1) all documents regarding any policies and practices with respect to PEM's distributors that sell PEM's products to PEM's competitors; (2) all information in PEM's database showing authorized PEM's distributors' sales to unauthorized distributors or representatives; and (3) all information about quality-based returns by PEM's distributors of the fastener products at issue over the last ten years.  (Order, ECF No. 225).  On September 3, 2021, Peninsula filed the instant motion alleging PEM's partial noncompliance and otherwise belated compliance with the Court's Order, as set forth in greater detail below.  PEM filed a response to the motion on September 17, 2021, to which Peninsula filed a reply on September 24, 2021.  (Resp., ECF No.234; Reply, ECF No. 236).

## II.   LEGAL STANDARD

When a party from whom discovery is sought fails to comply with a court order compelling discovery, Rule 37 of the Federal Rules of Civil Procedure allow for the imposition of sanctions.  The Rule provides:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.  They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;
> >
> > (iv) staying further proceedings until the order is obeyed;
> >
> > (v) dismissing the action or proceeding in whole or in part;

>> (vi) rendering a default judgment against the disobedient party; or
>>
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A).

"Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

"The purpose of Rule 37 sanctions is to: (1) ensure that a party will not benefit from its own failure to comply, (2) serve as a specific deterrent . . . , and obtain compliance with a particular Order issued, and (3) serve as a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Update Art, Inc. v. Modin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). A court has broad authority to issue sanctions for failure to comply with discovery orders. However, the broad discretion to impose sanctions pursuant to Rule 37 is limited by the requirements that the sanctions be "just" and that they be "specifically related the particular claim which was at issue in the Order to provide discovery." *Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 220 (3d Cir. 1997) (further quotations omitted). In general, "courts should strive to select sanctions that are responsive to the nature of the violation, to the relative culpability of the mental state that accompanied the violation, and to the kind of harms the violation caused or threatens." 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.41 (Matthew Bender 3d ed.).

III.    **DISCUSSION**

Peninsula brings the instant motion to address three issues surrounding PEM's

compliance with its obligations under the August 12, 2021,Order: (1) PEM's refusal to produce a

privilege log for withheld documents regarding its policies and practices concerning sales by its

distributors to its competitors; (2) PEM's belated production of additional information

concerning sales by its authorized distributors to unauthorized distributors; and (3) PEM's failure

to produce certain information concerning quality-based returns of its products by its

distributors.  Peninsula requests the following three forms of relief to remedy PEM's alleged

noncompliance with the Order: (1) a privilege log for any documents withheld on the basis of

privilege; (2) after PEM produces the information about the quality-based returns, a second,

limited deposition of its expert, Carmen Vertullo, who was previously deposed without this

information in Peninsula's possession; and (3) reasonable attorneys' fees and costs incurred in

bringing the motion.  (Reply, ECF No. 236, at 5-8; *see also* Memo. in Supp. of Mot. for

Sanctions, ECF No. 231-1, at 4).

   A.    **Policies and Practices Regarding Distributor Sales to Competitors**

Peninsula observes that PEM has failed to produce any "documents regarding any

policies and practices with respect to Plaintiff's distributors that sell Plaintiff's products to

Plaintiff's competitors," as ordered by the Court.  (Memo. in Supp. of Mot. for Sanctions, ECF

No. 231-1, at 3).  PEM instead informed Peninsula that "it has produced all non-privileged

documents" in this category, simultaneously insisting that its only responsive documents are

withheld privileged communications with counsel.  (*Id.* at 3-4).  However, it has refused to

produce a privilege log cataloguing these documents.  (*Id.* at 4).  In its response, PEM contends

that the Court "*has already ruled* that the work-product doctrine protects these documents."

(Resp., ECF No. 234, at 13 (citing Memo., ECF No. 224, at 13) (emphasis in original)).  PEM argues that if Peninsula is correct that PEM must produce a privilege log, then counsel would have to create and continually update "a privilege log of every communication between counsel and client because such communications invariably relate to relevant topics encompassed within the scope of some RFP."  (Resp., ECF No. 234, at 13).  PEM notes that Peninsula has never produced a privilege log in this matter.  (*Id.*).

Peninsula replies that it cannot determine whether the Court has ruled that the work-product doctrine protects the withheld documents because PEM has failed to identify them. (Reply, ECF No. 236, at 4).  It points out that PEM appears to suggest that it has withheld only those documents previously found protected in the Court's Memorandum on Peninsula's motion to compel, but that PEM "has not committed to this simple proposition."  (*Id.*).  It argues that, on the other hand, PEM apparently suggests that it has never identified the withheld documents. (*Id.*).  It acknowledges that the parties have yet to exchange privilege logs but maintains never before has a party withheld documents as privileged after being Court-ordered to produce them.  (*Id.* at 5).

In its August 12, 2021, Memorandum, the Court found that an internal email chain among senior PEM staff discussing how Peninsula obtained fasteners from a PEM distributor and whether PEM permits its distributors to sell its fasteners to competitors like Peninsula was protected by the work-product doctrine because PEM created the chain in response to a request by counsel for this information.  (Memo., ECF No. 224, at 8).  PEM never directly referenced this email chain in its pre-motion communications with Peninsula.  (Nebb-Konieczny Email Exch., ECF No. 231-6).  However, by citing the portion of the Memorandum holding the chain protected by the work-product doctrine, PEM now suggests, without confirming, that the

withheld documents are the emails within the chain.  (Resp., ECF No. 234, at 13 (citing Memo., ECF No. 224, at 8); *see also* Memo., ECF No. 224, at 8 ("PEM personnel obviously created [the email chain] in 'reasonable anticipation' of litigation . . . .")).  But PEM's vagueness on this point leaves the Court with the same question as Peninsula: "Why will Plaintiff not just list those documents if that is what it is saying?"  (Reply, ECF No. 236, at 4).

If the only responsive policy and procedure document withheld by PEM is the email chain that the Court has already determined is protected, creating a privilege log for the document would serve no purpose because there is no need to evaluate further whether a protection applies.  On the other hand, if PEM has withheld additional documents upon a claim of protection, then a log is necessary to evaluate whether the protection has been properly invoked.  Accordingly, within three days from the date of this Memorandum and accompanying Order, PEM shall provide Peninsula with either a signed certification that the only responsive document withheld is the aforementioned email chain or, if that is not the case, a privilege log cataloguing all withheld responsive documents with sufficient information for Peninsula to confirm the applicability of the protection invoked.

## B.    Information Regarding Sales by Authorized to Unauthorized Distributors

The Court's August 12, 2021, Order also compelled PEM to produce within 10 days "all information in Plaintiff's database showing authorized Plaintiff's distributors' sales to unauthorized distributors or representatives[.]"  (Order, ECF No. 225).  On August 23, 2021,[4] PEM produced two spreadsheets showing what it indicated were "the only *known* sales" by authorized to unauthorized distributors.  (Nebb-Konieczny Email Exch., ECF No. 231-6, at 2

---

[4]    Ten days after August 12, 2021, was Sunday, August 22, 2021.  Monday, August 23, 2021, was the next business day.

(emphasis in original)).  Even though PEM requires its distributors to compile reports of their

sales each month, the spreadsheets only showed sales to four entities, three of which were related

to Peninsula.  (Nebb Ltr. to Konieczny, ECF No. 231-4, at 1).  For this reason, on August 25,

2021, Peninsula raised questions with PEM regarding the scope of its search, including whether

PEM had checked for sales to Peninsula-related entities identified in Peninsula's discovery

responses and an earlier settlement agreement, in PEM's distributors' monthly sales reports, and

in PEM's "Cease and Desist/Infringement" chart.  (*Id.* at 1-2).  On August 30, 2021, PEM

responded that it was expanding its search.  (Nebb-Konieczny Email Exch., ECF No. 231-6, at

1).  Peninsula replied later that day that if PEM did not produce the information prior to the

deposition of PEM's expert, Carmen Vertullo, scheduled for the following day, it would raise the

issue with the Court.  (*Id.*).  On September 2, 2021, PEM produced an updated spreadsheet

showing a substantially larger number of sales by authorized distributors to Peninsula and its

related entities than previously disclosed.  (Memo. in Supp. of Mot. for Sanctions, ECF No. 231-

1, at 3).  Peninsula maintains that "there can be no legitimate explanation for plaintiff's delay in

producing this information" and that PEM would not have produced it – although Court-ordered

to do so – if Peninsula had not threatened to take the matter before the Court.  (*Id.*).

PEM counters that it has approximately 14,000 customers and that it cannot determine

whether they are end users or distributors simply by looking at their tradenames.  (Resp., ECF

No. 234, at 10).  It asserts that the Order did not require it to investigate 14,000 customers'

business practices within 10 days to determine the status of each.  (*Id.* at 10-11).  It complains

that Peninsula's August 25, 2021, letter suggested additional means of identifying sales to

Peninsula-related entities "[i]nstead of simply advising [PEM] of the full list of related

entities . . . ."  (*Id.* at 11).  PEM maintains that, once additional entities were identified, it

promptly repeated its search for relevant sales and produced additional information on September 2, 2021.  (*Id.* at 12).  It insists that it has provided a legitimate explanation for the delay in arriving at a more complete list of relevant sales.  (*Id.*).

In its reply, Peninsula contends that PEM fails to "address . . . that it only produced the additional information after Peninsula pressed it to do so – after the ordered date for compliance."  (Reply, ECF No. 236, at 3).  It also posits that it "remains an open question" whether PEM has exhausted its search and identified all relevant sales.  (*Id.*).  Peninsula argues that PEM's failure to achieve "actual, full compliance with the Court's Order" is inconsistent with its insistence on broad production of information at other junctures in this case.  (*Id.* at 4).

Peninsula requests no relief specifically tied to PEM's belated production of the requested sales information, and it acknowledges uncertainty surrounding whether the untimeliness of the production "would be a matter sufficient to warrant a standalone motion . . . ."  (Reply, ECF No. 236, at 4).  It speculates that PEM may not have fulfilled its search obligations, but PEM has confirmed that it reviewed its records for sales to the entities identified by Peninsula and listed on PEM's infringement chart.  (*Id.* (quoting Konieczny to Nebb Email, ECF No. 234-4)).  The Court agrees with PEM that attempting to determine which of its 14,000 customers are distributors who, in turn, *might* have sold PEM products to unauthorized distributors is not proportional to the needs of the case.  *See* FED. R. CIV. P. 26(b)(1).  Ultimately, Peninsula asserts that it raises its concerns regarding PEM's production of information regarding unauthorized sales only as "relevant evidence of plaintiff's non-compliance in a motion that seeks redress for plaintiff's broad, consequential non-compliance with the Court's Order of August 12."  (Reply, ECF No. 236, at 4).  The Court recognizes that PEM initially failed to conduct a sufficiently comprehensive search, but also that it promptly

remedied this deficiency after Peninsula brought it to PEM's attention.  Because other grounds exist to award Peninsula its remaining requested relief, as set forth in the following section, the Court does not consider this issue further.

### C.   Information Regarding Quality-Based Returns

Thirdly, the Court ordered PEM to "produce all information about quality-based returns by Plaintiff's distributors of the fastener products at issue over the last ten years."  (Order, ECF No. 225).  On August 23, 2021, PEM produced a spreadsheet "showing *all returns*" by its distributors (other than surplus inventory) because "PennEngineering's database does not include the reason for the return."  (Nebb-Konieczny Email Exch., ECF No. 231-6, at 3 (emphasis in original)).  On August 25, 2021, Peninsula asked PEM whether it in fact had no information regarding quality-based returns, despite prior claims about the superiority of its products, or whether it was instead withholding such information, despite being Court-ordered to produce it. (Nebb Ltr. to Konieczny, ECF No. 231-4, at 2).  PEM responded on the morning of August 30, 2021, that it was "expanding [its] search for additional documents."  (Nebb-Konieczny Email Exch., ECF No. 231-6, at 1).  Peninsula emailed back that afternoon that it required the documents prior to the next day's deposition of Vertullo, whom Peninsula intended to question about quality-based returns of PEM's products.  (Memo. in Supp. of Mot. for Sanctions, ECF No. 231-1, at 2 (citing Nebb-Konieczny Email Exch., ECF No. 231-6, at 1)).  PEM ignored this request, and Peninsula was forced to conduct the deposition without the information.[5]  (*Id.*).

PEM maintains that it has undertaken reasonable efforts to identify quality-based returns. (Resp., ECF No. 234, at 1-2).  It explains that the difficulty in doing so stems, at least in part,

---

[5]  Peninsula proceeded with the deposition because Vertullo had traveled from California to Philadelphia and because it was not practical to delay it in light of the schedule for expert reports.  (Memo. in Supp. of Mot. for Sanctions, ECF No. 231-1, at 2 n.2).

from the fact that no formal procedure for reporting product defects exists.  (*Id.* at 2).  If PEM receives a complaint by email or other written communication, the document is "sometimes" saved in PEM's CEBOS software program,[6] where PEM stores results from its quality control investigations[7] of allegedly defective products for four years, pursuant to its document retention policy.  (*Id.*).  If the quality control department determines that the complaint is valid, the customer service department assigns a return authorization number (RMA)[8] and creates a credit entry in PEM's JD Edwards Enterprise One (JDE) software program by populating defined data fields.  (*Id.* at 3).  PEM created the report it produced to Peninsula from these data fields, but they do not contain information about the reason for the return.  (*Id.* at 4).  Like CEBOS, JDE includes an option to associate documents with the complaint or return, but it does not permit PEM to make these documents or the information contained in them a part of the report generated from the data fields.  (*Id.* at 4 n.2).  Rather, PEM must download documents individually from each RMA.  (*Id.*).  However, the downloaded documents "contain no identifying indicia associating them with a particular RMA."  (*Id.*).  Thus, although the 807 RMAs in the report all pertain to confirmed quality-based returns, the specific defect for each remains unknown and must "be mined from other sources."  (*Id.* at 5).

---

[6] PEM has used CEBOS since 2020.  (Memo. in Supp. of Mot. for Sanctions, ECF No. 234, at 2).  Prior to that, it used a Microsoft Access database.  (*Id.*).

[7] Because most defects involve the product's dimensions, investigations of defects normally entail measuring samples of the product, and only rarely require performance testing.  (*Id.* at 3).

[8] The Court derives the shorthand for a return authorization number, RMA, from PEM's brief.  It is unclear what words these three letters represent, if any, or why return authorization numbers are not referred to as RANs.

To correlate specific defects to individual RMAs, the quality control department must take multiple steps, including exporting sortable Excel files of customer complaints from CEBOS, saving each complaint as a PDF, saving any supporting documentation as a PDF, and combining PDFs pertaining to a single RMA into a single document.  (*Id.* at 6).  Further delaying the process, PEM alleges that the department spent "many weeks" preparing for a weeklong audit[9] beginning September 20, 2021, and that the department lacks the staff to carry out this process, the preparation for the audit, and its daily tasks.  (*Id.*).  PEM estimates that it will take "an additional 2-3 weeks" from September 17, 2021, or up to October 8, 2021, to complete the process of identifying specific defects.  (*Id.* at 6-7).

PEM posits that these alleged facts demonstrate its good faith attempts to comply with the Court's Order and undermine Peninsula's request for sanctions.  (*Id.* at 7).  Specifically, it contends that any noncompliance with the Order was "substantially justified" under Federal Rule of Civil Procedure 37(a)(5)(A) because it acted diligently to search "ten-years' worth of records on multiple software platforms, including one that is no longer in use," and "to create a responsive record involv[ing] a time-consuming series of manual manipulations . . . ."  (*Id.* at 8-9 (citing FED. R. CIV. P. 37(a)(5)(A); *Waites v. Kirkbride*, No. 10-cv-1487, 2012 WL 3104503 (E.D. Pa. July 30, 2012))).  PEM insists that "there was no willful deception or flagrant disregard for the Court Order."  (*Id.* at 9).  It also maintains that Peninsula suffered no prejudice in deposing Vertullo without the missing information because (1) he based his report upon performance testing rather than product returns; (2) his description of PEM's superior reputation

---

[9]  PEM does not explain the nature of this audit or why it takes preference over a Court-ordered deadline.

was based upon his own experience as an expert in the fastener industry, not product returns; and (3) Peninsula did not ask Vertullo about the report produced.  (*Id.*).

In reply, Peninsula observes that PEM admits its noncompliance and that PEM never sought further review of the August 12, 2021, Order or provided Peninsula with its purported justification for its failure to produce all information about quality-based returns.  (Reply, ECF No. 236, at 2).  Instead, Peninsula alleges that PEM obfuscated and prevaricated about the information it possessed and ultimately ignored Peninsula when it pressed PEM to provide the missing information prior to the Vertullo deposition.  (*Id.*).  Peninsula asserts that it is incredible that PEM, a purported leader in the fastener industry, lacks accessible records regarding the quality of its products and, further, that such a claim contradicts PEM's corporate designee's testimony regarding its maintenance of warranty claim records.  (*Id.* at 3).

Peninsula requests three "extremely minimal sanctions" for PEM's failure to produce the missing information.  (*Id.* at 5).  First, pointing out the October 15, 2021, expert report deadline and the prejudice it has suffered from its expert not having all responsive information, it asks the Court to order PEM to produce the remaining information within three days.  (*Id.*).  Second, after PEM produces this information, Peninsula wishes to re-depose Vertullo limited to the new information.  (*Id.* at 6).  Peninsula reiterates its attempts to obtain the information prior to Vertullo's deposition and excerpts testimony in which he responded to questions about verifying his opinion regarding PEM's product superiority by referencing its "complaint records."  (*Id.* at 7).  Third, Peninsula seeks reasonable attorneys' fees and costs incurred in filing the motion.  (*Id.* at 5).  It explains that PEM's noncompliance coupled with its refusal to cooperate in resolving the matter left Peninsula with no choice but to file the instant motion or to accept PEM's partial production.  (*Id.*).

The Court considers the appropriateness of the requested sanctions.  PEM acknowledges its duty to produce the remaining information and indicates its expectation to have done so by October 8, 2021.  (Resp., ECF No. 234, at 6-7).  That date has now passed.  Accordingly, the Court has no hesitation in ordering PEM, to the extent it has not already produced the missing quality-based returns information, to produce it within three days.  By this point, the audit concluded over two weeks ago, and insofar as PEM requires additional resources beyond its quality control department, it has had an opportunity to procure them.  Indeed, in granting Peninsula this relief, the Court imposes no "sanction" at all.  Rather, it merely re-orders the relief already provided in its August 12, 2021, Order.

Next, the Court finds it necessary to adjust certain aspects of expert discovery to prevent PEM from benefitting at Peninsula's expense.  *See Update Art, Inc.*, 843 F.2d at 71 ("The purpose of Rule 37 sanctions is to . . . ensure that a party will not benefit from its own failure to comply . . . .").  First, because the current October 15, 2021, expert rebuttal report deadline would not permit Peninsula's expert to review the information to be produced before submitting his report, assuming it has not already been produced, the Court shall extend Peninsula's rebuttal report deadline until one week after PEM has produced all information regarding quality-based returns.[10]

In addition, Peninsula may depose Vertullo limited to the information in the supplemental production.  The Court rejects PEM's contentions that its failure to produce this information in advance of Vertullo's initial deposition did not prejudice Peninsula.  PEM maintains that Vertullo based his opinions regarding the purported superiority of PEM's products solely on

---

[10]  To the extent PEM fulfilled its obligations under the August 12, 2021 Order by October 8, 2021, Peninsula's expert rebuttal report deadline shall remain October 15, 2021.

13

performance testing and his experience in the fastener industry, but Peninsula points to deposition testimony in which Vertullo stated that he would also "ask to look at [PEM's] complaint records" to confirm these opinions.  (Reply, ECF No. 236, at 7 (citing Vertullo Tr., ECF No. 236-2, at 47:23-48:15)).  Indeed, even if Vertullo had not referenced PEM's customers' complaints, PEM's failure to provide Peninsula with information about specific defects tied to individual product types deprived Peninsula of its right to confront Vertullo with this information and question him about what impact, if any, it had on his opinions regarding the alleged superiority of PEM's products.  Further, Peninsula did not waive its right to ask Vertullo about the completed report containing all available information about quality-based returns by not asking him about the earlier, incomplete report lacking information about specific product defects.  The completed report may contain new information about which Peninsula wishes to question Vertullo that the prior one did not.

Lastly, the Court considers Peninsula's request for reasonable attorneys' fees and costs incurred in filing the motion.  Rule 37 *requires* an award of these expenses unless the party against which they are to be imposed carries its burden of showing that its noncompliance "was substantially justified or other circumstances make an award of expenses unjust."  FED. R. CIV. P. 37(b)(2)(C); *Klatch-Maynard v. Sugarloaf Twp.*, No. 06-0845, 2011 U.S. Dist. LEXIS, at *2 (M.D. Pa. May 23, 2011).  Substantial justification for a party's failure to comply with a discovery order may exist where "its disobedience: (1) was based on a good faith and reasonable misunderstanding of its obligations pursuant to the order, (2) was only technical or at the periphery of the order, and caused other parties to suffer no prejudice, or (3) was attributable entirely to forces or circumstances beyond the party's control."  7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.51.

Here, PEM essentially argues that the third set of circumstances is present.  Relying primarily on my decision in *Waites*, PEM contends that its failure to produce all information about quality-based returns in the allotted time was attributable to the size of the endeavor, exigent circumstances affecting its available manpower (i.e., the audit), and the "short period of time to comply . . . ."  (Reply, ECF No. 234, at 4-7).  However, *Waites* is distinguishable for several reasons.  First, as Peninsula notes, the movant in *Waites* sought a much more substantial sanction – a new trial – than the few thousand dollars in attorneys' fees and costs that Peninsula seeks here.  2012 WL 3104503, at *1; *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) ("The mildest [sanction] is an order to reimburse the opposing party for expenses caused by the failure to cooperate.").  Second, the movant in *Waites* suffered no prejudice or surprise by the untimely production – in the midst of trial – of her personnel file because she had signed many of the documents in the file and authored the most important one and because her counsel assured the Court that he was ready to continue with her examination and even moved several of the documents into evidence.  *Waites*, 2012 WL 3104503, at *9.  On the other hand, as discussed above, PEM's failure to produce all responsive information has impeded Peninsula's ability to prepare its expert reports and fully depose one of PEM's experts.  Although it is true that I considered the nonmovant's diligent efforts to locate the missing documents in *Waites*, that was not the sole basis for my decision in that case, nor is it the sole basis for my decision here.  *See id.* at *7.

Ultimately, the Court finds that an award of attorneys' fees and costs is warranted not because PEM failed to exercise due diligence in attempting to compile all responsive information, but because the necessity of Peninsula filing the motion could have been easily avoided if PEM had taken one or more simple steps.  Foremost among these, PEM could have

explained to Peninsula – as it has at last done in its response – the scale of the effort required and the limitations on its resources, and the parties could have attempted to work out a resolution.  If these efforts proved futile, it could have petitioned the Court for additional time to comply with the Order.[11]  But PEM took neither of these actions.  Instead, it sent Peninsula cryptic replies to its initial inquiries about the status of the production and eventually stonewalled Peninsula entirely when pressed about when it would receive the remaining information.  (Nebb-Konieczny Email Exch., ECF No. 231-6, at 1).  In effect, PEM arrogated to itself an indefinite extension to produce Court-ordered materials without obtaining the approval of either its opposition or the Court.

Regrettably, this instance is not the first in which PEM's failure to communicate with Peninsula has led to the filing of a motion that otherwise might have been avoided.  (*See* Sept. 15, 2021 Memo., ECF No. 232, at 3, 8 (noting Mr. Konieczny's failure to respond to Mr. Silver regarding a dispute about confidentiality designations)).  Although the Court hopes, perhaps without basis in light of the parties' proven inability to cooperate, that it will be the last, the parties may rest assured that the failure to work cooperatively to at least attempt to resolve disputes will be met with certain and escalating sanctions against the party found primarily at fault for the breakdown in reaching an amicable resolution.  To this end, within 10 days, PEM shall pay Peninsula $5,000 as reasonable attorneys' fees and costs in filing the instant motion necessitated by PEM's failure to carry out basic communications with its litigation adversary.

To summarize, PEM shall produce all remaining information regarding quality-based returns within three days.  Once PEM has produced this information, Peninsula shall produce its

---

[11]   At a minimum, if PEM had communicated with Peninsula, it would have found itself in better stead when Peninsula filed the instant motion.

rebuttal expert report within one week, except that Peninsula shall produce the report by October 15, 2021, if PEM produced all responsive information by October 8, 2021.  Peninsula may retake the deposition of Vertullo limited to the new information produced.  And PEM shall pay Peninsula $5,000 in attorneys' fees and costs within 10 days.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Peninsula's motion.  An appropriate Order follows.

BY THE COURT:

_/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge