IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Penn Engineering & Manufacturing Co. | ) | **Case No. 2:19-CV-00513** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Peninsula Components, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PENINSULA COMPONENTS, INC.'S RESPONSE TO PLAINTIFF'S
MOTION TO ENFORCE DISCOVERY ORDER AND FOR SANCTIONS**

On October 25, 2021, after considerable briefing on the issue (Dkts. 199, 210, 217, 237,

244), the Court issued an Order requiring Defendant Peninsula Components, Inc. ("Peninsula")

to produce all available Google Ads reports from its account within 10 days.  Peninsula did that.

Yet plaintiff was still not satisfied, so it asked Peninsula for additional information.  Peninsula

promptly agreed to provide that information, and it did so.  Plaintiff is still not satisfied, and now

comes to the Court with a series of unsupported and incorrect accusations in what is plainly a

campaign to continue to raise this issue until this Court gives plaintiff unfettered access to

Peninsula's own electronic information by way of Peninsula's Google Ads account.  The Court

rejected this relief before (Dkts. 245-246) and it should do so again.  Plaintiff's latest motion

should be denied.

## I.        Peninsula's "PEM036" Production

On November 4, 2021, Peninsula produced an Excel spreadsheet with 48 tabs corresponding to all available predefined reports from its Google Ads Account.[1]  Peninsula generated every one of these 48 reports following the exact protocol requested by plaintiff to generate the reports from the navigation bar in Peninsula's Google Ads account.  Dkt. 199-5 (pertinent portion reproduced below, emphasis added).

Igor,
To get started, we request immediate production of the "ad performance report", which you can see directly at that link we previously supplied.  We also request the "campaign settings report".  To access the campaign settings report, Pencom must to log into its Google Ads account, click on the settings drop down in the left navigation bar, click on "campaign settings," make sure "All" is selected in "campaign status in the top left, and download.



Declaration of Blake Gardiner ("Gardiner Declaration") ¶ 3.

---

[1]        The predefined default reports are the reports that Peninsula uses in the ordinary course of business to monitor its Google paid search advertisement campaigns.

Peninsula did not alter, delete, or modify the data delivered by Google in any of the reports in any way.  All available data in the predefined default reports (referred to by plaintiff as the "PEM036" production) was downloaded and produced.  Gardiner Declaration ¶ 4.

When Peninsula generated and produced responsive reports to plaintiff on November 4, 2021 (PEM036), some of the predefined reports that appeared as choices in Peninsula's Google Ads account had no data at all or had data that was not presented in the form of a downloadable spreadsheet.  For example, the Audiences report was rendered by Google in the form of a graph. The Top Content report was rendered by Google in the form of a table.  The Settings report, the Negative Dynamic Ad Target report, the Topic Exclusions report, the Excluded Location report, the Campaign Drafts report, the Campaign Experiments report, the Ad Variations report, the Performance Target report and the Campaign Groups report showed no data.  Gardiner Declaration ¶ 5, Exhibit 1.

Plaintiff misleadingly dismisses the information contained in Peninsula's production PEM036 as "meaningless images, screen captures."  However, the opposite is true.  These screen captures were included in Peninsula's production PEM036 to plaintiff in order to demonstrate that Peninsula accessed and downloaded from every setting in Peninsula's Google Ads account, and to demonstrate to plaintiff Peninsula's full compliance with the Court's Order and its painstaking adherence to the protocol requested by plaintiff to generate the reports.  Peninsula's screen captures detail Peninsula's efforts to provide everything that was contained in its Google Ads account.

In addition to producing all available reports and data from its own account, Peninsula requested its current Google Ads advertising vendor, Multiview Inc. ("Multiview"), to produce all available predefined reports from Multiview's account relating to Peninsula.  Multiview was

retained by Peninsula in August 2020 to run Peninsula's paid search advertising campaigns

through Google Ads, Google's online advertising program.[2]  Multiview utilizes its own Google

Ads account to run Peninsula's paid search advertising campaigns.  Multiview does not utilize

Peninsula's Google Ads account in its campaigns on Peninsula's behalf.  Similar to how the

reports were generated by Peninsula from Peninsula's account as described above, the Multiview

reports were prepared using Multiview's general client account default report settings.  Exhibits

1-2.  Multiview did not alter, delete, or modify the data delivered by Google in any of the reports

in any way.  All available data in the predefined default reports was downloaded and produced as

PEM036.  Exhibit 3.

## II.        Peninsula's "PEM037" Production

Not satisfied with Peninsula's PEM036 production, on December 7, 2021, plaintiff

provided a new and different protocol and set of instructions for Peninsula to follow to generate

the Google Ads reports requested by plaintiff.  Plaintiff provided 15 new templates of the reports

it wished to receive. Dkt. 253-3.[3]

Because plaintiff's December 7 request would require Peninsula to generate reports in

new and unfamiliar formats that went far beyond the predefined reports that Peninsula and its

---

[2]     Multiview started running Google Ads for Peninsula's paid search advertising campaigns
from its own account in August 2020.  Peninsula continued running Google Ads from its
own account in parallel with Multiview's campaigns until August of 2021, when
Peninsula paused all of its campaigns.

[3]     The 15 templates and instructions do not appear to have been downloaded from or
originate from Google.  Instead, it looks like plaintiff's counsel generated the templates
and instructions himself based on unknown sources.  The statement in plaintiff's motion
and in Dkt. 253-3 that the spreadsheet identifies all data fields that are available within
each report, and therefore each data field is present and available in Peninsula's or
Multiview's Google Ads accounts, is an attorney argument not supported by any citation
to Google sources or indeed any evidence whatsoever.

vendors Logical Positions, Thomas Net, and Multiview, were using in the ordinary course of

business, and because plaintiff for the first time provided a new protocol for Peninsula to

generate custom reports with which Peninsula had not used before, Peninsula engaged its expert

witness on the subject of Google Ads, Hochman Consulting, to generate the new reports

demanded by plaintiff.  Hochman Consulting generated the requested reports by meticulously

following the protocol provided by plaintiff.  Robert Jackson, a partner at Hochman Consulting

with 15 years of experience in the industry, used every step of the protocol suggested by plaintiff

to ensure that all data that was available from Google in Peninsula's Google Ads account was

included in every report.  He also followed the specific instructions noted by plaintiff's counsel

in each tab in the spreadsheet.  He did not alter, delete, or modify the data delivered by Google in

any way.  Declaration of Robert M. Jackson ("Jackson Declaration") ¶¶ 5-7.

In addition to the reports produced by Hochman Consulting from Peninsula's Google Ads

account in accordance with plaintiff's December 7 letter, Peninsula requested that Multiview

produce the requested reports from its account according to plaintiff's December 7 request.

Multiview also meticulously followed plaintiff's protocol and instructions provided by plaintiff's

counsel in each tab in the spreadsheet to ensure that all data that was available from Google in

Multiview's Google Ads account related to Peninsula was included in every report generated by

Multiview.  Exhibit 2.  Multiview did not alter, delete, or modify the data delivered by Google in

in any way.  Exhibit 2.  Of the fifteen specific reports requested by plaintiff, some reports[4] were

not available in Multiview's account, because Multiview is not utilizing dynamic advertisements

---

[4]     Of the seven supposedly "missing reports" identified by plaintiff in Dkt. 253-1 at 15, the
Search Term (Search_keywords) reports and the Change History reports were actually
produced.  The Ad Extension report, the Topic Report, the Display Video Keyword
Report, the Dynamic Ad target report, and the Ad Type by Click Type reports were not
available.

in its campaigns on behalf of Peninsula and is using different marketing strategies and is running fewer overall paid search advertising campaigns on behalf of Peninsula than were previously run by Peninsula and/or by Peninsula's other paid search advertising vendors.  Exhibits 1, 4.

To ensure complete compliance with the Court's Order, and to match the scope of its previous production, Peninsula provided additional Google Ads reports from Multiview's account beyond the fifteen requested by plaintiff.  Multiview generated all available Google Ads reports for Peninsula's paid search advertising campaigns run by Multiview in its account on Peninsula's behalf that would correspond to the reports previously produced by Peninsula in the PEM036 production.  Exhibit 1.  Again, because of the lack of use of dynamic advertisements and different advertising strategies employed by Multiview, not every report produced in the PEM036 production from Peninsula's Google Ads account was reproducible in Multiview's account, as shown below.

- Time_series (2014.07.01-2021.11) - included
- Campaigns (2014.07.21-2021.11.01) - included
- Search_keywords (2014.07.21-2021) - included
- Searches (Search_2014.07.21-2021) - included
- Searches (Word_2014.07.21-2021.1) - not included, not a standard report, most likely generated by 3rd party software
- Devices (2014.07.21-2021.11.01) - included
- Demographics (Age_2014.07.21-202) - included (% of known total is not a standard column)
- Networks (2014.07.21-2021.11.01) - included
- Day_&_hour (Day_2014.07.21-2021) - included (Multiview did not run dayparting)
- Day_&_hour (Day_Hour_2014.07.21) - included (Multiview did not run dayparting)
- Day_&_hour (Hour_2014.07.21-2021) - included (Multiview did not run dayparting)
- Campaign report -included (Multiview is not using shared budgets or manual bidding so not all fields are available)
- Campaign auction insight report -included
- Ad group report - included (Multiview is not using shared budgets or manual bidding so not all fields are available)
- Ad group auction insight report - included
- Ad report - included (Multiview is running responsive ads also so columns differ)

- Landing page report - included
- Expanded landing page report - included
- Search keyword report - see Search Keywords report
- Display video keyword report - not included, Multiview did not run a Google Display campaign
- Negative keyword report - included
- Search terms report - see Searches report
- Keyword auction insight report - included
- Automatic placements report - not included, Multiview did not run a Google Display campaign
- Placement exclusions report - not included, Multiview did not run a Google Display campaign
- Campaign settings report - included
- Dynamic ad target report - not included, Multiview did not run Dynamic ads
- Dynamic ad search terms report - not included, Multiview did not run Dynamic ads
- Topic report - not included, Multiview did not run a Google Display campaign
- Location report -included
- Excluded location report - not included, Multiview did not exclude any locations
- Per store report - not included , this is for Google My Business campaigns which Multiview is not running
- Ad schedule report - not included, Multiview did not run dayparting, see Day & Hour reports
- Ad schedule day and hour report - see Day&Hour reports Multiview is not running dayparting
- Ad schedule day report - see Day&Hour reports Multiview is not running dayparting
- Ad schedule hour report - see Day&Hour reports Multiview is not running dayparting
- Device report - included
- Advanced bid adjustment report – included
- Ad Extension report - not included, not available
- Ad Report by Click Type - not included, not available

Exhibit 4.  Every available report was produced without any alterations, deletions, or

moderations of data delivered by Google in in any way.  Exhibits 2, 3.

## III.      Plaintiff's Allegations about Peninsula's produced reports are factually incorrect and frivolous.

The most egregious misrepresentation in plaintiff's motion, and also the easiest to refute,

is that Peninsula supposedly "limited the reporting time period of the Change History Report to

December 8, 2019 through December 8, 2021.  By carefully avoiding the time period, 2017

through 2019, Defendant concealed the relevant information in the Change History Report."
Dkt. 253-1 at 7.  This is false.  Peninsula produced the Change History Report bearing Bates
numbers PEM54860-55361 for the time period November 13, 2017 - November 13, 2019 on
November 19, 2019, more than two years ago.[5]  Exhibit 5.  Plaintiff is either unaware of the
scope of Peninsula's prior productions or is deliberately misleading the Court.

Plaintiff also alleges that none of the reports produced by Peninsula show dynamic
advertisements. This is clearly incorrect, as is easily demonstrated by screenshots from
Peninsula's Ad Report prepared by Hochman Consulting and produced as part of the PEM037
production, bearing Bates number PEM72092 attached as Exhibit 1 to the Declaration of
Jonathan Hochman ("Hochman Declaration").  The Ad Report includes column AU, which
shows the type of ads, including those titled "dynamic ads" and "expanded dynamic search ad."
Hochman Declaration ¶¶ 4-5.  Further, plaintiff appears to either not understand Google's use of
"curly" brackets or is again misleading the Court.  As explained by Mr. Hochman, curly brackets
are only used with a Google Ads feature called Dynamic Keyword Insertion ("DKI") and are not
used in dynamic search advertisements.  Peninsula uses dynamic search advertisements instead
of DKI, so no curly brackets appear in Peninsula's Google Ads reports.  Hochman Declaration ¶
6.

Plaintiff's complaint that Peninsula somehow withheld critical information by not
providing reports that show the use of the "Pem" mark in its advertisements between 2017 and
2019 is entirely baseless.  Peninsula has never disputed that two mistakes made by Peninsula's
vendors, Logical Positions and Thomas Net, resulted in two short periods of time between 2017

---

[5]     Google Ads only makes available two years of change history data.
        https://support.google.com/google-ads/answer/2454137?hl=en;
        https://support.google.com/google-ads/answer/19888?hl=en.

and 2019 during which plaintiff's trademark "Pem" accidentally appeared in Peninsula's Google Ads.  These advertisements were clearly identified as exhibits and discussed in the deposition of Thomas Net, the vendor that ran Peninsula's Google Ads program between October 2018 and September 2019.  See Exhibit 6, comprising Exhibit T-4C from the deposition of Thomas Net's Samantha Kramer dated November 18, 2019.  Ms. Kramer explained to plaintiff's counsel that the words from the "Headline" column in the Ad report (for example, "Pem Fasteners" or "Pem Nuts") would appear as the two first words in the ad.  Ms. Kramer also testified that the words appearing in columns "Headline One" or "Headline Two" (for example, "Leading OEM Solutions Provider" or "Experts since 1982") would also appear in an ad, chosen by Google's automated process depending on what the keyword was entered by the user in the Google search bar.  Exhibit 7, Deposition of Samantha Kramer at. 28-31. These same advertisements, containing the words "Pem Fasteners" or "Pem Nuts" in the "Headline" column and the words "Leading OEM Solutions Provider" or "Experts since 1982" in the "Headline Two" column were clearly identified and shown as "disabled" in the recently produced Ads Report (PEM72092). Exhibit 8.[6]

Finally, plaintiff's allegation that Peninsula did not provide complete reports is incorrect and disturbing.  Plaintiff has not provided any competent factual basis to support its bare allegations that any data that would have been available from Google in Peninsula's or Multiview's accounts was deliberately withheld.  Plaintiff has not even tried to make a showing, beyond complaining that it thinks that some columns were missing from the reports, as to what *relevant* data was not provided.  The examples of missing data that plaintiff did provide, relating

---

[6]     Plaintiff admits that it does not have any evidence of use of its mark in current Google Ads placed on behalf on Peninsula.  Exhibit 9.

to the age and gender of the searchers, days of the week of searches, or the devices and networks used in searching, are entirely frivolous.  Dkt. 253-1 at 13.  This information, even assuming that it was available from Google, has no bearing on any issues in this case.

The truth, as supported by the attached declarations, is that Peninsula followed all protocols and instructions provided by plaintiff for each of its requests and produced all reports with all data available from Google Ads from its and Multiview's accounts.  It should be noted that Peninsula has repeatedly asked plaintiff to have a conference of the parties' experts so that all technical issues related to the generation and production of Google Ads reports could be discussed and an agreement on appropriate protocols could be reached.  See, for example, Dkt. 199-5.  Plaintiff has steadfastly refused, choosing instead to file a baseless motion full of inaccuracies and misrepresentations.

**IV.      Peninsula Fully Complied with all Discovery Rules.**

Federal Rule 26 requires supplementation if the information produced in discovery was incorrect or incomplete at the time of production.  *See Hnot v. Willis Group Holdings Ltd.*, No. 01-cv-6558, 2006 U.S. Dist. LEXIS 57612, at *17-20 (S.D.N.Y. Aug. 17, 2006) (finding that a data production that was complete and accurate at the time of production was not rendered incomplete by generating additional data after the date of production); *see also, In re High Fructose Corn Syrup Antitrust Litig.*, No. 97-1203, 2000 U.S. Dist. LEXIS 20643, at *10 (C.D. Ill. Jul 19, 2000) ("[P]ursuant to the clear language of Federal Rule of Civil Procedure 26(e) [defendants] were under no obligation, absent an order from the Court or upon discovering that a response to the July 15, 1997, discovery request was materially incomplete or incorrect, to provide information not yet in existence as of the date they answered the discovery request.").

As plaintiff itself acknowledges, its RFPs directed to Google Ads were served in 2019. Peninsula's 2019 production was accurate at the time and included all Google Ads reports from Logical Positions and Thomas Net, Peninsula's vendors during the relevant time periods. Peninsula did not engage Multiview to manage its account until 2020.  Thus, this did not alter the accuracy of Peninsula's discovery responses.  Nonetheless, when the Court ordered Peninsula in 2021 to produce all available Google Ads reports, Peninsula fully complied and included in its production all reports related to Multiview's work for Peninsula.  Thus, not only is plaintiff's griping about this issue legally off-base, but it is factually meaningless.  Peninsula has produced the information about which plaintiff is complaining.  Plaintiff is in possession of the information.  This should be the ultimate non-issue.

**V.      Conclusion**

For the foregoing reasons, plaintiff's motion should be denied.

Respectfully submitted,

/s/  Samuel W. Silver
Samuel W. Silver (Pa. I.D. 56596)
ssilver@schnader.com
Bruce P. Merenstein (Pa. I.D. 82609)
bmerenstein@schnader.com
Daniel B. Gross (Pa. I.D. 324420)
dgross@schnader.com
SCHNADER  HARRISON  SEGAL  & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2309

Richard A. Nebb (pro hac vice)
rnebb@dergnoah.com
Michael E. Dergosits (pro hac vice)
mdergosits@dergnoah.com
Igor Shoiket (pro hac vice)
ishoiket@dergnoah.com
DERGOSITS & NOAH LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94111
(415) 705-6377

*Attorneys for Defendant*
*Peninsula Components, Inc.*

Dated: January 10, 2021