IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Penn Engineering & Manufacturing Co., | ) | **Case No. 2:19-CV-00513** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Peninsula Components, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DEFENDANT PENINSULA COMPONENTS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSE OF INVALIDITY OF THE DOUBLE SQUARE MARKS BASED ON FUNCTIONALITY**

Samuel W. Silver
ssilver@schnader.com
Bruce P. Merenstein
bmerenstein@schnader.com
Daniel B. Gross
dgross@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2309

Richard A. Nebb (pro hac vice)
rnebb@dergnoah.com
Michael E. Dergosits (pro hac vice)
mdergosits@dergnoah.com
Igor Shoiket (pro hac vice)
ishoiket@dergnoah.com
DERGOSITS & NOAH LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94111
(415) 705-6377

*Attorneys for Defendant
Peninsula Components, Inc.*

January 19, 2022

**Table of Contents**

                                                **Page**

Introduction ..........................................................................................................................1

Background ..........................................................................................................................1

Argument .............................................................................................................................2

    The Court should deny plaintiff's motion for summary judgment because the
    parties' 2008 settlement agreement does not clearly and unambiguously foreclose
    Peninsula's functionality defense to plaintiff's infringement claims ..................................2

Conclusion ...........................................................................................................................7

Case 2:19-cv-00513-GAM   Document 270   Filed 01/19/22   Page 3 of 11

## Table of Authorities

**Page(s)**

**Cases**

*Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357 (Fed. Cir. 2010) ................................................. 2, 6

*Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir. 1973) ................................................. 4

*Capri Sun GmbH v. Am. Bev. Corp.*, 414 F. Supp. 3d 414 (S.D.N.Y. 2019) ........................................ 2

*Dewberry Eng'rs, Inc. v. Dewberry Grp., Inc.*, No. 1:20-cv-610, 2020 U.S. Dist. LEXIS 253152 (E.D. Va. Sept. 4, 2020) ................................................. 3

*Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350 (Fed. Cir. 1999) ............................................ 2, 5-6

*Factory Direct, Inc. v. Anatomic Global, Inc.*, No. CIV-11-59-F, 2011 WL 13232143 (W.D. Okla. June 10, 2011) ................................................. 4-5

*Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001) ........................................................... 5

*Heritage Guitar, Inc. v. Gibson Brands, Inc.*, No. 1:20-cv-229, 2021 U.S. Dist. LEXIS 44390 (W.D. Mich. Mar. 10, 2021) ................................................. 3

*Idaho Potato Comm'n v. M&M Produce Farm & Sales*, 335 F.3d 130 (2d Cir. 2003) ....................... 4

*Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) ................................................. 4

*Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, No. 8:14-cv-3129, 2015 U.S. Dist. LEXIS 96257 (M.D. Fla. July 23, 2015) ................................................. 3

*MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799 (9th Cir. 1986) ............................ 4

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 132 Cal. Rptr. 2d 151 (Cal. Ct. App. 2003) ................................................. 7

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995) ................................................. 2

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ................................................. 7

*Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229 (3d Cir. 2020) ................................... 7

**Introduction**

Plaintiff seeks summary judgment on defendant Peninsula Components, Inc.'s affirmative defense of functionality on the ground that defendant "is contractually estopped from re-asserting" the invalidity of plaintiff's two Double Square Marks. Dkt. 257-1 at 1. Plaintiff is wrong. The plain terms of the parties' 2008 settlement agreement (Dkt. 257-7) make clear that Peninsula did not agree to forgo future challenges to the validity of plaintiff's marks. The law is clear that, absent an unambiguous contractual provision waiving a validity challenge, Peninsula is entitled to assert a functionality defense and challenge the validity of plaintiff's marks in this litigation.

**Background**

The "mutual release" in the parties' 2008 settlement agreement provided, in relevant part: "the Parties … hereby fully and forever release and discharge the other parties … from all claims, demands, damages, liabilities, costs, attorneys' fees, expenses, and causes of action known or unknown occurring prior to the Effective Date [September 24, 2008]; *provided*, however, that this release does not apply to claims arising from acts, statements, omissions, matters, events, transactions, or occurrences subsequent to the Effective Date." Dkt. 257-7 at 5, ¶ 10. The release is completely silent regarding the validity of plaintiff's trademarks, Peninsula's right to challenge the validity of those trademarks, or Peninsula's right to raise a functionality defense in future litigation between the parties.[1] Moreover, there is no language in the entire 2008 settlement agreement that even mentions the validity of plaintiff's trademarks. Dkt. 257-7.

---

[1] In violation of this Court's required procedures, plaintiff did not include with its motion "a numbered paragraph-by-paragraph recitation of facts with specific citations to the record for the support of all of those facts." General Pretrial & Trial Procedures 19 (rev. Jan. 2020). Instead, plaintiff included in its memorandum a "Statement of Facts" that is rife with hyperbole, argument, and unsupported (and uncited) allegations. Dkt. 257-1 at 1-5. Buried in the middle of that Statement is the only fact relevant to its motion: the language of the settlement agreement's release. *Id.* at 3. When Peninsula's counsel inquired about plaintiff's failure to file the required statement, plaintiff's counsel sent Peninsula's counsel a document without an ECF header or a

**Argument**

**The Court should deny plaintiff's motion for summary judgment because the parties' 2008 settlement agreement does not clearly and unambiguously foreclose Peninsula's functionality defense to plaintiff's infringement claims.**

When parties to an intellectual property dispute settle their claims, "invalidity and unenforceability claims may be released, but only if the language of the agreement or consent decree is clear and unambiguous." *Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1362 (Fed. Cir. 2010). This rule balances the interest in competition served by preserving invalidity challenges with the interest in encouraging voluntary resolution of disputes. *Id.* at 1361; *see also Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999) ("[A]ny surrender of the right to challenge validity of a patent is construed narrowly.").

While the bulk of the law in this area arises in the patent context, a number of courts have applied these principles in the trademark context, including in the present context of a functionality challenge to a trademark's validity. As one court recently held, the "strong public interest in not allowing a trademark-based monopoly over an allegedly functional mark to stand unchallenged" warrants application of the same rule from the patent context to alleged releases of functionality challenges. *Capri Sun GmbH v. Am. Bev. Corp.*, 414 F. Supp. 3d 414, 429 (S.D.N.Y. 2019). The heavy burden a plaintiff faces for proving that a defendant waived its right to challenge a trademark's validity is consistent with the Supreme Court's explanation that the "functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995).

---

signature block that plaintiff's counsel claimed had been filed on the docket. It had not been, which plaintiff's counsel eventually conceded, and it still has not been filed. Peninsula therefore is not filing a response to plaintiff's unfiled statement.

2

Here, the language of the parties' 2008 settlement agreement is nowhere near the "clear and unambiguous" waiver of invalidity challenges required to preclude such a defense. Indeed, nowhere does the settlement agreement's release even mention invalidity challenges or functionality defenses. Nothing more is needed to demonstrate the fallacy of plaintiff's motion. But, as discussed below, all of the applicable case law, including the few cases on which plaintiff relies, supports this conclusion.

The cases in which courts have held that a prior settlement agreement precludes a party from raising a trademark invalidity defense all contain settlement language that readily distinguishes them from this case. For example, in *Heritage Guitar, Inc. v. Gibson Brands, Inc.*, the court held that a party's validity challenges were waived when, in a prior settlement agreement, the party had agreed that it "waived any right to challenge the asserted validity of the unregistered trademarks [described in this agreement] and [is] estopped from doing so in the future." No. 1:20-cv-229, 2021 U.S. Dist. LEXIS 44390, at *20-*21 (W.D. Mich. Mar. 10, 2021) (first alteration in original). In *Dewberry Engineers, Inc. v. Dewberry Group, Inc.*, the court reached the same result when the parties' prior settlement agreement provided that defendant "shall not challenge or take action against [Plaintiff's] federal trademark registrations." No. 1:20-cv-610, 2020 U.S. Dist. LEXIS 253152, at *4 (E.D. Va. Sept. 4, 2020) (alteration in original). And in *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, the court reached the same result when the defendants had agreed in the parties' prior settlement agreement to the validity and enforceability of plaintiff's trademarks and the district court previously had entered a consent order finding the trademarks "valid and enforceable under the Lanham Act and the common law." No. 8:14-cv-3129, 2015 U.S. Dist. LEXIS 96257, at *21 (M.D. Fla. July 23, 2015).

This also is true for the only two cases plaintiff cites on this point, *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir. 1973), and *MWS Wire Industries, Inc. v. California Fine Wire Co.*, 797 F.2d 799 (9th Cir. 1986). In *Beer Nuts*, the defendant had in a settlement agreement recognized the plaintiff's "ownership and the validity of the [plaintiff's] trademark." 477 F.2d at 327.[2] In *MWS*, the disputed issue was whether an exchange of letters, in which the defendant had acknowledged that plaintiff's trademark was "valid," constituted a binding settlement agreement. 797 F.2d at 800-01. Here, unlike in these two cases, the release in the parties' 2008 settlement agreement contains no acknowledgement of the validity of plaintiff's trademarks.

By contrast to these cases with clear and unambiguous language expressly barring trademark validity challenges, the court in *Factory Direct, Inc. v. Anatomic Global, Inc.* held that, "based solely upon the clear and unambiguous language of the Settlement Agreement, [defendant] did not release its counterclaim for the invalidity of [plaintiff's] trademark .…" No. CIV-11-59-F, 2011 WL 13232143, at *3 (W.D. Okla. June 10, 2011). The release in *Factory Direct* provided that the parties "each fully release, remise, and discharge the other … from any and all claims, demands, actions or causes of action or suits at law or in equity, known or unknown which have arisen in connection with the Litigation." *Id.* This language is remarkably similar to the language of the parties' 2008 settlement agreement here.

Plaintiff is wrong that the *Factory Direct* court found dispositive the fact that the parties' prior litigation in that case did not include a challenge to the trademark's validity. *See* Dkt. 257-1

---

[2] The holding in *Beer Nuts* is questionable for the additional reason that the court rejected application to trademark disputes of the Supreme Court's seminal decision in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), which laid the foundation for the jurisprudence involving settlement agreements and patent validity challenges. 477 F.2d at 328-29. This position has been roundly rejected in the half-century since *Beer Nuts* was decided. *See, e.g.*, *Idaho Potato Comm'n v. M&M Produce Farm & Sales*, 335 F.3d 130, 136 (2d Cir. 2003) ("The *Lear* balancing test has also been frequently applied to trademark licensing contracts.").

4

at 9. Rather, the court rejected the argument that plaintiff makes here because of "several problems with Factory Direct's arguments." 2011 WL 13232143, at *3. The lack of an invalidity counterclaim in the prior litigation was only one of the problems with the plaintiff's argument. *Id.* The *first* problem the court listed was that, "although by signing the Settlement Agreement [defendant] may have acknowledged Factory Direct as the owner of all right, title and interest of the mark …, it did not acknowledge the validity of that mark in the recital or anywhere in the Settlement Agreement." *Id.*[3] Thus, *Factory Direct* is directly on point here. More important, it is consistent with all of the other authority cited both in this response and in plaintiff's own memorandum, all of which focuses first and foremost on the plain terms of the parties' settlement agreements and releases.

The Federal Circuit's extensive jurisprudence on this issue in the related patent context further demonstrates that plaintiff's motion is meritless. For example, in *Flex-Foot, Inc. v. CRP, Inc.*, the settlement agreement at issue provided that the defendant "agrees not to challenge or cause to be challenged, directly or indirectly, the validity or enforceability of [certain patents] in any court or other tribunal, including the United States Patent and Trademark Office. As to [these patents] only, the [defendant] waives any and all invalidity and unenforceability defenses in any future litigation, arbitration, or other proceeding." 238 F.3d 1362, 1364 (Fed. Cir. 2001). Not surprisingly, the court found that this language made "it clear that [defendant] waived its right to challenge the validity and enforceability" of the patents. *Id.*; *see also Diversey Lever, Inc.*

---

[3] This flaw in plaintiff's argument also disposes of its additional attempt to distinguish *Factory Direct* based on the *third* problem the court identified with the plaintiff's argument in that case. Dkt. 257-1 at 9; 2011 WL 13232143, at *3. Plaintiff's related contention that the 2008 agreement contains no provision *allowing* Peninsula to challenge plaintiff's trademarks (Dkt. 257-1 at 9) turns the applicable jurisprudence on its head; the question is not whether the settlement agreement expressly *allows* Peninsula to challenge plaintiff's trademarks, but whether it expressly *prohibits* Peninsula from doing so. It plainly does not.

*v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999) (holding that an agreement clause providing that defendant "will not 'directly or indirectly aid, assist or participate in any action contesting the validity' of the patents" barred defendant's validity challenge).

By contrast, in *Baseload Energy, Inc. v. Roberts*, the court held that an invalidity challenge was not foreclosed because the settlement agreement in that case contained no clear and unambiguous language releasing the patent claims or defenses. 619 F.3d 1357, 1363 (Fed. Cir. 2010) ("There is no specific language in the settlement agreement making reference to invalidity issues."). The release language in *Baseload Energy*, just like the language in the 2008 settlement agreement here, said nothing about the challenging parties' right to assert an invalidity challenge, simply providing that they "forever release and discharge" the other parties "*from any and all losses, liabilities, claims, expenses, demands and causes of action of every kind and nature*, known and unknown, suspected and unsuspected, disclosed and undisclosed, fixed and contingent, whether direct or by way of indemnity, contribution or otherwise …." *Id.* at 1359 (emphasis in original). Once again, this language, which was deemed insufficient to foreclose an invalidity challenge, is remarkably similar to the language of the 2008 settlement agreement.[4]

In short, all of the case law points to the same conclusion: Peninsula is not precluded in this litigation from raising a functionality defense and challenging the validity of plaintiff's trademarks

---

[4] Plaintiff claims that the 2008 settlement agreement preserved its right to bring infringement claims while simultaneously barring Peninsula from asserting invalidity challenges to such claims. The *Baseload Energy* court rejected a similar argument, noting that, if "infringement claims were preserved, then it necessarily follows in the circumstances of this case that the defenses to infringement, including invalidity defenses, were also preserved.… The language of the agreement cannot be read to distinguish between infringement and invalidity claims. There is nothing in the text of the Settlement Agreement to suggest in this case that somehow the infringement claims were preserved while patent invalidity defenses were released." 619 F.3d at 1364.

because the 2008 settlement agreement does not contain the required clear and unambiguous language precluding such a challenge. Plaintiff's motion should be denied.[5]

## Conclusion

The Court should deny plaintiff's motion (Dkt. 257).

Respectfully submitted,

/s/ Samuel W. Silver
Samuel W. Silver (Pa. I.D. 56596)
ssilver@schnader.com
Bruce P. Merenstein (Pa. I.D. 82609)
bmerenstein@schnader.com
Daniel B. Gross (Pa. I.D. 324420)
dgross@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2309

---

[5] The settlement agreement includes a choice-of-law provision, indicating that "California law shall govern this Settlement Agreement." Dkt. 257-7 at 6, ¶ 16. If California law would preclude Peninsula from raising a functionality defense, the choice-of-law provision would be unenforceable. Third Circuit precedent is clear that a contractual choice-of-law provision cannot be enforced if it would foreclose a party from asserting a substantive federal right. *See, e.g.*, *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 240-41 (3d Cir. 2020); *cf. Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.").

Here, the question raised by plaintiff's motion is whether Peninsula can assert *a federal defense* (functionality) to a federal claim (trademark infringement under the Lanham Act). As discussed in the text, federal law is uniform in holding that, in the present circumstances—*i.e.*, where a release does not clearly and unambiguously waive a validity challenge—Peninsula can assert its functionality defense. State law cannot be applied to override this federal authority.

In any event, California law does not hold otherwise. California law provides that, in "interpreting an unambiguous contractual provision [courts] are bound to give effect to the plain and ordinary meaning of the language used by the parties." *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 132 Cal. Rptr. 2d 151, 158 (Cal. Ct. App. 2003) (internal quotation omitted). Here, the release on which plaintiff relies unambiguously says nothing about Peninsula's release of any defenses, let alone Peninsula's waiver of a future validity challenge, let alone, more particularly, its waiver of a future functionality defense. Nor does it say anything about Peninsula's acceptance of the validity of plaintiff's trademarks. Thus, the release is unambiguous in not precluding Peninsula from asserting an affirmative defense of functionality in this case, whether interpreted under California law or federal law.

7

Dated: January 19, 2022

        Richard A. Nebb (pro hac vice)
        rnebb@dergnoah.com
        Michael E. Dergosits (pro hac vice)
        mdergosits@dergnoah.com
        Igor Shoiket (pro hac vice)
        ishoiket@dergnoah.com
        DERGOSITS & NOAH LLP
        One Embarcadero Center, Suite 720
        San Francisco, CA 94111
        (415) 705-6377

*Attorneys for Defendant*
*Peninsula Components, Inc.*