## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENN ENGINEERING &** | : | |
| **MANUFACTURING CORP.,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PENINSULA COMPONENTS, INC.,** | : | **No. 19-513** |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                        JUNE 22, 2023

Discovery disputes are generally not very interesting. This is by design. Under the Federal Rules of Civil Procedure, the bar for discoverability is a low one, sweeping in any material that is relevant to any of the parties' claims or defenses. The virtue of this low bar is that it keeps parties from turning every dispute over a set of interrogatories or a request for production into a miniature trial on the merits. It also ensures that parties seeking rulings on the merits of a case do so through appropriate channels, such as a motion for summary judgment. Put another way, the discovery rules instruct courts and litigants to steer clear of most of the complicated issues at the heart of a case and to focus instead on relatively drier questions like relevance.

In opposing Penn Engineering's motion to compel, however, Peninsula asks this Court to go beyond the relevance inquiry and declare that certain of Penn Engineering's claims fail as a matter of law. Because a discovery motion is not the proper avenue to challenge the merits of a claim or defense, the Court grants Penn Engineering's motion to compel.

1

## Background[1]

Penn Engineering designs and manufactures fasteners sold under various trademarks, including "PEM" marks, Product Configuration Marks, and Common Law Marks. Penn Engineering alleges that Peninsula sells identical fasteners, and brings various claims for trademark infringement, trademark counterfeiting, and unfair competition.

More than three years ago, Peninsula produced sales and financial discovery for all relevant fasteners, some 2,000 of them. This discovery was related to seven alleged unlawful activities:

(1) Keyword Conquesting

(2) Use of PEM marks in Google AdWords

(3) Use of PEM marks and Common Law Marks in Printed Cross-Reference Charts

(4) Use of PEM Marks and Common Law Marks in Online Cross-Reference Charts

(5) Use of Common Law Marks in Peninsula's Online Search Tool

(6) Copying and publishing Penn Engineering's performance data as if it were Peninsula's

(7) Unlawful Gray Market sale of authentic Penn Engineering fasteners.

In August 2022, the Court entered summary judgment in favor of Peninsula on issues (1) and (7), concluding that keyword conquesting was not actionable in the Third Circuit and that the resale of authentic Penn Engineering fasteners did not constitute a viable counterfeiting claim. *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-cv-513, 2022 WL 3647817, at *5, *13 (E.D. Pa. Aug. 24, 2022). Penn Engineering also agrees that, since this lawsuit was filed, Peninsula has stopped engaging in activities (2) and (4).

---

[1] Writing for the parties, the Court assumes their basic familiarity with the facts of this case. *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-cv-513, 2022 WL 3647817, at *1 (E.D. Pa. Aug. 24, 2022).

In September 2022, Penn Engineering asked Peninsula to update its discovery to cover activities (3), (5), and (6) during the pendency of the litigation. As before, Penn Engineering sought discovery as to the same 2,000 or so fasteners. Peninsula, however, produced a narrower set of documents covering only 259 fastener types, based on its position that the activities in question either weren't unlawful or had ceased. When the parties were unable to resolve this dispute on their own, Penn Engineering filed the present motion to compel.

### LEGAL STANDARD

A court may compel discovery of any matter relevant to a party's claims, defense, or the subject matter involved in the action, provided the court finds good cause. Fed. R. Civ. P. 26(b). "Relevance is liberally construed." *Jones v. Ne. Treatment Ctrs., Inc.*, No. 20-cv-2477, 2020 WL 6203575, at *2 (E.D. Pa. Oct. 22, 2020). A party must supplement or correct its disclosures if they are incomplete. Fed. R. Civ. P. 26(e)(1)(A); *see also Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

Whether something is relevant or not is determined based "upon the context of each particular action." *Kimes v. Univ. of Scranton*, No. 14-cv-91, 2015 WL 778376, at *2 (M.D. Pa. Feb. 24, 2015). Relief for this trademark case is set forth in 15 U.S.C. § 1117(a), and includes (1) defendant's profits, (2) damages sustained by the plaintiff, and (3) costs of the action. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177-78 (3d Cir. 2005). "[I]n assessing profits the plaintiff shall be required to prove defendant's sales . . . ." *Id.* at 176. Sales data is therefore relevant to this trademark claim.

### DISCUSSION

Under Rule 26, information is discoverable if it "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Where claims have been stricken, it is "proper to deny

3

discovery of matter that is relevant only to [those] claims . . . unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Because the Court has already entered summary judgment in Peninsula's favor on Penn Engineering's claims related to activities (1) and (7), those claims are no longer live, and any information that is relevant only to those claims is no longer discoverable. Similarly, because the parties have agreed that Peninsula has ceased engaging in activities (2) and (4) since this lawsuit began, there is no new relevant information to be discovered as to those activities. At oral argument, the parties also agreed that, based on a declaration from Peninsula's Chief Operating Officer, Christopher G. Buettner, stating that Peninsula has also ceased distributing printed cross-reference sheets—activity (3)—Penn Engineering's motion was moot as to information relating solely to that activity.

The Court therefore considers only the parties' arguments as to the remaining activities.

## I.     Activity (5): Peninsula's Online Search Tool

Penn Engineering alleges that Peninsula has unlawfully used its marks as part of an online search tool features on Peninsula's website. Through this tool, customers may type in any of Penn Engineering's products and receive a list of replacements or substitutes manufactured by Peninsula. Penn Engineering alleges that this search tool infringes on Penn Engineering's marks by using them in its metatags and metadata.[2] The parties do not dispute that information about this tool is relevant to Penn Engineering's claims.

---

[2] Peninsula contends that it should not have to comply with Penn Engineering's discovery requests as to the search tool because Penn Engineering did not specifically refer to the search tool in its Second Amended Complaint. The Second Amended Complaint, however, clearly alleges that Peninsula was "using the mark PEM and the Common Law Marks on its interactive internet website." Second Am. Compl., Doc. No. 211 ¶ 49. This same complaint also references a screenshot of a precursor online cross-reference tool. This is sufficient to put Peninsula on notice that this portion of its interactive website would be at issue in the litigation.

As Peninsula points out, this is not the first time this Court has considered the use of Penn Engineering's marks in a search tool. Penn Engineering initially claimed that Peninsula infringed on its marks through a practice known as "Keyword Conquesting"—activity (1). Keyword conquesting occurs when one business purchases from a search engine (such as Google) keywords that include the marks of a competitor so that its products will be displayed on the search engine when a consumer searches for the competitor's products. Penn Engineering had argued that Peninsula's keyword conquesting using Penn Engineering's marks created consumer confusion by leading consumers who searched for Penn Engineering's marks to think that they were clicking links to Penn Engineering's website when in fact they were clicking links to Peninsula's website. As the Court explained in its previous decision granting summary judgment on this issue, however, there was no evidence of confusion because the search engines did not take consumers directly to Peninsula's website, and instead returned a list of clearly-labeled links that did not contain Penn Engineering's marks. *See Penn Eng'g*, 2022 WL 3647817, at *4 (citing *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, No. 06-cv-597, 2007 WL 30115, at *6-*7 (E.D. Pa. Jan. 4, 2007)).

Metatagging is a distinct practice with similar goals. A metatag is a piece of text hidden within a business' website such that it can be seen by search engines or other tools, but not by users. In some cases, a business might use a competitor's mark as a metatag to achieve the same function as keyword conquesting. Instead of buying the keyword directly from a search engine, the business hides metatags within its website to prompt the search engine to display its website when a consumer searches for a competitor's marks. Based on this similarity, at least one court has reasoned that this form of metatagging, like keyword conquesting, does not result in consumer

confusion as long as the search results are clearly labeled. *See J.G. Wentworth*, 2007 WL 30115, at *6-*7.

Here, though, Penn Engineering alleges a different kind of metatagging, one that does not involve any third-party search engines. Instead, Peninsula's search tool exists solely on its own website, meaning a consumer must already have clicked a link to Peninsula's website in order to use the search tool. The purpose of the metatags in this search tool is not (as with keyword conquesting) to divert users who search for Penn Eningeering's products to Peninsula's website. Rather, it is to display a list of substitute Peninsula products when a consumer types in the name of a Penn Engineering fastener.

Peninsula contends that, based on the similarities between keyword conquesting and the type of metatagging at issue in activity (5), the Court's prior summary judgment ruling on keyword conquesting should be extended to bar any claim as to metatagging, meaning that any search tool information would not be discoverable. Penn Engineering protests that the search tool is in fact more analogous to one of Peninsula's cross-reference charts—activity (4)—which listed Penn Engineering marks alongside Peninsula substitutes on Peninsula's website. Notably, the Court's prior decision *denied* summary judgment as to the cross-reference charts because whether the charts led to consumer confusion depended on the factual question of whether consumers might infer a business relationship between Peninsula and Penn Engineering by seeing Penn Engineering's marks on Peninsula's website. *Penn Eng'g,* 2022 WL 3647817, at *6-*7.

But whether Peninsula's search tool is more like keyword conquesting or more like a cross-reference sheet—and whether consumers who enter a Penn Engineering mark into Peninsula's tool could similarly infer a business relationship—are questions to be decided by the Court following briefing and argument, not unilaterally by Peninsula. A party from whom discovery is sought may

not "dictate the scope of discovery based on their own view of the parties' respective theories of the case," no matter how strongly they believe in their position. *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014).

Moreover, these sorts of questions are to be decided via summary judgment, not as part of a discovery motion. Courts "repeatedly reject[] attempts to define the bounds of appropriate discovery by challenging the merits of existing claims or defenses in briefing discovery motions." *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020) (collecting cases). There are several reasons for this. First and foremost, the Court must interpret the Federal Rules of Civil Procedure based on their plain meaning, *see Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991), and Rule 26 is clear that the threshold for discovery is relevance, not meritoriousness, Fed. R. Civ. P. 26(b)(1). Second, reserving the resolution of dispositive issues of law for summary judgment—often after discovery has closed—ensures that a court may make its determinations with the benefit of a full and complete evidentiary record. Allowing parties to seek dispositive rulings as a way to relieve themselves of their discovery obligations would turn this process on its head and ask courts to rule on the merits of a claim based on an incomplete record. *Cf. Nat. Res. Def. Council v. Curtis*, 189 F.R.D. 4, 8 (D.D.C. 1999). Third, allowing parties to argue dispositive issues in a discovery dispute is completely at odds with the manner in which many courts divide labor between district court judges and magistrate judges. In courts across the country, magistrate judges routinely resolve discovery disputes between parties, but Rule 72 does not permit magistrate judges to resolve dispositive matters in the absence of a consent referral. Fed. R. Civ. P. 72. If a party were allowed to raise the kinds of arguments Peninsula advances here before a magistrate judge, this would require the magistrate judge to issue a recommendation, based on a truncated record, for the district court judge to adopt or deny, adding

unnecessary complexity and expense to the discovery process. *See Big City Dynasty*, 336 F.R.D. at 512-13.

For these reasons, the Court declines to rule on any of Peninsula's merits-based arguments and grants Penn Engineering's motion to compel.  If Peninsula wants a ruling on the merits, it must seek it through the appropriate procedural channels.

**II.     Activity (6) Performance Data and Sales Drawings**

Penn Engineering also alleges that Peninsula engaged in false advertising by copying performance data from Penn Engineering's products and using it to describe Peninsula's products. Some of this performance data was published on Peninsula's website where anyone could access it, while some was included on sales drawings which were only given out to potential customers upon specific request.

Peninsula produced discovery related to fasteners for which performance data was published online but refused to update its discovery as to data that was only included on sales drawings.  Peninsula contends that, because these sales drawing are only given to individual customers upon request, they are not disseminated widely enough to constitute "advertising" as a matter of law.

Again, however, a discovery motion is not the place to decide the merits of Penn Engineering's false advertising claim.  Resolution of that question will require the Court to determine whether Peninsula's practice of distributing sales drawings to customers upon requests constitutes "purely private communications" that do not count as advertising, *Wakefern Food Corp. v. Marchese*, No. 20-cv-15949, 2021 WL 3783259, at *4 (D.N.J. Aug. 26, 2021), or if a sufficient number of drawings were distributed so as to target a particular class or category of potential customers, *see Podiatrist Ass'n v. La Cruz Azul De P.R., Inc.*, 332 F.3d 6, 19 (1st Cir.

2003).   The Court will also have to consider whether the number of customers who received sales drawings makes up a meaningful portion of the relevant purchasing public.  *See, e.g., Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) (eleven potential customers sufficient where total market included 74 purchasers); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734-35 (9th Cir. 1999) (communication to a single client was sufficient where there were only two or three potential purchasers).  These fact-intensive inquiries are properly addressed in a motion for summary judgment.  Therefore, the Court does not consider Peninsula's arguments and grants Penn Engineering's motion to compel.

CONCLUSION

Discovery disputes are generally uninteresting and—as this case demonstrates—usually anticlimactic.  Parties looking to resolve interesting or dispositive questions of law on a motion to compel are likely to be disappointed.  Because Peninsula's arguments on the merits do not present a reason to evade its discovery obligations under Rule 26, the Court grants Penn Engineering's motion to compel as to the discovery sought in connection to activities (5) and (6), while deeming the motion moot as to activity (3).  An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE