IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENN ENGINEERING & MANUFACTURING CORP.,** *Plaintiff* | : : : : | **CIVIL ACTION** |
| v. | : : | |
| **PENINSULA COMPONENTS, INC.,** *Defendant* | : : | No. 19-513 |

## MEMORANDUM

PRATTER, J.                                                                                              JANUARY 16, 2024

The new year is a time for change and serves as an opportunity to turn the page to yet another chapter in this now five-year fight. This case has been filled with innumerable disputes between two parties who have disagreed on a wide range of issues. Peninsula filed a motion to bifurcate the trial into a liability phase and damages phase. Unsurprisingly, Penn Engineering is opposed. The parties continue their disputes; however, with trial scheduled in mid-March, this new year will hopefully provide the parties with the ability to turn the page and close the chapter on this extended litigation. The jury will hear the liability issues, and if needed, the Court will hear issues on damages.

### BACKGROUND[1]

Peninsula filed the instant motion to bifurcate the trial into a discrete liability and damages phase where the jury will hear liability issues and the Court will hear damages issues. Peninsula argues that the Court should hear damages issues because Penn Engineering seeks only equitable relief that does not carry with it a right to a jury trial. Peninsula argues that bifurcation will be

---

[1] Writing for the parties, the Court assumes their basic familiarity with the facts of this case after almost five years of continued litigation. *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-513, 2022 WL 3647817, at *1 (E.D. Pa. Aug. 24, 2022).

more convenient, will avoid prejudice, and will be more expeditious and economical than trying liability and damages together.

On the other hand, Penn Engineering argues that bifurcation would not result in judicial economy, but rather lead to a liability phase that would be "longer and more expensive than a single trial." For example, Penn Engineering argues that bifurcation would lead to "multiple hearings and disputes over which exhibits and which witness' testimony . . . may be used for the liability phase as opposed to the damages phase." Penn Engineering does not contest Peninsula's argument that damages in this case would be equitable in nature and instead argues that such damages in the form of disgorgement are "one of the least-complicated and most judicially-accepted damages theories in trademark cases."

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) permits the trial court to "order a separate trial of one or more separate issues" "[f]or convenience, to avoid prejudice, or to expedite and economize." "The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages." *Idzojtic v. Penn. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972) (per curiam) (citing 9 Wright & Miller, Federal Practice and Procedure § 2392). The party that moves for bifurcation has the burden to demonstrate that bifurcation is appropriate. *AOB Prods. Co. v. Good Sportsman Mktg., LLC*, No. 22-1264, 2023 WL 130885, at *2 (D. Del. Jan. 9, 2023) (citing *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013)).

## DISCUSSION

At the outset, Penn Engineering does not contest that disgorgement, part of the relief it seeks, is an equitable remedy, and indeed, the Court of Appeals for the Third Circuit has recently held that "disgorgement is an equitable remedy[.]" *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 217 (3d Cir. 2021). Thus, the Court alone has the power to determine what equitable damages, if

2

any, Penn Engineering would receive, and any jury determination on damages would merely be advisory.[2] *See AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC*, No. 19-566, 2023 WL 6989885, at *6 (E.D. Pa. Oct. 23, 2023) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959)).

Next, bifurcation is proper in complex cases where bifurcating the issues may improve juror comprehension. *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002). "Specifically, bifurcation might enhance jury decision making in two ways: (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time." *Id.* (quoting Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705, 751 (2000)).

---

[2] The Second Amended Complaint includes demands for treble damages pursuant to 15 U.S.C. § 1117(b) for a number of its Lanham Act claims. *See, e.g.*, Second Am. Compl. ¶ 229, Doc. No. 211. However, the "treble damages" at issue here are equitable in nature because the relevant statute provides that "*the court* shall . . . enter judgment for three times such profits or damages" in a case involving counterfeit marks or designations. 15 U.S.C. § 1117(b) (emphasis added). Imposing such "treble damages" provides an avenue by which *the Court* can "act[] within its discretion . . . to award enhanced monetary relief under the Lanham Act." *See Kars 4 Kids*, 8 F.4th at 223-24 (holding that the district court acted within its discretion in not awarding enhanced monetary relief and that such monetary relief is warranted only where a court finds that an award based on profits is inadequate or excessive) (citing 15 U.S.C. § 1117(a)). Thus, because "treble damages" here are really a form of enhanced relief the Court may impose, such claims for treble damages are equitable.

Penn Engineering arguably also seeks punitive damages. Punitive damages are not available under the Lanham Act. *See Kars 4 Kids*, 8 F.4th at 225 (holding that the Lanham Act "precludes punitive enhancements"). Thus, Penn Engineering may only seek punitive damages under its common law trademark claims where such damages are an "extreme remedy" only available in exceptional circumstances. *Avco Corp. v. Turn & Bank Holdings, LLC*, 659 F. Supp. 3d 483, 497 (M.D. Pa. 2023).

The Second Amended Complaint includes a single reference to punitive damages in Penn Engineering's final prayer for relief. Second Am. Compl., at 42, Doc. No. 211. Penn Engineering did not mention punitive damages in any of its original 34 claims. Penn Engineering also has not included a claim for punitive damages in its recent filings with the Court. *See, e.g.*, Pl.'s Pretrial Mem., at 16, Doc. No. 366 (stating that the damages Penn Engineering seeks are "[b]ased solely on a 'disgorgement' theory of Defendant's profits").

At this time, the Court does not recognize an operative claim for punitive damages, but the parties may move the Court to include or exclude punitive damages for trial based on submitted facts of record prior to the trial's start date. Thus, at this stage of this protracted litigation, the only existing relief available to Penn Engineering is equitable.

Here, as Peninsula points out, the jury will hear liability issues that "entail multiple claims involving dozens of products[.]" Penn Engineering's operative complaint includes 34 counts, and although a number of them have been dismissed or limited in scope after summary judgment, dozens of these claims are still in effect in some fashion. Penn Engineering anticipates calling two witnesses to testify regarding damages and 27 to testify on liability. Penn Engineering also includes a trial exhibit list that totals over 1,200 entries. In sum, the jury will likely already be inundated with testimony from multiple witnesses and with exhibits regarding complex intellectual property issues in this trademark infringement case. By bifurcating the trial into separate liability and damages phases, the jury need not be presented with additional documents and witnesses that will only compound the issues already before them.

The Court does not discern any significant benefit from the jury being presented with evidence on purely equitable issues. Any jury verdict on damages would be advisory. *AFAB*, 2023 WL 6989885, at *6. Bifurcating between liability and damages phases for this reason alone would expedite and economize the legal proceedings at least somewhat because the jury would not need to render a decision in a purely advisory role. And in the event that the jury finds that there is no liability, the legal proceedings would be economized from the parties no longer needing to present any evidence regarding damages.

Penn Engineering argues that bifurcating the trial into separate liability and damages phases will create additional disputes between the parties because Peninsula "has not provided an easy way to separate 'liability' exhibits from 'damages' exhibits[.]" However, these are two sophisticated parties with experienced attorneys at the helms of the ships. The Court continues to prefer to be confident that counsel can discern the difference between a liability issue and a damages issue. The Federal Rules of Evidence serve as an important tool in the attorney's toolkit

that should guide counsel on what constitutes relevant, admissible evidence or testimony at the time of trial on the issue of liability. And if disputes that the parties are unable to solve on their own do arise, the Court may step in to decide those issues before trial commences.[3]

Bifurcation is not likely to lead to the various Chicken Little "the-sky-is-falling" scenarios that Penn Engineering argues will ensue if bifurcation occurs. For example, Penn Engineering argues that bifurcation will delay or lengthen this case and prevent Penn Engineering "from presenting the full and comprehensive story of [Peninsula's] misdeeds and their impact on [Penn Engineering]." However, bifurcation will not lead to significant delay because the Court, after having already heard the entirety of the liability trial, will immediately determine the issue of damages, if any, after the jury reaches its verdict on liability. The only contemplated delay would be the time needed for the jury to render its decision on liability. And bifurcating the liability and damages issues will not prevent Penn Engineering from presenting its case to the jury; if anything, by focusing *only* on liability, Penn Engineering can direct the jury's attention to Peninsula's "misdeeds" without any confusion or distraction that evidence pertaining to damages may present.

Finally, Penn Engineering argues that bifurcation will create prejudice where at least some of Penn Engineering's witnesses will likely be required to appear in two cases rather than one. However, in Penn Engineering's latest pretrial memorandum, Penn Engineering envisioned only two witnesses testifying as to damages, and only one of those witnesses, a Penn Engineering employee, was also listed as a liability witness. That witness is located less than 50 miles from the courthouse.[4] The cost of one witness making such a trip should likely pale in comparison to the

---

[3] This does not mean that the parties should bring every small dispute to the Court's attention or manufacture a dispute. Counsel for the parties in this case should operate with the level of professionalism expected of them and all other counsel.

[4] Driving Directions from 5190 Old Easton Rd., Doylestown, PA 18902 to US Court House, 601 Market St., Philadelphia, PA 19103, Google Maps, http://maps.google.com (follow "Directions" hyperlink;

5

amount of disgorgement that Penn Engineering is seeking, especially when Penn Engineering asks the Court to enhance relief through treble damages. *See* Second Am. Compl., Doc. No. 211, at 41-42; *Lontex Corp. v. Nike, Inc.*, No. 18-5623, 2021 WL 2138621, at *2 (E.D. Pa. May 26, 2021) (holding that experts having to appear twice before the court was not an issue when the court bifurcated liability and damages issues because the experts' "expenses and fees will be miniscule compared to the damages that [Plaintiff] has projected"); *see also* 15 U.S.C. § 1117(b). Thus, the Court does not find that Penn Engineering would be prejudiced in this manner, either.

## CONCLUSION

For the reasons stated above, the Court grants Peninsula's motion to bifurcate. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

then search starting point field for "5190 Old Easton Rd." and search destination field for "601 Market St.").