IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Penn Engineering & Manufacturing Corp., | ) | Case No. 2:19-CV-00513 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Peninsula Components, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TRIAL MEMORANDUM OF DEFENDANT PENINSULA COMPONENTS, INC. ON THE LEGAL ISSUES INVOLVED IN THE CASE**

In accordance with the Court's November 17, 2023 Amended Scheduling Order (Dkt. 381), defendant Peninsula Components, Inc. submits this Trial Memorandum on the legal issues involved in the case.

**Background**

Plaintiff Penn Engineering & Manufacturing Corp.'s Second Amended Complaint included 34 counts, but following the Court's summary judgment rulings (Dkts. 315 & 387), only 18 counts—Counts 1-4, 6-8, 10-13, 15-18, and 20-22—remain active, in whole or in part. These counts raise claims of trademark infringement (Counts 1-4 and 6-7), false designation of origin (Counts 8 and 10-12), and counterfeiting (Counts 18 and 20-21) under the Lanham Act; common law trademark infringement and unfair competition (Counts 13 and 15-17); and false advertising (Count 22). Peninsula has raised a functionality defense to those claims involving plaintiff's double-square trademarks (Counts 6-7, 10-11, 15-16, and 20-21), a nominative fair use defense to those claims involving plaintiff's "PEM" mark (Counts 1-4, 8, 13, and 18), except to the extent that they are based on the display of the "PEM" mark in some of Peninsula's Google ads, and a nominative fair use defense to those claims involving plaintiff's unregistered marks

(Counts 12 and 17). Peninsula also has raised a laches defense to all of plaintiff's claims to the extent they are based on any conduct other than the display of the "PEM" mark in some of Peninsula's Google ads.

### Legal Issues

The Court already has addressed many substantial legal issues that the parties raised in their summary judgment motions. In addition to those motions, the Court has pending before it four motions *in limine* that Peninsula filed on January 29, 2024, raising various objections to the admissibility of certain evidence at trial (Dkts. 392, 393, 394, and 395). Peninsula does not repeat here the legal issues addressed in those motions.[1] The legal issues outlined in this memorandum concern the basic elements of plaintiff's claims and Peninsula's defenses.

## I.   Plaintiff's Claims

*Federal Trademark Infringement.* To prevail on its Lanham Act trademark infringement claims (Counts 1-4 and 6-7), plaintiff must prove, for each mark at issue, "that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 218 (3d Cir. 2021) (internal quotation omitted).

For all of plaintiff's federal trademark infringement claims, a key disputed issue is whether Peninsula's use of the marks is likely to create confusion concerning the source or origin of Peninsula's goods. That issue requires consideration of a number of non-exclusive factors:

1. the degree of similarity between plaintiff's marks and the alleged infringing marks;
2. the strength of plaintiff's marks;

---

[1] Briefly, those motions seek preclusion of evidence of plaintiff's time, effort, or expense in developing performance data (Dkt. 392), plaintiff's claims or parts of claims on which the Court has entered summary judgment for Peninsula (Dkt. 393), the parties' 2007-08 litigation and 2008 settlement (Dkt. 394), and hearsay and non-relevant evidence of confusion (Dkt. 395).

3. the price of the products and other factors indicative of the care and attention expected of consumers when making a purchase;
4. the length of time Peninsula has used the marks without evidence of actual confusion arising;
5. the intent of Peninsula in adopting the marks;
6. the evidence of actual confusion;
7. whether the products, though not competing, are marketed through the same channels of trade and advertised through the same media;
8. the extent to which the targets of the parties' sales efforts are the same;
9. the relationship of the products in the minds of consumers because of the similarity of function; and
10. other facts suggesting that the consuming public might expect plaintiff to manufacture a product in Peninsula's market, or that it is likely to expand into that market.

*See Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 463-64 (3d Cir. 1983). The Third Circuit recently categorized these factors as (1) "facts about the plaintiff's mark, including its distinctiveness"; (2) "facts about the defendant's actions, including whether the mark was adopted to intentionally compete, overlapping sales and marketing efforts, and how long the competing mark has been in the market without confusion"; and (3) "facts about how consumers deal with both marks." *Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 183 n.4 (3d Cir. 2022).

*False Designation of Origin*. "In order to succeed on [its] false designation of origin or unfair competition claim under the Lanham Act, … plaintiff must prove that: "(1) the mark it seeks to protect is valid and legally protectable, (2) the plaintiff owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services associated with the mark." *Health & Body Store, LLC v. Justbrand Ltd.*, 480 F. App'x 136, 145 n.15 (3d Cir. 2012) (alterations and internal quotation omitted). In other words, plaintiff must prove the same elements for its federal false designation of origin claims (Counts 8 and 10-12) as for its trademark infringement claims. *See also Bath Auth., LLC v. Anzzi LLC*, No. 18-00834, 2018 WL 5112889, at *4 (E.D. Pa. Oct. 19, 2018).

Three of these claims involve plaintiff's registered marks—its "PEM" mark (Count 8) and its double-square marks (Counts 10-11). One of plaintiff's false designation of origin claims involves its unregistered marks (Count 12). For this claim, plaintiff also must prove that the marks are "distinctive" in order for them to be valid and legally protectable. *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017). It can do so by demonstrating that the marks are inherently distinctive or have achieved secondary meaning. *Id.* at 230-31. A mark achieves secondary meaning when it "is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Id.* at 231 (internal quotation omitted).

*Common Law Trademark Infringement and Unfair Competition*. Plaintiff's common law claims are governed by the same standard, and involve the same "PEM" mark (Count 13), double-square marks (Counts 15-16), and unregistered marks (Count 17), as plaintiff's Lanham Act claims. *See, e.g.*, *Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778, 780 n.4 (3d Cir. 1986) ("the elements of common law trademark infringement under Pennsylvania and federal law are identical … except for the element of interstate commerce required to support a claim under the Lanham Act"); *Brand Design Co. v. Rite Aid Corp.*, 623 F. Supp. 3d 526, 542 (E.D. Pa. 2022) (same, as to Pennsylvania unfair competition claim); *Scanvec Amiable Ltd. v. Chang*, 80 F. App'x 171, 180 (3d Cir. 2003) ("A claim of unfair competition under Pennsylvania law requires proof that the defendant has 'passed off' the goods of one manufacturer or vendor as those of another, thus creating confusion between his own goods, and those of the rival.").

The only difference between these claims and plaintiff's Lanham Act claims is that these claims do not require an interstate commerce element. For plaintiff's common law claims involving its unregistered marks (Count 17), it also must prove that the marks are inherently

distinctive or have achieved secondary meaning. *See generally Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230-31 (3d Cir. 2017).

*Counterfeiting*. Plaintiff's federal trademark counterfeiting claims based on its "PEM" mark (Count 18) and its double-square marks (Counts 20-21) require the same proof as its federal trademark infringement claims—*i.e.*, that Peninsula used valid and legally protectable marks owned by plaintiff in a manner likely to create confusion concerning the origin of the goods— plus additional proof that Peninsula intentionally used the mark knowing that it was identical with (or substantially indistinguishable from) the registered mark and that its use deceptively suggested an erroneous origin. *See, e.g., Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 554-55 (E.D. Pa. 2019).

*False Advertising*. Plaintiff's Lanham Act false advertising claim (Count 22) requires proof that (1) Peninsula made false or misleading statements in commercial advertising or promotion regarding its products; (2) there was actual deception or at least a tendency to deceive a substantial portion of Peninsula's intended audience; (3) the deception was material in that it was likely to influence purchasing decisions; (4) the advertised products traveled in interstate commerce; and (5) plaintiff suffered economic or reputational injury directly from the deception, such as declining sales, loss of good will, or similar harm. *See* 15 U.S.C. § 1125(a)(1)(B); *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 n.7 (3d Cir. 2017); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 416-18 (E.D. Pa. 2020).

If plaintiff proves that Peninsula's statements were false, it must demonstrate that the statements had a tendency to deceive a substantial portion of Peninsula's intended audience, whereas if plaintiff fails to proves that the statements were false, but proves that they were misleading, it must prove that customers were *actually* deceived. *See Sandoz Pharm. Corp. v.*

*Richardson-Vicks, Inc.*, 902 F.2d 222, 227-29 (3d Cir. 1990) ("[W]here the advertisements are not literally false, plaintiff bears the burden of proving *actual deception* by a preponderance of the evidence. Hence, it cannot obtain relief by arguing how consumers *could* react; it must show how consumers *actually* do react." (first emphasis added)).

To prove that the allegedly false statements constituted commercial advertising or promotion, plaintiff must demonstrate that the statements were widely disseminated throughout the relevant market. *See, e.g.*, *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 717-18 (E.D. Pa. 2014). Because plaintiff is seeking damages in the form of disgorgement for Peninsula's alleged past wrongdoing, plaintiff must prove that it was *actually* harmed and not simply that it was *likely* to suffer harm from Peninsula's alleged false advertising. *See, e.g.*, *Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 344 (D.N.J. 2020) ("In addition to proving elements one through four [of a false advertising claim], a plaintiff seeking to recover monetary relief must link the alleged deception with actual harm to its business."); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 480-81 (D.N.J. 2009) ("The plaintiff must link the deception with actual harm to its business."); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 575 (E.D. Pa. 1999) ("To show entitlement to monetary damages under section 43(a), a plaintiff must show actual damages rather than a mere tendency to be damaged.").

## II.   Peninsula's Defenses

*Functionality*. Peninsula has challenged the validity of plaintiff's double-square marks on the ground that they are functional. This defense applies to all of plaintiff's claims based on its double-square marks (Counts 6-7, 10-11, 15-16, and 20-21). To demonstrate that plaintiff's double-square marks are functional, Peninsula must prove that plaintiff's double-square design provides a useful mechanism for making plaintiff's floating fasteners work, or that the design affects the cost or quality of the fasteners, or that plaintiff's exclusive use of the design would put

competitors at a significant non-reputation-related disadvantage. *See, e.g.*, *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 33-34 (2001); *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 256-57 (3d Cir. 2021).

*Nominative Fair Use*. To prove that its use of plaintiff's "PEM" mark and unregistered marks is nominative fair use because it accurately describes or identifies plaintiff's products, Peninsula must prove that (1) its use of these marks is necessary to describe both plaintiff's and Peninsula's products; (2) it uses only so much of plaintiff's marks as is necessary to describe plaintiff's products; and (3) its conduct or language reflect the true and accurate relationship between plaintiff's and Peninsula's products. *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222-25 (3d Cir. 2005). Peninsula's nominative fair use defense applies to all of plaintiff's claims based on plaintiff's "PEM" mark (Counts 1-4, 8, 13, and 18), except to the extent that they are based on the display of the "PEM" mark in some of Peninsula's Google ads, and all of plaintiff's claims based on its unregistered marks (Counts 12 and 17).

*Laches*. Peninsula contends that most of plaintiff's claims are barred by laches. The claims that remain in the case primarily involve Peninsula's production and sale of products that allegedly infringe plaintiff's double-square marks, Peninsula's use of cross-reference charts that use plaintiff's "PEM" and unregistered marks, and Peninsula's use of performance data in sales drawings and on its website that plaintiff contends is false advertising.[2] All of these activities have been going on for years, long before plaintiff filed this action in February 2019, and thus, Peninsula alleges that they are barred by laches. "Laches is an equitable defense, and so must be decided by the Court." *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 614 F. Supp. 3d 114, 142 (E.D. Pa. 2022).

---

[2] Plaintiff also has asserted claims related to Peninsula's display of the "PEM" mark in some of Peninsula's Google ads on three occasions. These claims would not be subject to Peninsula's laches defense.

"The Lanham Act does not contain a statute of limitations and instead subjects all claims to the principles of equity, such as laches. To determine whether laches bars a claim, we consider two elements: (1) the plaintiff's inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay." *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 220 (3d Cir. 2021) (citations and internal quotation omitted).

If the statute of limitations for the most analogous claim to plaintiff's claims had expired at the time its suit was filed in 2019, Peninsula "enjoys the benefit of a presumption of inexcusable delay and prejudice," and plaintiff has the burden of proving that its delay was excusable *and* that the delay did not prejudice Peninsula. *Id.* at 220-21 (internal quotation omitted); *see also Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 139 (3d Cir. 2005) ("we have consistently held that a plaintiff must prove that laches does not exist by showing that its delay was excusable *and* that its delay did not prejudice the defendant" (emphasis in original)).

Pennsylvania's Unfair Trade Practices and Consumer Protection Law "is the most analogous state cause of action that would encompass all claims brought under § 43(a) of the Lanham Act," and thus, the UTPCPL's six-year statute of limitations determines allocation of the burdens for Peninsula's laches defense to plaintiff's Lanham Act claims (Counts 1-4, 6-8, 10-12, 18, and 20-22). *Id.* at 135-38 (emphasis omitted).

Pennsylvania common law claims for negligence, deceit, or fraud are most analogous to plaintiff's common law trademark claims (Counts 13 and 15-17), and thus, Pennsylvania's two-year statute of limitations for such claims determines allocation of the burdens for Peninsula's laches defense to these claims. *See, e.g.*, *American Diabetes Ass'n v. Friskney Family Trust, LLC*, 177 F. Supp. 3d 855, 882 (E.D. Pa. 2016) ("Defendants are entitled to a presumption of both inexcusable delay and prejudice on Plaintiff's common law unfair competition claim

8

because Plaintiff filed its lawsuit after the applicable two-year statute of limitations, and Plaintiff has not offered any evidence to rebut a presumption of laches."); 42 PA. C.S. § 5524(7).

## III.  Remedies

The Court has ordered that the liability and damages phases of the trial be bifurcated. Dkt. 391. Thus, if the jury returns a liability verdict for plaintiff on any of its claims, the issues involving any remedies will be tried to the Court. Plaintiff is only seeking the equitable remedies of disgorgement and a permanent injunction.

*Disgorgement*. In determining whether to award plaintiff any of Peninsula's profits (if plaintiff prevails on any of its claims), the Court would consider a number of non-exclusive factors, including "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005) (internal quotation omitted).

If the Court determines that disgorgement is warranted, the amount of disgorgement would be based on Peninsula's profits obtained from conduct for which the jury found it liable. *See, e.g.*, *id.* at 176-77. Plaintiff must prove a link between any wrongful conduct and Peninsula's profits, because "causation is a critical element in an economically sound calculation of actual damages," including disgorgement under the Lanham Act. *Florida Virtual Sch. v. K12, Inc.*, No. 6:20-cv-2354, 2023 WL 6294214, at *2-3 (M.D. Fla. Aug. 25, 2023) (excluding testimony of plaintiff's expert in a trademark infringement, unfair competition, and false advertising case because the expert did not "prove the amount of actual damages that Plaintiff suffered *because* of Defendants' alleged misconduct on a claim-by-claim basis" (emphasis in original)); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 484 (D.N.J. 2009)

9

("The plaintiff bears the burden of showing that the sales for which it seeks disgorgement occurred because of the alleged false advertising.").

    *Permanent Injunction*. If plaintiff prevails on any of its claims, the Court may exercise its discretion to enter a permanent injunction regarding the conduct for which plaintiff prevailed if Peninsula is still engaging in such conduct. *See, e.g.*, *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000).

                                         Respectfully submitted,

                                         /s/  Samuel W. Silver
                                         Samuel W. Silver (Pa. I.D. 56596)
                                         ssilver@welshrecker.com
                                         Bruce P. Merenstein (Pa. I.D. 82609)
                                         bmerenstein@welshrecker.com
                                         Abigail T. Burton (Pa. I.D. 334450)
                                       aburton@welshrecker.com
                                       WELSH & RECKER, P.C.
                                       306 Walnut Street
                                       Philadelphia, PA 19106
                                       (215) 972-6430

                                       Richard A. Nebb (pro hac vice)
                                       rnebb@dergnoah.com
                                       Michael E. Dergosits (pro hac vice)
                                       mdergosits@dergnoah.com
                                       Igor Shoiket (pro hac vice)
                                       ishoiket@dergnoah.com
                                       DERGOSITS & NOAH LLP
                                       One Embarcadero Center, Suite 720
                                       San Francisco, CA 94111
                                       (415) 705-6377

                                       *Attorneys for Defendant*
                                       *Peninsula Components, Inc.*

Dated: February 9, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, Samuel W. Silver, hereby certify that, on February 9, 2024, the foregoing Trial

Memorandum of Defendant Peninsula Components, Inc. was filed electronically using the ECF

system and is available for viewing and downloading from the ECF system, and a Notice of

Electronic Case Filing was served on all counsel of record registered with the ECF system.

*/s/ Samuel W. Silver*
Samuel W. Silver
