IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENN ENGINEERING &** | : | |
| **MANUFACTURING CORP.** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 19-513 |
| | : | |
| **PENINSULA COMPONENTS, INC.** | : | |

**McHUGH, J.**                                                                                                                     **July 31, 2025**

**MEMORANDUM**

This is a Lanham Act case in which Plaintiff has established a violation of § 35(a) of the statute.  The parties have agreed to a bench trial on damages, but dispute how the Lanham's Act burden-shifting framework is to be applied.  Plaintiff contends that the Act should be interpreted literally, and that it can proceed by seeking profit on all sales of the infringing product, leaving Defendant to contest that entitlement.  Defendant objects, arguing that under well-established principles of causation, it can only be responsible if a sale can be tied to the infringement found by the jury.

No motion is pending, but this memorandum is issued to provide guidance to counsel as this case proceeds to resolution.

**I.    Pursuant to Section 35(a)'s burden-shifting framework, Penn Engineering need only prove Peninsula's "sales", and Peninsula must then prove "deductions."**

As an initial observation, in my view, the dispute is more procedural than substantive, because Defendant can invoke the limiting principle of causation in arguing whether there is some amount of deductions to be made from the gross sales proven.[1]

---

[1] I do not construe Plaintiff's position to be that it can recover profits unrelated to the infringement found by the jury.  If that is its position, I reject it as inconsistent with controlling law on proximate cause. Plaintiff's expert appears to recognize the need to exclude sales unrelated to infringement, when he states: "I have estimated the Defendant's profits of approximately $1.0 million, excluding the impact, if any, of sales not related to Defendant's unlawful activities."  *See* Plaintiff's Expert Report, ECF 491-1 at ¶ 39.

Section 35(a) of the Lanham Act provides that, after a trademark violation has been established, a "plaintiff shall be entitled . . . subject to the principles of equity, to recover [] defendant's profits . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).

The text of the statute is clear, and use of the word "only" adds force to its meaning. Plaintiff points to several Third Circuit cases supporting its view of the statute's burden-shifting framework. *See Williamson-Dickie Mfg. Co. v. Davis Mfg. Co.*, 251 F.2d 924, 927 (3d Cir. 1958) ("the infringement having been proved, and the competitive sales of defendants' goods bearing the infringing mark having been shown, the burden is then upon defendants to demonstrate, if they can, that profits were not derived from the infringing use. The burden is the infringer's to prove that his infringement had no cash value in sales made by him"); *see also Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 177 (3d Cir. 2017) (under the burden-shifting framework, "the trademark owner is tasked with proving the infringer's sales before the burden of proof shifts to the defendant to show costs and deductions.").

District courts have also applied the statute's burden-shifting framework in literal fashion. *See, e.g.*, *Keurig, Inc. v. Sturm Foods, Inc.*, No. 10–841, 2013 WL 633574, at *2 (D. Del. Feb. 19, 2013) ("it is plaintiff's burden to prove, in the first instance, that equity supports a disgorgement of defendant's profits.  If the equitable factors support an award of profits, then the burden shifts pursuant to § 35(a) of the Lanham Act: after plaintiff proves defendant's sales, defendant bears the burden of proving how much, if any, of its profits were not derived from its unlawful conduct.") (Robinson, J.).

Defendant points to *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), a false advertising case, for the proposition that Plaintiff must prove which of Defendant's

sales were proximately caused by the infringing advertisements. I agree, but do not view the Court's discussion of proximate cause in that case as a basis for refusing to apply the burden-shifting language of the statute. Defendant also points to a footnote in *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228 (3d Cir. 2003), where the Third Circuit stated that a trademark owner "has the burden of proving that lost profits are attributable to the unlawful use of the mark." *Id.* at 242 n.15. Defendant is correct that Plaintiff is only entitled to disgorgement of sales that were proximately caused by the infringing ads, but given the language of the statute, it makes more sense to fold the proximate cause inquiry into the "*deductions*" step.

District courts have broad discretion to fashion remedies under Section 35(a), and "the touchstone is reasonableness." *Covertech*, 855 F.3d at 176. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005) sets forth a non-exhaustive list of factors as to whether equity supports disgorging the infringer's profits: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off."[2] I view the jury's finding on liability as to the "Pem" ads as sufficient to support disgorging those profits that can credibly be linked to sales occurring during the time-periods in which the advertisements ran. *Id.*

II. **Pursuant to Section 35(a)'s burden-shifting framework, Penn Engineering has set forth a defensible accounting of Peninsula's "sales," but Peninsula may seek deductions on the ground that not all the sales claimed were proximately caused by the infringing "Pem" advertisements.**

Plaintiff prevailed on a single trademark infringement claim: Defendant's use of "Pem" in its online advertisements during discrete periods of time – and is therefore entitled to

---

[2] Defendant notes that "Pem" was not printed on the products themselves but rather was included in an online advertisement. Presumably this is to show that it was not palming off the product it was selling.

3

disgorgement. Plaintiff carries the initial burden of proving "Defendant's sales only." 15 U.S.C. § 1117(a). Plaintiff characterizes Defendant's sales as follows: all sales of the advertised products during the four time-periods in which the ads ran. *See* Plaintiff's Expert Report, ECF 491-1 at ¶ 29. The relevant time-periods (and the corresponding products) are as follows: (1) February 1, 2017 - March 7, 2017 (Self-clinching fasteners); (2) November 1, 2018 - February 7, 2019 (Self-clinching fasteners); (3) August 5, 2022 - August 9, 2023 (Standoffs); (4) June 14, 2023 - August 9, 2023 (Nuts).[3] *Id.* at ¶ 11. Plaintiff's expert estimates that Defendant's "incremental profits" were approximately $1 million: $106,000 for the first time-period, $328,000 for the second, $511,000 for the third, and $59,000 for the fourth.[4] *Id.* at ¶ 29. According to Plaintiff's expert, the $1 million figure represents profits from unlawful sales. *Id.* at ¶ 39.

Defendant may dispute this conclusion by proving "deductions" – i.e., how much of its sales and profits during the four time-periods were *not* caused by the infringing ads. Presumably, Defendant will in part seek to prove such deductions through its customer survey. *See* Order, ECF 497 (denying Plaintiff's motion to preclude the survey). Defendant may also point to the modest number of "clicks" that the advertisements generated during the first period of infringement, where according to Plaintiff's expert there is evidence of 50 clicks and 880 "impressions."[5] ECF 491-1 at ¶ 13.

---

[3] There are discrepancies in Plaintiff's expert report between the dates in Illustration #1 (ECF 491-1 at ¶ 11) and Illustration #5 (ECF 491-1 at ¶ 29). The dates above are pulled from Illustration #1.

[4] Plaintiff's expert calculates this figure by estimating approximately $2.7 million in revenue and $1.7 million in incremental costs (which he subtracts from revenue). ECF 491-1 at ¶¶ 21, 29.

[5] Plaintiff's expert does not include data for periods two, three, or four.

Proceeding in this fashion complies with the literal terms of the statute, while allowing appropriate consideration of proximate cause.

<u>/s/ Gerald Austin McHugh</u>
United States District Judge