## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PENN ENGINEERING             :
MANUFACTURING CORP.       :
                                          :
      v.                          :        **CIVIL ACTION NO. 19-513**
                                          :
PENINSULA COMPONENTS, INC.    :

---

**McHUGH, J.**                                                 **MARCH 30, 2026**

### MEMORANDUM

This is a Lanham Act case tried to verdict after years of hotly contested litigation, with liability determined by a jury and damages assessed by the Court.[1] Defendant Peninsula Components prevailed on most issues, and Plaintiff Penn Engineering's relief was modest, a damages award of approximately $17,000, and a narrowly tailored injunction prohibiting use of its trademark. Nonetheless, disappointed that it did not prevail completely, Peninsula now moves for judgment under Federal Rule of Civil Procedure 59(e), and alternatively for modification of the injunction.[2]

Peninsula's motion under Rule 59 advances the proposition that Plaintiff did not prove it had a right to enforce its trademarks. To be clear, there is no substantive argument that Penn

---

[1] This action was transferred to my docket in May 2024, with an existing trial date of November 2024, which I advised counsel I would honor. For reasons that remain opaque, the presiding judge had bifurcated the issues of liability and damages, further holding that the trial on damages would be a bench trial. Following a partial verdict on liability, the parties then requested additional time to conduct discovery, including expert discovery, which I granted. The parties were given the opportunity to try damages before a jury, which they rejected. After offering the parties multiple trial dates, they finally agreed to December 2025.

[2] Penn Engineering expressed its disappointment in the verdict by posting excerpts from video depositions in the case online, thereby prompting Peninsula to bring its own Lanham Act suit in response. *Peninsula Components Inc. v. Penn Eng'g & Mfg. Corp.*, No. 25-cv-249 (E.D. Pa.).

Engineering lacks rights in the trademarks at issue, but only an argument that there is a technical failure of proof, because the trademarks had been assigned to a subsidiary not a party to this case, and because Plaintiff did not establish that there were no limitations on its right to enforce the mark. Peninsula raised this argument after the jury's verdict on liability, and I rejected it, delivering the ruling from the bench. *See* Oral Arg. Tr. at 15-16, ECF 495. I stand by that ruling.

Of greatest import was the uncontradicted testimony of Meghan Rogers, that Penn Engineering has "a wholly owned subsidiary called PEM Management, Inc., and all of [PEM's] trademarks are assigned to PEM Management, Inc. And then an exclusive license agreement licensing the trademarks back to PEM Engineering & Manufacturing Corp." Trial Tr. (Day 3) at 202:13-17, ECF 480. There is nothing ambiguous about that testimony, and I see no need to prove the contents of the writings themselves.

Separately, I remain persuaded by the analysis of Judge Wolfson in *N.J. Physicians United Reciprocal Exch. v. Privilege Underwriters*, No. 15-6911, 2016 WL 6126914, at *5 (D.N.J. Oct. 18, 2016), that a parent company will generally "have standing to bring or oppose trademark infringement suits on behalf of their wholly-owned subsidiary because the "damage to the subsidiary will naturally lead to financial injury to the parent." *See also Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.,* 823 F.2d 490, 493 (Fed. Cir. 1987) ("a parent corporation has standing to oppose on the basis of a mark owned and controlled by its subsidiary"); *Lipton Indus. v. Ralston Purina Co.,* 670 F.2d 1024, 1029 (1982) (noting that the court has found standing to protect a subsidiary's mark).

In sum, there is no basis on which to set aside the jury's verdict.

With respect to the justification for an injunction, Peninsula argues that its violations of Plaintiff's trademark were unintentional, and there is no basis on which to presume that it will do

so again.  But as I observed during the liability trial of the case, "this is repeat conduct, which makes clear that whatever intentions Peninsula may have, it has not managed to police its vendors in way that prevents this from happening." Trial Tr. 12/11/25 at 159:19-22.  Plaintiff's trademark was unlawfully used during four different time periods, for as long as a year, and such violations continued even as this case was pending.  It has failed to control its vendors, and the length of time for which such violations continued renders hollow Peninsula's reassurance that it acted "as soon as" it knew of the violations.

"[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct . . . The purpose of an injunction is to prevent future violations . . . The necessary determination is that there exists some cognizable danger of recurrent violation." *United States v. W. T. Grant Co.,* 345 U.S. 629, 633 (1953). For purposes of this case, I am persuaded that Peninsula's persistent lack of responsibility creates a sufficient risk of future violations.

Turning to the scope of the injunction, I am not persuaded that it should be limited to the search engine Google, for two reasons.  First, as Peninsula itself acknowledges, "Google" commonly represents shorthand for search engines generally, *see* Reply Br. at 13, ECF 525, and there was in fact evidence of violations on other platforms, including Microsoft's Bing. Second, the harm that Plaintiff would suffer through future violations on other platforms is indistinguishable from the harm on Google – the web is the web.

As to the nature of the conduct enjoined, Peninsula's argument has more resonance. Reference to a competitor's product can be part of lawful competition, so long as the reference is not likely to cause confusion. *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 220 (3d Cir. 2005).  And the Third Circuit has cautioned that injunctions "should not restrain competitors from engaging in lawful business activities." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 390 (3d Cir. 2021). Finally, the jury's verdict addressed "confusion" as the harm caused by the violation.

3

The language of the injunction will therefore be tailored to enjoin Peninsula from "using the trademark PEM in online advertising in any manner suggestion that Peninsula is the source of PEM products."

An appropriate order follows.


  /s/ Gerald Austin McHugh
United States District Judge